IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No:  8:21-CR-348-SCB-SPF

JEREMY BROWN

_____/

### DEFENDANT'S MOTION FOR PRETRIAL RELEASE

Defendant, JEREMY BROWN, through his undersigned counsel, and pursuant to on Fed. R. Crim. P. 46(a) and 18 U.S.C. § 3142(c), hereby moves for pretrial release on reasonable conditions.  Since the hearing and this Court's order of detention issued on October 5, 2021, Mr. Brown submits that he has additional evidence relevant to this Court in considering whether reasonable conditions of release exist that would assure this Court that Mr. Brown is not a flight risk or a danger to the community.  In support of this motion, Mr. Brown states the following:

1.      On October 1, 2021 Mr. Brown was charged via criminal complaint with entering and remaining on a restricted building or grounds in violation of 18 U.S.C. §1752(a)(1), and disorderly and disruptive conduct in a restricted building or grounds in violation of 18 U.S.C. §1752(a)(2), 8:21-mj-1990-SPF.

2.      On October 1, 2021, Mr. Brown was charged via criminal complaint with

possessing firearms not registered to him in violation of 26 U.S.C. § 5861(d). 8:21-mj-1991-SPF.

3.     On October 1, 2021, Mr. Brown made his initial appearance before the Court. At that time the Government requested detention based on 18 U.S.C. § 3142(f)(1)(C), and the Court continued the hearing until October 5, 2021.

4.     After a hearing on October 5, 2021, this Court issued an Order of Detention finding "that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community." Doc. 19. The Court stated that it was "particularly troubled by a sign Brown placed on the door of his residence in which he warned that 'FBI/DHS/USMS/HSCO' that they: 'Better bring a bigger Tactical PACKAGE." The Court took this as a direct threat to law enforcement.

5.     On October 19, 2021, the United States filed an Indictment against Mr. Brown charging the following: 1) possessing a firearm with a barrel less than 18 inches and not registered to him in violation of 26 U.S.C. §§5861 and 5871; 2) possessing a firearm with a barrel less than 16 inches not registered to him in violation of 26 U.S.C. §5841; 3) knowingly possessing a destructive device in violation of 26 U.S.C. §5841; 4) knowingly possessing a destructive device in violation of 26 U.S.C. §5841; and 5) knowingly storing explosive material not in conformity with regulations promulgated by the Attorney General in violation of

18 U.S.C. §§842(j) and (b), and 27 C.F.R. § 555.201.  Doc. 21.

Below, Mr. Brown briefly recaps some of the evidence presented to the Court by the United States at the initial detention hearing and then provides evidence obtained since the hearing to provide the Court with additional context when making a decision regarding detention.

I.   October 5, 2021 Detention Hearing

At the hearing, the United States submitted documentary evidence to the Court to attempt to show that this decorated military Special Forces veteran is a danger to himself and the community.  Most of the documentary evidence submitted by the government should be given little to no weight by this Court

A.   Exhibit 5

At the hearing, the United States admitted a 2014 Baker Act report.  Doc. 17, USA Exhibit 5.  At the hearing, this Court was apprised that seven (7) years ago Mr. Brown was going through a very difficult divorce.  As such, law enforcement thought best to Baker Act him, and Mr. Brown was taken without injury of incident.  We submit that this incident seven (7) years ago sheds no light on whether Mr. Brown has current mental health issues or is a danger to himself or others.

B.     Exhibit 6

Also, at the hearing, the government presented to the Court a February 2019

missing person report.  Id.  USA exhibit 6.  The defense explained to the Court that

Mr. Brown was not missing; rather, he was located at a Quality Inn the very next

day and was at the hotel because he needed to be alone after his brother's suicide.

Defense submitted evidence that Hillsborough County Chief Judge Ronald

Ficarrota heard Tampa Police Department's Petition for Risk Protection, which

was filed by the Police after they found Mr. Brown at the Quality Inn.  Doc. 18,

Exhibit 1.  Judge Ficarotta specifically found that "[b]ased on testimony of

witnesses and Respondent the Court finds that the Respondent does not pose a

significant risk of danger."  Id.  The court ordered that Tampa police return Mr.

Brown's firearms.  Mr. Brown submits that the evidence that the United States has

provided the Court in Exhibit 6 neither shows he is a danger to himself nor to

others.

C.     Exhibit 7

In Exhibit 7, the United States put before the Court what it deemed as

evidence of Mr. Brown's violent past when it placed into evidence a 2019 docket

sheet from state court.  The docket sheet shows that a female (Ms. Aldridge's

sister) filed a petition for a restraining order against Mr. Brown.  Judge Art McNeil

in Plant City held a hearing, dismissed the petition as insufficient and ordered the

police to return Mr. Brown's firearms.  Mr. Brown submits that this exhibit neither shows he is a danger to himself nor to others.

     D.    Exhibit 8

Exhibit 8, which is a sign Mr. Brown had in the window of his home, troubles the Court.  At the renewed detention hearing, Mr. Brown will more fully address this sign.  First, the sign shown in Exhibit 8 was only in Mr. Brown's window for a approximately two weeks in March 2021, when Mr. Brown was out of town.  When Mr. Brown returned home, Mr. Brown took the sign out of his window seven (7) months before law enforcement came to his house to arrest him for a misdemeanor trespass out of Washington D.C.  Second, as explained in detail below, the language on Exhibit 8, when viewed by the people who have known Mr. Brown for years, is not a threat to law enforcement.

II.    Evidence Obtained after the October 5 Detention Hearing

    a.  Personal Testimonials

Undersigned counsel has spoken with many of Mr. Brown's long time friends since the initial detention hearing.  These individuals have all seen Exhibit 8 and will testify at the hearing as to how they view that sign in light of their knowledge of Mr. Brown and the type of man they know him to be.  At the hearing, Mr. Brown intends to call the following persons: 1) Scott Olsen, Sergeant Major, retired special forces, 2) Meredith Olson, long time friend, 3) Travis Horn,

long time friend and local attorney, 4) Brian Ferrarccio, long time friend and current law enforcement officer in North Carolina, 5) Keith Pecha, retired Special Forces, and 6) Marquis Jackson, long time friend and former employee of Mr. Brown.  These individuals will tell the Court in their own way, based on their own personal knowledge of Mr. Brown, how the sign that was in his window for that two week period seven months ago is not a threat to law enforcement.  As Mr. Olson will say, "Jeremy is as principled a person as you will ever meet."

In addition, Kathy Chamberlin will testify that law enforcement left a message on Mr. Brown's voicemail the morning he was arrested.  Mr. Brown told Ms. Chamberlin that he expected that law enforcement would come to the house that day.  Therefore, Mr. Brown was not surprised when law enforcement arrived.  However, he even knowing law enforcement was coming, Mr. Brown posed no threat and was completely cooperative and respectful.

  b.  <u>Videos / Photographs</u>

Attached to this motion is photographic evidence and a video taken at the time Mr. Brown was taken into custody.  Exhibit 1a-d and Exhibit 2. These photos and the video show that the main arresting agents came to Mr. Brown's house wearing golf shirts.  Even though law enforcement certainly aware of Mr. Brown's background in Special Forces, these officers took no precautions to protect themselves.  In addition, the Court can see and hear Mr. Brown being respectful

and compliant at the time of his arrest.  Mr. Brown suggests that this evidence

shows his attitude towards law enforcement, which is one of mutual respect, and

that the sign in his window, was (understandably without more evidence) taken out

of context by the Court.

    c.  <u>Audio</u>

Attached to this motion is a clip of an interview the FBI had with Mr. Brown

in December 2020.  Exhibit 3.  Mr. Brown informed the agent that he was recoding

the interview.  On the tape, the agent is heard saying that on a scale of 1-10 as a

potential threat, Mr. Brown is a ZERO.  Mr. Brown asserts this is further evidence

that he poses no danger and is not a threat to the community or to law enforcement.

    d.  <u>Mr. Brown's History of Support of Law Enforcement</u>

Mr. Brown has a long history of support and respect for law enforcement.

When he had a limousine company, Mr. Brown gave four free rentals for law

enforcement deaths in the line of duty.  In 2014, Mr. Brown was the Clearwater

Fraternal Order of Police's Person of the Year.  In addition, Mr. Brown does not

live in the best neighborhood and has continually assisted and cooperated with law

enforcement on a wide variety of issues that have come up in his community.

<u>MEMORANDUM OF LAW</u>

Mr. Brown relies on Fed. R. Crim. P. 46(a) and 18 U.S.C. § 3142, which

provide for pretrial release on reasonable conditions.  Section 3142 outlines

conditions that a court should consider when addressing whether a defendant will appear and whether that person is a danger to any person or the community:

1.    Circumstances of a Crime

The search warrant of Mr. Brown's home and recreational vehicle was issued by a court out of Washington D.C. on a misdemeanor trespass charge and revealed weapons in Mr. Brown's home and recreational vehicle, which led to the charges in this case.  The government alleges that two of the weapons found had too short of a barrel and were not properly registered to him.  Doc. 21.  The government also alleges that Mr. Brown had two explosive devices and they were not properly stored.  As this Court knows, Mr. Brown spent 20 years in the Army and 17 of those years in the Special Forces Unit of the Green Berets, in which he was awarded 2 Bronze Stars for his heroism in defense of this country.  Even if the above charges are true, there is no evidence how long these firearms had been in Mr. Brown's custody (15 years? 20 years?) and nothing in Mr. Brown's background to suggest that he would use these firearms against anyone.  Simply put, the merely allegations in the Indictment do not make Mr. Brown a danger to himself or to the community.

2.    Weight of the Evidence

The firearms arms were found in Mr. Brown's home and recreational vehicle.

3.    Personal Characteristics

As previously stated at the initial detention hearing, Mr. Brown has a spotless military record and absolutely no criminal history at all.  The incidents that the United States used to attempt to persuade this Court that Mr. Brown is mentally unstable and a danger are a complete and utter mischaracterization of what actually occurred during these events, as demonstrated at the previous hearing and as addressed above.  Also, as Mr. Brown expects his witnesses to inform the Court, Mr. Brown has the deepest respect for law enforcement, is a man of principled integrity, loves his country, and respects the judicial process.  In sum, Mr. Brown's personal characteristics should not lead this Court to the conclusion that there are no conditions short of incarnation that will assure his appearance in court and protect the community.

4.    Criminal History

Mr. Brown has absolutely no criminal history and a stellar 20-year military career.

5.    Financial Resources

Tylene Aldridge is willing to put her home up as collateral if this Court were to require a secured appearance bond.  The government's assertion at the initial detention hearing that because Mr. Brown had $6,000 in cash at his home makes him a flight risk is based on wild speculation and a completely unfounded

conclusion, for there is absolutely nothing in Mr. Brown's background to suggest he poses a flight risk.

      6.    <u>History of Drug or Alcohol abuse</u>

None.

      7.    <u>Seriousness of a Danger to Anyone or the Community if Released</u>

Mr. Brown suggests that the details outlined in this motion as well as the evidence that will be presented at a renewed detention hearing will alleviate the Court's concerns that there are no conditions short of incarceration that will protect the public, and especially law enforcement, who will be tasked with monitoring Mr. Brown if he is released on bond.

## III.  **Conditions of Release**

Pursuant to 18 U.S.C. § 3142(c), Mr. Brown submits that that the following conditions of release are sufficient to assure Mr. Brown's appearing in court and will assure the safety of public and law enforcement:

- <u>Electronic monitoring</u>:  While the government alluded at the initial detention hearing that Mr. Brown knows how to circumvent GPS monitoring because of his special training, this statement was wholly without basis or evidentiary support.  Mr. Brown will absolutely abide by electronic monitoring.

- Report to probation on a regular basis:  Mr. Brown will report to probation as often as this Court requires.

- Searches and Seizures:  Mr. Brown and Ms. Albridge agree to have their home searched prior to his release and surrender any weapons found in the home.  Tylene Aldridge, the owner of the home, agrees to any searches and to surrender and to remove any and all weapons from the home.

- Secured Appearance Bond:  Ms. Aldridge is willing to put her home up as collateral to secure an appearance bond.

- Restrictions on travel:  Mr. Brown will surrender his passport and will remain in the Middle District of Florida during the pendency of this case.

- Curfew:  Mr. Brown will abide by any curfew that this Court imposes.

- Drug testing:  Mr. Brown will submit to any drug testing that the Court requires.  There is no evidence that Mr. Brown has an issue with drugs or alcohol.

- Psychological testing:  Even though the government claimed at the initial detention hearing that Mr. Brown suffers from fairly serious mental health issues, the United States presented no evidence from a doctor, psychologist or any documentation as to any type of mental

health issue Mr. Brown might be suffering from.  In addition, as explained in detail above, the 2014 Baker Act from seven (7) years ago when he was going through a divorce and the 2019 missing person report, when he was not even missing, are not evidence that Mr. Brown currently has mental health issues. That said, Mr. Brown is willing to submit to any mental health or psychological exam that this Court requires.

First, Mr. Brown would like to thank the Court for allowing him to present additional evidence as to the issue of his detention.  Secondly, we submit that after reviewing the information outlined in this motion, and after a hearing on such, this Court will come to the conclusion that there are conditions short of incarceration that will assure Mr. Brown's presence in Court and protect the public and law enforcement.

WHEREFORE, Mr. Brown moves for his pretrial release on reasonable conditions.

Respectfully submitted,

s/William Sansone
WILLIAM SANSONE, ESQUIRE
Sansone Law, P.A.
609 West De Leon Street
Tampa, FL  33606
Telephone: (813) 361-0874

Facsimile: (813) 251-1808
Email: sansonew@gmail.com
Florida Bar # 781231

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing notice has been furnished by electronic filing using the CM/ECF system to Risha Asokan, United States Attorney's Office, this 26th day of October, 2021.

s/William Sansone
WILLIAM SANSONE, ESQUIRE