UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:21-cr-348-SCB-SPF

JEREMY BROWN

### UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR PRETRIAL RELEASE

The United States of America hereby opposes the motion of the Defendant, Jeremy Brown, to reopen the hearing on detention pending trial (Doc. 27).

### MEMORANDUM OF LAW

#### I. BACKGROUND

On September 29, 2021, United States Magistrate Judge for the District of Columbia Robin M. Meriweather signed a warrant for the defendant's arrest pursuant to a criminal complaint for entering restricted buildings and grounds at the U.S. Capitol on January 6, 2021, in violation of 18 U.S.C. § 1752(a)(1) and (2), Case No. 1:21-mj-00619.

The next day, federal agents arrested the defendant outside his home and executed warrants to search the defendant's residence and recreational vehicle ("RV") for evidence related to the charged offenses. In the course of the search, federal agents found, among other things, a sawed-off shotgun and a short-barrel rifle that are not registered to the defendant in the National Firearm Registration and Transfer Record. Federal agents also found what appeared to be two, live military

ordnance hand grenades in the defendant's RV.

On Friday, October 1, 2021, this Court authorized the issuance of a criminal complaint charging the defendant with possession of unregistered firearms, namely possession of the sawed-off shotgun and short-barrel rifle, in violation of the National Firearms Act (NFA), 26 U.S.C. § 5861(d). That same day, the defendant had his initial appearance before this Court on both the misdemeanor charges out of the District of the District of Columbia and the felony charges filed in this District. At the hearing, the United States did not seek pretrial detention on the misdemeanor charges. The United States moved for pretrial detention on the firearms charges and requested a brief continuance to review information on the defendant's background that was brought to the government's attention the previous night. The Court granted the United States' request and set the detention hearing on the felony charges for Tuesday, October 5, 2021.

On October 5, the Court held a two-hour detention hearing during which the United States presented for the Court's consideration 15 exhibits bearing on the defendant's dangerousness to the community (and himself) and his risk of flight. *See* Doc. 15-1–15-15. The defendant, on the other hand, presented one exhibit during the hearing, otherwise relying on facts proffered by defense counsel and the defendant. Critically, the government's exhibits—which included photos of items discovered during the search of the defendant's residence, reports of the defendant's prior mental health and domestic violence incidents, and public statements that the defendant had made—all contained information within the defendant's personal knowledge.

After considering the evidence presented by the United States and the defendant, and based on the factors set forth in 18 U.S.C. § 3142(g), the Court concluded that the defendant "must be detained pending trial because the Government has proven by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any person and the community." Doc. 17 at 2. The Court specifically found that the defendant "poses a danger to law enforcement officials, including those that would be tasked with supervising Brown should he be released with conditions." *Id.* Among other things, the Court was "particularly troubled" by a message to law enforcement that the defendant had posted to his front door in March 2021 that warned certain state and federal law-enforcement agencies: "Better bring a bigger Tactical PACKAGE." *Id.*; Doc. 15-15 (Exh. 8).

On October 19, 2021, a grand jury charged the defendant with four counts of possession of certain unregistered firearms, in violation of 26 U.S.C. § 5861(d). *See* Doc. 21. The charges related to the defendant's possession of the sawed-off shotgun, the short-barrel rifle, and the two, military ordnance hand grenades, which, subsequent to the filing of the criminal complaint, were determined to be "destructive devices" within the meaning of 26 U.S.C. § 5845(f), that were not registered to him as required by the NFA. *Id.* The grand jury also charged the defendant with one count of unlawful storage of explosive material, namely the two, military ordnance hand grenades, in violation of 18 U.S.C. § 842(j). *Id.*

On October 26, 2021, the defendant filed a motion for pretrial release, asserting that "he has additional evidence relevant to this Court in considering whether reasonable conditions of release exist that would assure this Court that Mr. Brown is not a flight risk or a danger to the community." Doc. 27 at 1. The defendant's purported new evidence principally comprises testimony from six witnesses who essentially will attest to the defendant's character for peacefulness. *See id.* at 6 ("These individuals will tell the Court in their own way, based on their own personal knowledge of Mr. Brown, how the sign that was in the window for that two week period seven months ago is not a threat to law enforcement.").

At a telephonic status conference on October 28, 2021, the Court permitted the United States to respond in writing to the defendant's request to reopen the detention hearing by November 9, 2021.

## II.  LEGAL ARGUMENT

Under 18 U.S.C. § 3142(f)(2), a detention hearing "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that *information exists that was not known to the movant at the time of the hearing* and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."[1] (emphasis added). Courts have

---

[1] At the telephonic status conference on October 28, the Court advised that the United States need only respond in writing to the threshold issue of whether reopening the detention hearing was appropriate under 18 U.S.C. § 3142(f)(2). Accordingly, this response does not address the second prong of the inquiry under section 3142(f)(2), that is, whether

construed the reopening requirement "strictly":

> As written, the reopening provision is, in effect, a codification of a court's inherent reconsideration authority tempered by the understanding that, to promote finality, preserve judicial resources, and discourage piecemeal presentations, a court should not reconsider a decision based on information that could have been presented the first time around. *See Lederman v. United States*, 539 F. Supp. 2d 1, 2 (D.D.C. 2008) ("Due to considerations of finality, predictability and preserving judicial resources, ... a court should be [loath] to revisit its own prior decision in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice."); *cf. Mays v. USPS*, 122 F.3d 43, 46 (11th Cir.1997) (holding, in Fed. R. Civ. P. 59(e) context, that "where a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion"). Under the provision, reopening is unwarranted if the newly offered evidence was available at the time of the hearing. *See United States v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991); *United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989). And even then, reopening is discretionary. *United States v. Watson*, 475 F. App'x 598, 599–600 (6th Cir. 2012).

*United States v. Pon*, 2014 WL 3340584, at *3, 9 (M.D. Fla. May 29, 2014) (Barksdale, M.J.); *see also United States v. Smith*, 337 F.R.D. 366, 368 (N.D. Fla. 2020) ("[T]o warrant the reopening of a detention hearing, a defendant must show that . . . there is new information that did not exist *or was unknowable by the defendant at the time of the hearing*.") (emphasis added). The defendant has not met the standard for reopening the detention hearing. The motion should be denied.

As an initial matter, the defendant's legal memorandum merely rehashes the arguments that he already made, and that the Court already considered, at the detention hearing. *Compare* Doc. 27 at 3–5 *with* Transcript 34–44. In attempting to

---

the information has a material bearing on detention.

5

undermine the government's evidence, the defendant has not offered any new information that would warrant the Court's reconsideration. Indeed, in the instant motion, the defendant has even less to say:

| Government's Evidence | Defendant's Argument at Oct. 5 Hearing | Defendant's Argument in Motion for Pretrial Release |
|---|---|---|
| Ex. 5, Jan 2014 Baker Act police report | "Let's go to the Exhibit 5, a 2014 Baker Act. Seven years ago he was going through a difficult divorce and he was Baker Acted. He was released and what has happened since that time? He was never incarcerated, there's been no issues at all. He wasn't incarcerated seven years ago for this, but the United States is using this seven-year-old Baker Act to somehow show that he has a huge issue of mental health." Tr. 39. | "At the hearing, this Court was apprised that seven (7) years ago Mr. Brown was going through a very difficult divorce. As such, law enforcement thought best to Baker Act him, and Mr. Brown was taken without injury of incident. We submit that this incident seven (7) years ago sheds no light on whether Mr. Brown has current mental health issues or is a danger to himself or others." Doc. 27 at 3. |
| Ex. 6, Feb 2019 Missing Person police report | "His girlfriend filed a missing person report on February 12th of 2019. First of all, this is two and a half years ago. The very next day he was at a Quality Inn. He wasn't missing at all. He said he wanted to be away from his girlfriend, his brother had just committed suicide and he needed some space. Tampa Police Department, he voluntarily went to the VA, spent three days there. The Tampa Police Department did file a risk protection order against Mr. Brown. . . . Now, you'll see under the petition is denied, quote, the specific facts or finding for said denials are as follows: Based | "The defense explained to the Court that Mr. Brown was not missing; rather, he was located at a Quality Inn the very next day and was at the hotel because he needed to be alone after his brother's suicide. . . . Hillsborough County Chief Judge Ronal Ficarrota heard [TPD's] Petition for Risk Protection . . . . Judge Ficarotta specifically found that '[b]ased on testimony of witnesses and Respondent the Court finds that the Respondent does not pose a significant risk of danger.' The court ordered that [TPD] return Mr Brown's firearms. Mr. Brown submits that the |

6

| | | |
|---|---|---|
| | on the testimony of witnesses and respondent – who's Mr. Brown himself -- the Court finds that respondent does not pose a significant risk of danger. And then you'll see where it says, further ordered: It is further ordered that the firearms had to be returned to him by the Tampa Police Department. So two and a half years ago Judge Ficarrotta in this Circuit found, as based on this 2019 missing person report, that he was no danger and ordered the Tampa Police to return his firearms." Tr. 37–38. | evidence that the United States has provided the Court in Exhibit 6 neither shows he is a danger to himself nor to others." Doc. 27 at 4. |
| Ex. 7, Sept 2019 Domestic violence case docket | "First of all, this is a civil temporary request for a restraining order. They're always granted initially and then the – there's a time where the temporary restraining order is issued and then there's a hearing. . . . At the hearing, the restraining order was dismissed and he was given his firearms back. This was filed ex parte by his girlfriend's sister. After a hearing, Judge McNeil dismissed it, his firearms should go back to him. So it's a dismissed temporary restraining order that the United States of America is now trying to use in this court to incarcerate him. He has absolutely no criminal history. He should be incarcerated. I literally can't believe that they would use | "The docket sheet shows that a female (Ms. Aldridge's sister) filed a petition for a restraining order against Mr. Brown. Judge Art McNeil in Plant City held a hearing, dismissed the petition as insufficient and ordered the police to return Mr. Brown's firearms. Mr Brown submits that this exhibit neither shows he is a danger to himself nor to others." Doc. 27 at 4–5. |

|  | that as a factor to ask this Court to incarcerate this man." Tr. 39–40. |  |

With respect to Government's Exhibit 8, a photo of the March 2021 sign posted on the defendant's front door, the defendant offers the following arguments: (1) the sign was posted on his door for two weeks and taken down several months before his arrest; [2] (2) personal testimonials by the defendant's long-time friends will establish that he is not a threat to law enforcement; (3) the defendant did not react violently when he was arrested nor did law enforcement perceive the defendant as a threat; and (4) the defendant has a history of supporting law enforcement. Doc. 27 at 5. The defendant raised much of this "new" information at the detention hearing, and all of it existed at the time of the hearing or was otherwise knowable to the defendant. That the defendant only contemplated its evidentiary value—which is not material in any event—after the Court ordered him detained does not satisfy section 3142(f)(2)'s standard for reopening the hearing. *See Pon*, 2014 WL 3340584, at *9 (concluding that the information that the defendant presented to support his reopening and reconsideration motions were all available to him, either within his personal knowledge and or a matter of common knowledge).

For starters, the defendant already argued unsuccessfully at the October 5 hearing that his behavior at the time of his arrest, as well as law enforcement's

---

[2] At the hearing, the defendant stated that the sign was posted while he and his girlfriend were away from their home for a weekend. Tr. 62.

8

impression of him during a December interview, somehow undermines the Court's view that he poses a threat to law enforcement. *See* Tr. 44 ("And this day, many agents came to his house. There was no -- there were no shots fired, he was compliant, and he was arrested. Nothing happened. It was a non-incident when they came to his house to arrest him."); Tr. 50 ("But there's been no -- no allegation that he was ever, even in this situation in December . . . that law enforcement has said that he was disrespectful, that they felt threatened, and nothing when they came to his house that he would have felt threatened."); Tr. 60 ("That is why I went public on March 5th with the recording of their [December 2020] recruitment tape of which they themselves admitted I am a zero out of ten threat in any way. Therefore, the fact that I even posted the sign itself as a warning should be clear indication that it was not a threat against them, but yet a professional jab."). The photos and audio appended to the defendant's motion, therefore, do not qualify as new evidence under section 3142(f)(2).

Similarly, the defendant already argued to the Court that his ties to law enforcement show that he is not a threat:

> But my actual interactions with law enforcement are that I ran a limousine company for five years and I donated limousine service to line-of-duty deaths, of which one of them happened in Pinellas County and one happened in Tampa. It was a great honor for me to be able to do this, because I greatly, again, respect law enforcement.
>
> . . .
>
> And I am anxious to go to trial against the government, but I do not feel that it is fair to me, to my girlfriend, to my dogs, to my community, who does not fear me. In fact, they respect me and rely on me. To the sheriff's

>deputies that normally come to our house -- because we don't live in a good neighborhood -- on a regular basis and receive assistance from me. I provide them with surveillance footage when an incident happens across the way. The residents of those homes rely on my ability to confront hazards and dangers, because they maybe not – they maybe not have the courage to do it themselves.

Tr. 61–62, 66.

The defendant's testimonial evidence also falls short of section 3142(f)(2)'s exacting requirement that the newly offered information must not have been available to the defendant at the time of the hearing. The defendant argues that since the hearing, defense counsel has spoken with six witnesses who, after reviewing Exhibit 8, "will testify at the hearing as to how they view that sign in light of their knowledge of Mr. Brown and the type of man they know him to be." Doc. 27 at 5. Courts routinely reject the contention that "information . . . not known to the movant at the time of the hearing" includes testimony, either in the form of a live witness or an affidavit or letter, that the defendant failed to marshal in advance of the initial hearing. For example, in *United States v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991), the defendant—who was ordered detained by the magistrate judge and the appeal of which was denied by the district court—sought to reopen his detention hearing based on 18 affidavits from those who knew him, including statements from his father, a police officer, and other friends, as well as seven letters from acquaintances who would generally attest to the defendant's good character. *Id.* On appeal, the First Circuit affirmed the district court's decision to deny the defendant's motion to reopen the detention hearing under section 3142(f)(2):

10

> [The district court] rejected appellant's contention that the letters and affidavits were "information ... not known to the movant at the time of the hearing" because the letters and affidavits themselves were not in existence at the time of the hearing. Rather, the court pointed out, appellant had had sufficient time to obtain the affidavits and letters, or to arrange for the personal appearance of any witnesses. The first hearing, held on April 4, occurred nine days after appellant's arrest and the April 12 appeal was heard 17 days after arrest. We also note, in this context, that the government points out (and appellant does not dispute) that "numerous relatives and friends" of appellant had shown up for the hearing originally scheduled for April 1, 1991, lending support to the court's finding that the *information* contained in the affidavits and letters was indeed available to appellant at the time of the hearing.
>
> . . .
>
> We find that the decision not to reopen the detention hearing was not in error. In a similar case, *United States v. Hare*, 873 F.2d 796 (5th Cir.1989), the Court of Appeals for the Fifth Circuit affirmed a district court's decision not to grant defendant's motion for a second evidentiary hearing on the issue of pretrial bail. The evidence the defendant desired to present in the second hearing was the testimony of his mother, sister and a friend that he had appeared in court when ordered in prior prosecutions. The court held that this was not new information within the meaning of § 3142(f). *Id.* at 799. *Compare United States v. Peralta*, 849 F.2d 625, 626-27 (D.C.Cir.1988) (per curiam ) (upholding the reopening of a detention hearing when government sought to put in evidence of a ruling, adverse to defendant, on a suppression motion entered *after* original detention hearing).

*Id.* (emphasis in original).

The same is true here. It is not enough under section 3142(f)(2) for the defendant to identify witnesses after the hearing who were known to him at the initial hearing and could have testified as to the defendant's character at that time. *See United States v. Cornelius*, 2006 WL 1360923, at *1 (M.D. Fla. May 17, 2006) ("[The defendant] does not contend that the witnesses he wishes to present were not known to him at the time of the original detention hearing. Accordingly, the

11

standard for reopening a detention hearing to consider this new evidence set forth in 18 U.S.C. § 3142(f)(2) has not been met.").

In moving for detention under section 3142(f)(1)(E) and (f)(2)(A), the United States placed the defendant on notice that it would be presenting a variety of evidence bearing on the factors set forth in section 3142(g), including the defendant's character and the danger he poses to the community. The defendant, like the United States, was afforded sufficient time to assemble evidence and witnesses who would testify in his favor as to those factors. In fact, these witnesses are the defendant's "long-time" friends, necessarily implying that they were known and available to him. And, presumably, their testimony would have been the same regardless of the evidence offered by the United States at the hearing (*i.e.*, that the defendant is not a danger to the community, including law enforcement, period). That the defendant chose not to assemble witnesses at the initial hearing and relied only on his own representations is not a basis for reopening. *See United States v. Dollinger*, 2008 WL 1711408, at *2 (M.D. Fla. Apr. 10, 2008) (Snyder, M.J.) ("At that [the detention hearing], the defense chose to rely on the suitability of [one custodian]. The hearing will not now be reopened simply to afford a further opportunity to suggest potential custodians or living situations"; "There is no reason to think this information was unknown at the time of the original hearing.").

Lastly, the defendant makes much of the fact that the door sign contained in Government's Exhibit 8 was not known to him until the morning of the October 5th hearing. For starters, there is no dispute that the defendant created the sign and hung

12

it on his own front door. What's more, the defendant actually received a photograph of the sign via email from the undersigned at 6:00 pm the evening *before* the hearing. But in any event, to the extent that the defendant did not anticipate that the sign would be considered at the detention hearing—despite that the United States sent it to him the night before the hearing—and therefore was not prepared to present evidence and address the Court's concern regarding its intended meaning, the defendant "could have requested a continuance of the detention hearing in order to address this specific issue." *United States v. Ward*, 235 F. Supp. 2d 1183, 1185 (N.D. Okla. 2002). He did not. Instead, the defendant elected to go forward on the evidence presented at the hearing on October 5. Section 3142(f)(2) does not allow a second bite at the apple under these circumstances.

## CONCLUSION

For all of the foregoing reasons, the Court should deny the Defendant's request to reopen the detention hearing.

Respectfully submitted,

KARIN HOPPMANN
Acting United States Attorney

By:   */s/ Risha Asokan*
      Risha Asokan
      Assistant United States Attorney
      Florida Bar No. 1003398
      400 N. Tampa Street, Suite 3200
      Tampa, Florida 33602-4798
      Telephone:  (813) 274-6000
      Facsimile:  (813) 274-6358
      E-mail:     risha.asokan2@usdoj.gov

U.S. v. Jeremy BrownCase No. 8:21-cr-348-SCB-SPF

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

William Sansone, Esq.

*/s/ Risha Asokan*
Risha Asokan
Assistant United States Attorney
Florida Bar No. 1003398
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:  (813) 274-6000
Facsimile:   (813) 274-6358
E-mail:       risha.asokan2@usdoj.gov