IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No.: 8:21-CR-348-T-SCB-SPF

JEREMY BROWN

_____/

## RESPONSE IN OPPOSITION TO THE UNITED STATES' MOTION FOR PROTECTIVE ORDER REGARDING DISCOVERY

COMES NOW, the Defendant, JEREMY BROWN, by and through his undersigned counsel, and files this response in opposition to the United States' Motion for Protective Order Requiring Discovery. Doc. 74. In sum, many of the provisions of the proposed protective order are not necessary, overly broad, or too vague.

I.  **Procedural and Factual History**

1. On September 29, 2021 Mr. Brown was charged via criminal complaint with entering and remaining on a restricted building or grounds in violation of 18 U.S.C. §1752(a)(1), and disorderly and disruptive conduct in a restricted building or grounds in violation of 18 U.S.C. §1752(a)(2), 8:21-mj-1990-SPF. These misdemeanor charges are pending in Washington D.C.

2. On September 30, 2021, Mr. Brown was arrested at his home in Tampa,

1

Florida based on an arrest warrant issued out of the United States District Court for the District of Columbia. The D.C. Court also issued a search warrant for Mr. Brown's home, recreational vehicle (R.V.), and trailer in Tampa, Florida. Mr. Brown intends to file a motion to suppress based on the complete lack of probable cause set forth in the search warrant affidavit.

3. On October 1, 2021, Mr. Brown was charged via criminal complaint with possessing firearms not registered to him in violation of 26 U.S.C. § 5861(d). 8:21-mj-1991-SPF.

4. On October 19, 2021, the United States filed an Indictment against Mr. Brown charging the following: 1) possessing a firearm with a barrel less than 18 inches and not registered to him in violation of 26 U.S.C. §§5861 and 5871; 2) possessing a firearm with a barrel less than 16 inches not registered to him in violation of 26 U.S.C. §5841; 3) knowingly possessing a destructive device in violation of 26 U.S.C. §5841; 4) knowingly possessing a destructive device in violation of 26 U.S.C. §5841; and 5) knowingly storing explosive material not in conformity with regulations promulgated by the Attorney General in violation of 18 U.S.C. §§842(j) and (b), and 27 C.F.R. § 555.201. Doc. 21.

5. The United States has provided undersigned counsel with discovery in

this case. Prior to the filing of its Motion for Protective Order, the United States informed undersigned counsel that it intended to file a motion for a protective order. While these negotiations were on-going, undersigned counsel informed the United States that he would abide by the conditions of the proposed protective order until the Court makes a final ruling.[1]

## II. Argument and Memorandum of Law

Under the Sixth Amendment to the United States Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." Mr. Brown intends to have just that - a fair, open, and public trial. It must be said at the outset that Mr. Brown is an American hero and patriot. He served his country for over twenty years in the Army. Seventeen of those years he spent in Special Forces operations connected with the Green Berets. Mr. Brown has been deployed all over the world and placed himself in harms way to defend this country and the liberties this county was founded on. He has served this nation in military operations in Afghanistan, Africa, Columbia, and Sri Lanka just to name a few deployments. Mr. Brown has no criminal history and has been a loyal and law abiding citizen his entire life.

---

[1] Prior to the government informing defense counsel of its intention to file a motion for a protective order, counsel gave Mr. Brown a copy of the search warrant and affidavit in support. The United States is aware of this. Mr. Brown has not seen and does not have copies of any other documents, photographs, or videos provided in discovery at the time of this filing.

Mr. Brown opposes the proposed protective order filed by the United States because the provisions of the protective order are not necessary, overly broad, or too vague. The charges Mr. Brown faces before this Court are weapons charges based on the weapons that were allegedly located in his home and trailer found during the execution of a search warrant issued by a district court in the District of Columbia. In sum, the United States alleges Mr. Brown possessed two short barrel firearms that were not properly registered to him, possessed two destructive devices, and failed to properly store the destructive devices in accordance with regulations promulgated by the Attorney General. Counsel cannot discern how any of the discovery concerning the charges before this Court are in need of the protective order proposed by the United States.

Mr. Brown is also currently charged in the District of Columbia with two misdemeanor trespass counts for allegedly standing in the wrong place at the capital on January 6, 2021 and causing "disruptive conduct" while doing so. There are no allegations or evidence that Mr. Brown ever went inside the Capital, had any illegal weapons on his person, or caused or participated in any violence. The events of January 6 occurred almost one year ago. The United States government was aware of Mr. Brown's intention to go to the Capital even before he left for the Capital. The United States was aware that Mr. Brown actually went to the Capital on the day he did. Mr. Brown has publically stated for almost a year that he was in

Washington D.C. at the Capital as part of the rally in part organized by the President of the United States. Mr. Brown's alleged actions for his role in the "January 6 riot" have lead to two misdemeanor trespass charges. At best, the United States' allegations against Mr. Brown, as to January 6, are that he was standing on the wrong side of a barrier outside the Capital building and engaged in misdemeanor "disruptive conduct" while doing so. Both allegations, even if true, only rise to the level of misdemeanor charges. That said, a district court in Washington D.C. issued a search warrant for Mr. Brown's home, trailer and R.V. in Tampa, Florida, which lead to the weapons charges before this Court. As previously stated, the search warrant issued by the D.C. Court will be addressed in Mr. Brown's motion to suppress. None of the discovery associated with these misdemeanor charges gave rise to the level of protection needed as set forth by the United States in its proposed protective order.

### I. The United Should be Required to Specifically Designate What Items it Deems Fall Under the Proposed Protective Order

Mr. Brown contends that all of the discovery pertaining to the case before this Court, the weapons charges, should not be subject to the proposed protective order. The government has not specified what documents are subject to the proposed protective order. The government gives broad general statements such as counsel shall not provide Mr. Brown with:

- (a) Records obtained from digital down loads, and searches of electronic communications (e.g. email, and social media), of individuals other than the Defendant;
- (f) Federal law enforcement reports that contain tips and/or witness interviews.

Doc. 74, Exhibit C ¶ 4.

As to the first example, many of the emails and social media discovery is already in the public realm. There is no basis for an order protecting material that was and is still publically available. As to the second example, Mr. Brown's life partner, Tylene Aldridge, was interviewed by law enforcement and there are police reports associated with her. Does the above encompass any information as to Ms. Aldridge? If so, why? What does the word "tips" mean and which documents does this word refer too?

In addition, the proposed protective order states that the viewing of the materials outlined in paragraph 4 of the proposed protective order must be supervised. This overly broad and vague statement necessitates the following questions: For what reasons? Supervised by whom? Counsel? A guard at the jail? Is counsel required to sit in the room which Mr. Brown reads through discovery?

Further, in an exceedingly broad and overreaching portion of the proposed protective order, the United States states that:

6

> This Order does not apply to discovery materials that are, or later become, part of the public record, including materials that have been received in evidence in this or other public trials or hearings, or materials that are publically released by the U.S. Attorney's Office, the Department of Justice or the U.S Capital Police, **except** that any video designated as "security information" under 2 U.S.C. 1979 may never be provided to Defendant regardless of publication." (emphasis in original).

Doc. 74 at 6 ¶ 13. Does this mean that the government can ultimately decide what materials Mr. Brown may have access to even if those materials are part of the case against him and have been used in a public hearing? Once the United States puts the label "security information" on a video, does Mr. Brown have the right to challenge this before the Court? Under what conditions and criteria would the United States use in determining whether a video should be designated as "security information"?

In its motion for a protective order, the government cites United States v. Dent, 2017 WL 1025162 (C.C.D. Cal. Mar. 15, 2017, but does not adhere to how the government conducted itself during the discovery process in that case. Doc. 74 at 8. In Dent, the government produced 60,000 pages of discovery. The government de-designed most of the classified protected information and claimed 1,100 pages, 114 images, and 569 pages of plea agreements should be covered by the protective order. Id.

In the case before this Court, the government has not specifically designated any discovery materials to be covered by the proposed protective order. The

government has merely set forth overly broad and vague descriptions of the types materials that would fall under the protective order and leaves it to counsel and Mr. Brown to try and determine which materials the government is intending to be protected. Certainly, the government must know exactly which materials it intends to be protected under the proposed order.

As such, and as was the case in <u>Dent</u>, this Court should require the government to specifically state which items in discovery it deems falls under the ambit of the protective order to give Mr. Brown, counsel, and this Court some guidance going forward. The United States has failed to do so. Based on this alone, this Court should deny the government's motion to approve the proposed protective order as submitted to the Court.

## II. The Government Fails to Establish The Need for a Protective Order Under the Case Law the Government Cites in its Motion

In its motion, the government states that "[g]ood cause requires a particularized, specific showing," and cites to <u>United States v. Wecht</u>, 484 F.3d 194, 211 (3d Cir. 2007). Doc. 74 at 7. Mr. Brown agrees. In <u>Wecht</u>, the Third Circuit affirmed the district court's decision not to impose a protective order. The Third Circuit stated that:

> Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing. The good cause determination must also balance the public's

interest in the information against the injuries that disclosure would cause. Id. internal citations omitted.

In the case before this Court, the United States has merely cited to broad allegations of possible and speculative harm that might arise if Mr. Brown is given copies his discovery. Under the case law supplied by the government to this Court, the United States has failed to establish good cause. For example, the government argues that since his arrest Mr. Brown has participated in interviews. Doc. 74 at 4. Mr. Brown has a First Amendment right to participate in interviews, and the United States has failed to show with specificity how Mr. Brown's participation in interviews will lead to "a clearly defined and serious injury to the [government]". Wecht, 484 F.3d at 211.

Additionally, in its motion for protective order, the government cites a 4-part test this Court should employ to determine whether there is a need for a protective order in this case. Doc. 74 at 8. The government writes that "[i]n determining whether a protective order is appropriate, courts consider factors such as the 'safety of witnesses, a particular danger of perjury or witness intimidation, the protection of information vital to national security, and the protection of business enterprises from economic reprisals." Id. Applying this test to both the discovery concerning the weapons charges, which are the only charges before this Court, but also

applying this test to the January 6 investigation into Mr. Brown, the United States has completely failed to establish the need for this Court to issue a protective order.

    A.    **A Protective Order is Not Necessary for Any Discovery Pertaining to the Weapons Charges**

The D.C. Court issued a search warrant of Mr. Brown's home, R.V., and trailer. The FBI executed the search warrant and weapons were found. Essentially, all the witnesses in the case, based on counsel's review of discovery, will be FBI agents and weapons experts. The United States has completely failed to satisfy any prong of the 4-part test as to the weapons discovery.

As to the first and second prongs, the United States has failed to argue under any standard that the discovery concerning the weapons charges needs to be protected to prevent safety of witnesses, perjury, or witness intimidation. The evidence obtained in this case is based on a search warrant that was executed by law enforcement. The government has also supplied reports by weapons experts. The United States has cited no evidence, because there is none, that any law enforcement officer or weapons expert might be threatened or perjure themselves if Mr. Brown was able to obtain copies of discovery.

As to the third prong, there is absolutely zero evidence that the discovery connected to the weapons discovery is "information vital to national security." The allegations as set forth in the Indictment are that Mr. Brown had weapons not registered to him, had destructive devices, and did not properly store those

10

destructive devices. That's it. There is nothing in the discovery relating to these charges that can be deemed information vital to national security. As to the fourth prong, there is absolutely zero evidence that any of evidence concerning the weapons charges needs "protection of business enterprises from economic reprisals." Therefore, the United States completely fails to establish the need for a protective under the 4-part test.

The government claims that it discovered evidence of witness tampering on a jail call. Doc. 74 at 3-4. This exhibit was admitted under seal at the motion to reconsider the magistrate judge's order denying bond. Doc. 70, Exhibit 9H-T. While the magistrate judge did find some merit to this, Mr. Brown completely disagrees and submits that this jail is utterly devoid any evidence that would rise to the level of witness tampering. The jail call is between Ms. Aldridge and Mr. Brown. While on the phone, Ms. Aldridge, on her own accord, looks up the name of the FBI agent who came to her house on the public property appraisers website. Ms. Aldridge tells Mr. Brown over the phone where the agent's home is located, and Mr. Brown says he doesn't care about her house. That is it. Nothing more. We ask this Court to not only read the transcript of the jail call, but also listen to the call. Doc. 70, Exhibit 9H-T. Mr. Brown is confident that the Court will find absolutely nothing in the call, wherein Mr. Brown is merely responding to Ms. Aldridge, even remotely rising to the level of witness tampering.

The Eleventh Circuit jury instruction for witness tampering is as follows:

It's a Federal crime to [use intimidation] [use physical force] [threaten another person] with intent to [influence] [delay] [prevent] the testimony of a witness in any proceeding in this Court.

The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:

> (1) the person described in the indictment was [a witness] [scheduled to be a witness] in this Court;
>
> (2) the Defendant used [intimidation] [physical force] [threats] against that person; and
>
> (3) the Defendant acted knowingly and intended to [influence] [delay] [prevent] the witness's testimony.
>
> To "intimidate" someone is to intentionally say or do something that would cause an ordinary person to fear bodily harm.

See Eleventh Circuit Pattern Jury Instruction.

The jail call that was admitted under seal at the motion for reconsideration of the magistrate's judge's order of detention does not remotely show that Mr. Brown, or Ms. Aldridge for that matter, was using intimidation or physical force or threats to knowingly intend to either influence, delay or prevent the FBI witness' testimony for fear of bodily harm. Ms. Aldridge merely looked up the individual's address on a public website and Mr. Brown really didn't care anything about her address. Obviously, this is the only example of potential witness tampering that the government has, for it certainly would have pointed to another example if there was one, and even this example fails to show that Mr. Brown or Ms. Aldridge were attempting to tamper with a witness.

The United States cites <u>United States v. Aiken</u>, 76 F. Supp. 1336 (S.D. Fla. 1999) for the proposition that the government has shown good cause for the need for a protective order. Doc. 74 at 8. In <u>Aiken</u>, the defendant was charged with a racketeering conspiracy, murder in aide of racketeering, and other crimes. <u>Id</u>. at 1341. The court found that a protective order was appropriate because the government had shown that members of criminal organization might retaliate against cooperating witnesses. <u>Id</u>. at 1342. These are not even remotely the facts in the case before this Court. There is no showing at all that Mr. Brown intends to retaliate and pose a danger against any witness at all, and the jail call filed under seal, as demonstrated above, does not support such a finding.

Accordingly, as to the discovery as it pertains to the weapons charges, the government has failed to satisfy the need for a protective order under the very 4-part test it cites. Therefore, this Court should deny the government's motion for a protective order.

    B.    **<u>The Proposed Protective Order is Unnecessary, Overly Broad and too Vague Concerning the Government's Apparent On-going Investigation into January 6, 2021</u>**

To the extent that the government disclosed discovery that contains information about Mr. Brown's activities on January 6, 2021 at the Capital in Washington D.C., the United States has also failed to satisfy its need for a protective order under the 4-part test.

As to the first two prongs, the United States has completely failed to show any specific information that if discovery were disseminated to Mr. Brown it would lead to issues concerning the safety of witnesses, or a particular danger of perjury or witness intimidation.

The same holds true for prongs three and four. The United States has failed to show how any specific information if disseminated to Mr. Brown will somehow compromise the "protection of information vital to national security, and the protection of business enterprises from economic reprisals." Accordingly, under the standard that the United States sets forth, it has failed to establish the need for a protective order.

Additionally, the United States has been "investigating" Mr. Brown's role in the January 6 incident at the Capital since January 6, 2021. The government was well aware of Mr. Brown's intention to go to the rally at the Capital prior to him going. Mr. Brown has publically stated that he was at the Capital grounds on January 6. The FBI contacted Mr. Brown many times concerning its investigation. The government has spoken to witnesses about Mr. Brown's conduct at the Capital on January 6. After all of this investigation into Mr. Brown, the government filed two misdemeanor charges against him for his alleged conduct on January 6, 2021.

The language of the protective order as to information concerning the January 6 investigation is overly broad and too vague. Paragraph 4(d) of the

protective order states that counsel shall not provide Mr. Brown with "[i]nformation regarding the government's confidential source(s) or source(s) of information, or witnesses, including criminal histories, arrest records and summaries of information provided to the government." Doc. 74, Exhibit C ¶4(d). Mr. Brown is left to guess first, what "source(s) of information" means, and second, which documents this vague phrase pertains to. Does "source(s) of information" pertain to people? Videos? Social media posts? Emails?

As was the case in <u>Dent</u>, the government should be required to specify which discovery documents are subject to protection. Again, the government must certainly have a firm understanding of which documents it thinks falls under paragraph 4 of the proposed protective order, and this Court should require the government to share this information with Mr. Brown prior to seeking from this Court a broad, vague and all encompassing protective order.

The proposed protective order also requires that "[f]ollowing a dismissal or acquittal in this case, defense counsel shall destroy or return to the United States the discovery materials." Doc. 74, Exhibit A ¶12. Opinion 81-8 of the Florida Professional Ethics Committee of the Florida Bar states "[a] lawyer who intends to dispose of a client's files should make a diligent attempt to contact all clients and determine their wishes concerning the files." This opinion states two things: 1) the file belongs to the client and not the lawyer, and 2) the client and not the lawyer

gets to determine what happens to file and its contents. The United States has stated no reason for its position that if Mr. Brown is acquitted that it is necessary for counsel to destroy or return all discovery materials. The section of the proposed order runs contrary to an attorney's obligation for file retention. The majority of discovery pertains to weapons located on Mr. Brown's property, the reports detailing the execution of the search warrant, and weapons reports concerning the weapons found. Why this information must be destroyed or returned to the United States following a dismissal or acquittal is not clear.

Accordingly, based on the forgoing, this Court should deny the Government's motion for a protective order based on the following grounds: 1) the government has failed to designate what materials it deems fall under the ambit of the proposed protective order and 2) the government has failed to establish the need for such a broad protective order under the 4-part test outlined in its own motion.

WHEREFORE, for the reasons stated herein, Mr. Brown respectfully requests this Court deny the government's Motion for Protective Order Regarding Discovery.

I HEREBY CERTIFY that a copy of the foregoing motion has been furnished by electronic filing using the CM/ECF system to Risha Asokan, United States Attorney's Office, this 4th day of January, 2022.

Respectfully submitted,

s/William Sansone
WILLIAM SANSONE, ESQUIRE
Sansone Law, P.A.
609 West De Leon Street
Tampa, FL 33606
Telephone: (813) 361-0874
Facsimile: (813) 251-1808
Email: sansonew@gmail.com
Florida Bar # 781231