**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                                    **Case No.: 8:21-CR-348-T-SCB-SPF**

**JEREMY BROWN**

_____/

## MOTION TO SUPPRESS

COMES NOW, the Defendant, JEREMY BROWN, and files this Motion to Suppress any and all evidence obtained as a result of the search warrant issued by a magistrate judge for the District of Columbia.   The warrant is invalid for the following three reasons: 1) the magistrate judge lacked jurisdiction to issue a search of Mr. Brown's home and property located in Tampa, Florida, 2) the search warrant is facially invalid for failing to describe the property to be seized, and 3) the search warrant lacked probable cause to support a fair probability that law enforcement would find evidence of a crime and was based on stale information. In addition, the Leon Good Faith Exception to the warrant requirement does not apply. In support, Mr. Brown respectfully states as follows:

### I.   Procedural and Factual History

1.  On September 29, 2021, the Honorable Zia Faruqui, a magistrate judge in the United States District Court for the District of Columbia issued a

search warrant for: 1) Mr. Brown's home; 2) Mr. Brown's recreational vehicle; 3) Mr. Brown's black trailer; and 4) Mr. Brown's cell phone. Exhibit One (all exhibits to this motion are filed under seal).  All four items were located in Tampa, Florida.

2. Law enforcement supplied an affidavit in support of the search warrant also dated September 29, 2021, almost ten months after the January 6, 2021 incident at the U.S. Capital.

3. On September 30, 2021, law enforcement executed the search warrant on Mr. Brown's home, recreational vehicle (R.V.), black trailer, and seized his phone.  The seizure of Mr. Brown's phone actually exceeded the scope of the search warrant, because the phone was seized from his truck. Agent Lindsey ordered Mr. Brown to unlock the phone, and Mr. Brown invoked his Fifth Amendment Right to remain silent.

4. On October 1, 2021, Mr. Brown was charged via criminal complaint with entering and remaining on a restricted building or grounds in violation of 18 U.S.C. §1752(a)(1), and disorderly and disruptive conduct in a restricted building or grounds in violation of 18 U.S.C. §1752(a)(2), 8:21-mj-1990-SPF.  This misdemeanor case is pending in Washington D.C.

5. On October 1, 2021, Mr. Brown was charged via criminal complaint with

possessing firearms not registered to him in violation of 26 U.S.C. §
5861(d).  8:21-mj-1991-SPF.

6.  On October 19, 2021, the United States filed an Indictment against Mr.
Brown charging the following: 1) possessing a firearm with a barrel less
than 18 inches and not registered to him in violation of 26 U.S.C. §§5861
and 5871; 2) possessing a firearm with a barrel less than 16 inches not
registered to him in violation of 26 U.S.C. §5841; 3) knowingly
possessing a destructive device in violation of 26 U.S.C. §5841; 4)
knowingly possessing a destructive device in violation of 26 U.S.C.
§5841; and 5) knowingly storing explosive material not in conformity
with regulations promulgated by the Attorney General in violation of 18
U.S.C. §842(j) and (b), and 27 C.F.R. § 555.201.  Doc. 21.

7.  This motion to suppress is based on the fact that the magistrate judge for
the District of Colombia did not have jurisdiction to issue a search
warrant for Mr. Brown's property in Tampa, Florida, the search warrant
is facially deficient, and the search affidavit is not supported by probable
cause that any evidence of a crime would be found in Mr. Brown's home
and is also based on stale information.

## II.   <u>The Search Warrant and Affidavit in Support</u>

In the affidavit supporting the search warrant, the affiant spends a vast majority of the pages outlining general events and conduct not in any way associated with Mr. Brown.  The affiant gives general details about the 2020 presidential election and the official proceedings on January 6, 2021.  Interestingly, the affidavit then discusses "Criminal Activity Before the Riot," but this conduct is not associated with Mr. Brown.  The affidavit states "[m]ultiple groups that forcibly entered the Capital appeared to consist of individuals who had coordinated their actions."  <u>See</u> Exhibit One, ¶ 11.  There is no allegation that Mr. Brown ever entered the Capital at all. The affidavit further states that "the movement of these groups within the Capital demonstrates an intent to, among other things, oppose by force Congress' authority and to prevent, hinder, or delay the execution of the Joint Session's legal responsibilities."  Id.  The affidavit appears to be attempting to track the domestic terrorism statute, as explained in more detail below, but there are no allegations in the affidavit that Mr. Brown went into the Capital to do anything.  In more general and completely non-specific information as to Mr. Brown, the affidavit states that "[m]edia reporting showed a group of individuals outside of the Capital chanting, 'Hang Mike Pence.'"  Id. ¶ 23.  However, and once again, there are no allegations in the affidavit that there is any evidence at all that Mr. Brown was part of this group of individuals. Further, "[t]he crowd was not

lawfully authorized to enter or remain in the building."   Id. ¶ 24.   There is no allegation or evidence that this conduct is referring to Mr. Brown. "The crowd forced entry to the U.S. Capital."   Id. ¶ 25.   No allegation or evidence that this conduct is associated with Mr. Brown.  Further, "the suspects broke windows" … "terrorized members of Congress" … "one subject carried a hand gun."  Id. ¶ 28-29.  There is no allegation or evidence that Mr. Brown participated in any of this conduct.

On page 16 of the affidavit, the affiant describes the Oath Keepers as "a large but loosely organized collection of individuals, some of whom are associated with militias."   Id. ¶ 49.   This is an extremely vague and non-descript "description."   The affidavit states that some in the crowd were wearing Oath Keepers insignia.  Id. ¶ 52. First, there is no allegation or facts that Mr. Brown was wearing an Oath Keeper insignia, and second, merely wearing an Oath Keeper insignia is not a federal offense.

On page 19 of the affidavit, the affiant finally gets to "Facts Specific to Jeremy Brown."   The specific facts as to Mr. Brown leads off with a picture of Mr. Brown standing by himself in Washington D.C. with no one around him.  Id. ¶ 55. This picture was actually taken in January 5, 2021 by the Reuters.   The next paragraph alleges that Mr. Brown was "more than 100 feet within restricted grounds."  Id. ¶ 56.  Even to the extent this is true, such an allegation would

certainly not give the magistrate judge jurisdiction to order a search of Mr. Brown's Tampa home under the domestic terrorism statute, approximately 1,000 miles away and almost ten months later.

In sum, the allegations in the search warrant affidavit are completely devoid of any facts that would give rise for the magistrate judge to claim jurisdiction under the domestic terrorism statute. The allegations as to Mr. Brown also center around his conduct on January 6, 2021, but the affidavit was not presented to the magistrate judge until September 29, 2021. There are no allegations that any potential illegal conduct was still occurring almost ten months later in Tampa, Florida. As explained in detail below, the search warrant application is deficient in numerous areas.

**III.**   <u>**Argument and Memorandum of Law**</u>

    A.   <u>The Magistrate Judge for the District of Columbia Lacked Jurisdiction to Issue a Search Warrant for Mr. Brown's Property in Tampa, Florida</u>

The magistrate judge in Washington D.C. based jurisdiction for issuing the search warrant of Mr. Brown's property located in Tampa, Florida under Federal Rule of Criminal Procedure 41(b)(3) and 18 U.S.C. §2331(5)(b).

Federal Rule of Criminal Procedure 41(b)(3) states: " a magistrate judge – in an investigation of domestic terrorism or international terrorism – with authority in any district in which activities related to the terrorism may have occurred has authority to issue a warrant for a person or property within or outside that district."

18 U.S.C. §2331(5) states: the term "domestic terrorism" means activity that -- (B) appears to be intended –

(i)     to intimidate or coerce a civilian population,

(ii)    to influence the policy of a government by intimidation or coercion, or

(iii)   to affect the conduct of a government by mass destruction, assassination, or kidnapping."

The Eleventh Circuit has stated that magistrate judges have limited jurisdiction, and the Court has also clearly and specifically held that "a warrant issued in defiance of its jurisdictional limitation is void – no warrant at all." United States v. Taylor, 935 F.3d 1279, 1287 (11th Cir. 2019)(internal citation omitted)(finding that the magistrate judge issued a warrant outside of its jurisdiction so the "warrant was void at issuance").  First, the search warrant and the application for the search warrant do not allege that Mr. Brown committed any acts of domestic terrorism.  One year after January 6, 2021, Mr. Brown stands accused of a misdemeanor trespass even though Mr. Brown spoke to federal agents on January 6, 2021 and January 7, 2021 and told them he was in Washington D.C. providing security at the First Amendment rally, and federal agents have investigated Mr. Brown's conduct since January 6, 2021.

The search warrant application alleges possible violations of 1) 18 U.S.C. §371, the general conspiracy statute, 2) 18 U.S.C. §231, transport of firearms or

explosives for use in civil disorder, 3) 18 U.S.C. §844 transportation of explosives, and 4) 18 U.S.C. §1752, unlawful entry on restricted grounds. The search warrant affidavit is completely devoid of any credible allegations to support the first three charges, and Mr. Brown has been charged with the fourth, misdemeanor trespass, the only charge he faces in Washington D.C.  Mr. Brown was not charged with any of the first three offenses before the search warrant was issued, and Mr. Brown has not been charged with any of the first three offenses after execution of the search warrant.  The reason Mr. Brown has not been charged with these offenses is because there was never any basis for them.

Obtaining jurisdiction under domestic terrorism statute is a high bar, as it should be, based on the statutory language.  However, in the case before this Court, the affidavit in support of the search warrant is completely devoid of any facts that would allow the magistrate judge in the District of Columbia to find it had jurisdiction to issue a search warrant of Mr. Brown's property under the domestic terrorism statute and authorize a search of Mr. Brown's home and property in the Middle District of Florida.  The only crime that the affidavit affirmatively states that Mr. Brown committed was 18 U.S.C. §1752, misdemeanor trespass at the Capital. In paragraph 57, the affidavit states that "Brown remained at least one hundred feet passed the barriers that law enforcement had initially set up to protect the Capital."  As stated above, this allegation, even if true, by no means rises to the

level of domestic terrorism.  There is no allegation in the search warrant affidavit that Mr. Brown went into the Capital at any time.  There is no allegation in the affidavit that Mr. Brown used force or violence against one at any time while outside the Capital.  There is no allegation in the affidavit that Mr. Brown directed others to go into the Capital.  There is no allegation in the affidavit that Mr. Brown instructed or collaborated with anyone to incite any type of violence at all.    In sum, there are no allegations in the affidavit that Mr. Brown's actions: "appear to be intended – (i) to intimidate or coerce a civilian population, (ii) to influence the policy of a government by intimidation or coercion, or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping." 18 U.S.C. §2331(5).  Paragraph 92 of the affidavit states that the affiant only thought there was probable cause to believe that there was evidence of the following crimes as to Mr. Brown: a general conspiracy pursuant to 18 U.S.C. §371 and an unlawful trespass pursuant to 18 U.S.C. §1752 (a)(1), a misdemeanor.  See Exhibit One ¶ 92. On its face, the affiant's own conclusion does not trigger jurisdiction under the domestic terrorism statute.  To find that jurisdiction was properly asserted under the domestic terrorism statute as it pertains to the facts surrounding Mr. Brown would create a PACMAN exception to the magistrate jurisdiction requirement – an exception that eats the rule.

There is no evidence or allegation in the search warrant affidavit that would give the magistrate judge in the District of Columbia jurisdiction under the domestic terrorism act, which is the only way the magistrate judge could lawfully issue a search warrant of Mr. Brown's property in Tampa, Florida. Therefore, the magistrate judge for the District of Columbia was without jurisdiction to issue a search warrant for Mr. Brown's property.  Because the magistrate judge did not have jurisdiction to issue the search warrant of Mr. Brown's home, R.V., trailer, and phone in the Middle District of Florida, this Court should find that all evidence seized as a result of the search warrant must be suppressed because all items were seized with no warrant at all.

B.      <u>The Warrant is Facially Invalid For Failing to Describe the Property to be Seized</u>

The Fourth Amendment states, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  The warrant issued in this case for the search of Mr. Brown's home, R.V., trailer and cell phone fails to describe any things to be seized.  The warrant issued states the following: "I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal (*identify the person or describe the property to be seized*): See Attachment B (incorporated by reference)."  Exhibit One.

Attachment B refers the recreational vehicle to be searched.  Therefore, the warrant is facially invalid for failing to particularly describe the things to be seized, and therefore, any evidence obtained as a result of the execution of this facially invalid warrant must be suppressed.

The United States Supreme Court's decision in Groh v. Ramirez, 540 U.S. 551 (2004) is instructive.  Groh is a *Bivens* action case wherein the plaintiff sued the government for violating their Fourth Amendment rights by executing a facially invalid warrant.  The Supreme Court found that "[t]he warrant was plainly invalid." Id. at 557.  The Supreme Court stated that "[t]his warrant did not simply omit a few items from a list of many to be seized, or misdescribe a few of several items . . . Rather, in the space set aside for a description of the items to be seized, the warrant stated that the items consisted of a 'single dwelling residence . . . blue in color." Id. at 558.  The Court went on to state that "[i]n this respect the warrant was so obviously deficient that we must regard the search as 'warrantless' within the meaning of our case law." Id.

In the case before this Court, in the section of the warrant to list the property to be seized, the warrant states "See Attachment B incorporated by reference." Attachment B states that recreational vehicle parked at Mr. Brown's residence is a premise to be searched.  Therefore, as was the case in Groh, the warrant is clearly

facially invalid, and this Court must therefore treat the search of Mr. Brown's home, recreational vehicle, black trailer and phone as a warrantless search.

In <u>Groh</u>, the Supreme Court was careful to clarify that "[t]he fact that the application adequately described the 'things to be seized' does not save the warrant from is facially invalidity.   The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." <u>Id</u>. at 557.

As was the case in <u>Groh</u>, the warrant in the case before this Court did not incorporated by reference any specific items to be seized.   Therefore, under clear Supreme Court precedent, this Court must find that the warrant issued in this case is facially invalid, and therefore, the search of Mr. Brown's home, recreational vehicle, black trailer and phone were unwarranted searches and seizures.

C.   <u>The Search Warrant Affidavit Was Not Supported by Probable Cause</u>

The search warrant affidavit did not supply the necessary probable cause that would support a finding that jurisdiction has been met under the domestic terrorism statute or that there was a fair probability that a search of Mr. Brown's home, recreational vehicle, trailer and cell phone would result in evidence of criminal activity.

"Probable cause to support a search warrant exists when the totality of the circumstances allows a conclusion that there is a fair probability of finding contraband or evidence at a particular location." <u>United States v. Brundidge</u>, 170

F.3d 1350, 1352 (11th Cir. 1999).  "The focus in a warrant application is usually on whether the suspect committed a crime and whether evidence of the crime is to be found at his home or business."  United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002).

The only crime that the warrant application affirmatively states that Mr. Brown committed is being more than 100 feet within a restricted area – a misdemeanor.  Exhibit One ¶ 56.  Based on what amounts to only a misdemeanor trespass, there no probable cause whatsoever that evidence of this misdemeanor trespass would be found nine months later at his home over a thousand miles away.

In paragraph 60, the affidavit states that "Defendant 4" told law enforcement that Mr. Brown's R.V. was loaded with weapons.  Even if this was true, and there is absolutely no evidence to support Defendant 4's trustworthiness or credibility, having firearms in a vehicle is not a crime.  In addition, there is no evidence or allegation that Mr. Brown had any firearms on him in Washington D.C. almost ten months earlier.  Mr. Brown spent 20 years in the Special Operation Forces ("SOF") of the United States Army.  He has been awarded the Bronze Star and had been deployed in hot spots around the world (Afghanistan, Columbia, Iraq, Bolivia, North Africa, Sri Lanka) in defense of this country.  Mr. Brown is an American hero with no absolutely criminal history.  There is nothing illegal or nefarious if Mr. Brown did have a number of weapons in a R.V., a vehicle that was never

driven into Washington D.C.  Therefore, this allegation does not support probable cause of the need to search Mr. Brown's house and R.V. in Florida.

"Defendant 4" also told law enforcement, as outlined in the same paragraph, that Mr. Brown had explosives in the R.V.  Again, the affidavit is completely devoid of any information attesting the veracity or trustworthiness of "Defendant 4."  See Brundidge, 170 F.3d at 1353 (finding that an officer's reliance on a confidential informant to establish probable cause in a search warrant affidavit was justified because law enforcement had used that individual **eight times** and could therefore attest to the veracity of the information).  In addition, even if this allegation from "Defendant 4" was true, the warrant application still fails to establish that there is a fair probability of finding evidence of a crime in Mr. Brown's home or R.V. in Florida some ALMOST TEN MONTHS later.

In paragraph 68, the affiant states that a white board in Mr. Brown's house indicates that he had "flash bangs" on hand.  See Exhibit One.  To the extent that this was even true[1], flash bangs are readily available for purchase on the Internet through many sources.  See Exhibit Two (website for I.W.A. International Inc. showing sales for flash bang devices).  Furthermore, the affidavit was sworn to almost ten moths after January 6, 2021, and the affidavit states no information

---

[1] The photograph used by the United States to demonstrate to the magistrate judge that the white board indicated that Mr. Brown had all the items listed "on hand" is inaccurate.  The actual white board had no items written in black, only the photograph indicted they were, so Mr. Brown actually had no items "on hand."

about when these "flash bangs" were obtained.  Additionally, even if Mr. Brown did have "flash bangs" "on hand", this by no means would: 1) trigger the strictures of the domestic terrorism statute, or 2) provide any evidence that Mr. Brown had transported those "flash bangs" to Washington D.C. ten months earlier.

The search warrant application is dated September 29, 2021.  The information about possible explosives from an unnamed, untested "Defendant 4" that Mr. Brown had "explosives" nine months earlier in his R.V. is too attenuated to establish probable cause that evidence of any crime at all would be present in Mr. Brown's home, R.V., trailer, or phone months and months later in Tampa, Florida.

The Eleventh Circuit has held that "[w]arrant applications based upon stale information fail to create probable cause that similar or other improper conduct is continuing."  United States v. Harris, 20 F.3d 445, 450 (11th Cir. 1994).  At best, law enforcement had information that nine months prior to the search warrant application Mr. Brown had "explosives" in his R.V.  The affidavit gave the reviewing magistrate no updated information as to why law enforcement believed that nine months later "similar or other improper conduct is continuing" at his home in Florida.  Id.  Law enforcement was using stale information to go on a fishing expedition of Mr. Brown's property in Florida in essence hoping to find

something.  This by no means satisfies the probable cause requirement to a warrant application.

The affidavit in support of the search warrant application was woefully deficient in establishing the probable cause necessary for the reviewing magistrate judge to issue a search warrant of Mr. Brown's home, R.V., trailer and phone in Tampa, Florida under the domestic terrorism statute.  Therefore, this Court should find that the search was conducted without a valid warrant, and the fruits of this illegal search must be suppressed.

D.     The Good Faith Exception Does not Apply

In United States v. Martin, 297 F.3d 1308, 1313 (11th Cir. 2002), the Eleventh Circuit held that the Good Faith exception to the warrant requirement does not apply under the following circumstances, "1) where the magistrate judge or judge in issuing a warrant was mislead by information in an affidavit that the affiant knew was false or would have known was false except for reckless disregard for the truth, 2) where the issuing magistrate wholly abandoned his judicial role . . . 3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and 4) where depending upon the circumstances of the particular case, a warrant is so facially deficient – i.e., in failing to particularize the place to

be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid."

Because the search warrant was issued without probable cause, the only way for this Court not to suppress all items found in this case is if the Good Faith exception applies.  However, the Good Faith exception to the warrant requirement does not apply in this case for a number of reasons: 1) no reasonable officer would have relied on the magistrate judge's conclusion that the judge had jurisdiction under the domestic terrorism statute to issue a warrant of Mr. Brown's property located outside the jurisdiction of where the warrant was sought, 2) the magistrate judge was mislead because the affidavit failed to include material information, and 3) the warrant was so lacking in probable cause as to render official belief in its existence unreasonable.

1.     No Reasonable Officer Would Have Relied on Jurisdiction Under the Domestic Terrorism Statute as it Relates to Mr. Brown

As set forth above, the warrant in this case was void at its issuance for lack of jurisdiction.  However, in Taylor, the Supreme Court held that a warrant issued by a magistrate judge exceeding the scope of the court's jurisdiction can meet the Good Faith exception to the warrant requirement if a reasonable officer would have relied on the court's jurisdictional claim at the time of the issuance of the warrant. 935 F. 3d at 1290.  The facts in Taylor concern a warrant issued for a residence concerning a laptop and other devices in a child pornography investigation.  Id. at

1284.  The magistrate judge had initially issued a Network Investigative Technique Warrant ("NIT"), which allowed law enforcement to track the IP addresses of persons downloading certain images.  The Supreme Court held that the NIT warrant issued in the case violated the magistrate judge's jurisdictional authority under Rule 41 and 28 U.S.C. §636.  Id. at 1287.  Therefore, the Supreme Court found that the search was effectively conducted without a warrant.  In Taylor, the Supreme Court held that even though the jurisdictional issue rendered the warrant void at its inception, the Good Faith exception applied to the facts of the case because a reasonable office could have believed that the warrant was validly issued, and the exclusionary rule is to deter police misconduct.  Id. at 1289-90.  The Supreme Court found that the Good Faith exception applied based on the fact that the warrant included both the magistrate judge's jurisdiction as well as other jurisdictions.  Id.

In the case before this Court, the magistrate judge relied solely on the domestic terrorism statute to establish jurisdiction for a search warrant that was clearly outside of the magistrate judge's jurisdiction.  The only way for the Good Faith exception to apply is whether the officers reasonably believed that the domestic terrorism applied to the facts as they related to Mr. Brown.  The warrant affidavit is not only devoid of any allegation that would rise to the level to trigger the domestic terrorism statute, the facts relied upon in the warrant affidavit concern

Mr. Brown's activities from January 2021 some nine months prior to seeking a search warrant of Mr. Brown's house in Florida.

"Domestic terrorism" means activity that -- (B) appears to be intended – "i) to intimidate or coerce a civilian population, ii) to influence the policy of a government by intimidation or coercion, or iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping."  18 U.S.C. §2331(5).  There is no allegation in the search warrant affidavit as it relates to Mr. Brown's conduct that would give rise to any three of these definitions.  There is no allegation that Mr. Brown intimidated or coerced civilian population, that he tried to influence government policy by intimation or coercion, or that his actions were intended to affect the conduct of the government by mass destruction, assassination, or kidnapping.  The allegations as to Mr. Brown's conduct on January 6, 2021 is that he was within 100 feet of restricted barrier outside of the Capital – a misdemeanor.  By no stretch of the imagination could this alleged conduct fit under the domestic terrorism statute.  The agent who drafted the search warrant application is a Special Agent with the F.B.I., not a rookie county patrol deputy.  Therefore, the special agent in this case cannot be deemed to have reasonably relied on the magistrate judge's conclusion that it had jurisdiction under the domestic terrorism statute.  If Mr. Brown's alleged conduct as set forth in the search warrant application as to his actions on January 6 are deemed to rise to the

level of domestic terrorism, the domestic terrorism statute can be dangerously applied to a vast array of conduct and give law enforcement and courts sweeping authority to search the homes of American citizens in any jurisdiction in the country under the scantest of allegations.  This cannot and should not be the law.

Law enforcement certainly did not have additional up to date information about Mr. Brown concerning has actions on January 6 or thereafter that would implicate him in any criminal terrorism conduct, or law enforcement certainly would have included such information in the search warrant application.  As discussed in more detail below, law enforcement actually investigated Mr. Brown in the months that followed and found no information that he had illegally transported weapons or explosives to Washington D.C. on January 6.  The fruit of this part of law enforcement's investigation was not shared with the magistrate judge.  Accordingly, the magistrate judge clearly issued the search warrant in violation of its jurisdictional authority, and no reasonable officer under the facts of this case, especially a highly trained special agent of the F.B.I., could have concluded that the domestic terrorism statute applied to Mr. Brown's conduct. Therefore, this Court should grant the motion to suppress all evidence seized as a result of the search warrant.

2.    The Magistrate Judge was Mislead by the Affiant

As stated above, the information supplied in the search warrant affidavit was stale in that it outlined facts that occurred almost ten months prior to the search warrant application.  In addition, law enforcement mislead the magistrate judge because they failed to inform the court that in the intervening ten months, law enforcement had investigated Mr. Brown's actions concerning January 6 and no one stated that Mr. Brown had gone into the Capital or encouraged others to do so. No one stated that Mr. Brown had weapons or explosives with him in Washington D.C. or conducted any other activity that would even remotely qualify as domestic terrorism.

Under United States v. Franks, "a defendant may challenge the veracity of an affidavit in support of a search warrant if he has a substantial preliminary showing that (1) the affiant deliberately or recklessly included false statements, or *failed to include material information in the affidavit*; and (2) the challenged statement or omission was essential to the finding of probable cause." United States v. Arbolaez, 450 F.3d 1283, 1293 (11th Cir. 2006)(emphasis added).

Law enforcement officers in this case failed to include the following material that was obtained after January 6 as part of the F.B.I. investigation into Mr. Brown and his activities:

a.  Contents of a February 28, 2021 podcast in which Mr. Brown participated wherein he "[was] not calling for violence." Exhibit Three.    When asked about solutions to "win this war," Mr. Brown offered the advice that citizens should stop shopping at corporate conglomerates … and "support farmer's markets …" In the podcast, it is also clear that "Jeremy backs law enforcement officers that back up their oath to support the constitution, not arresting people for wearing a mask or beating up citizens."  Id.

c.    On June 23, 2021, the FBI conducted an interview with E. B., Mr. Brown's ex-wife.  She stated that Mr. Brown does have multiple guns, "but did not know anything about explosives."  Exhibit Four.

This evidence was clearly material to the magistrate judge's determination as to whether he had jurisdiction under the domestic terrorism statute.  However, the federal agent applying for the search warrant failed to supply this information for what appears to be for one reason – the magistrate judge might not issue the warrant.

d.    The federal agent seeking the warrant also failed to inform the magistrate judge that the United States had used numerous tools of data collection in an attempt to find some type of domestic terrorism activity against Mr. Brown. Exhibit 5.  The government used the following tools of data collection in its investigation against Mr. Brown: BaseJumper, Business Filings, CHS Check,

Clearwater, DIVS, DMV, DWS,  DaLAs, Guardian, NCIC, NetTalon,

Photographic websites, Public search engines, Sentinel, Social Media, TIDE,

Telephone applications, and Web Crawlers.   Id.  The government failed to inform

the magistrate judge that all of these data collection tools revealed no evidence that

Mr. Brown was engaged in any activity that "appear[ed] to be intended – (i) to

intimidate or coerce a civilian population, (ii) to influence the policy of a

government by intimidation or coercion, or (iii) to affect the conduct of a

government by mass destruction, assassination, or kidnapping." 18 U.S.C.

§2331(5).

Since the only information that was given to the D.C. magistrate judge in the

affidavit was almost ten months old, it certainly would have been material to both a

jurisdictional determination as well as a probable cause determination for the

magistrate judge to know that the ensuing investigation into Mr. Brown revealed

no evidence that he had transported firearms to Washington D.C., that he ever

possessed illegal explosives, that Mr. Brown ever advocated that the public engage

in any type of violence at all, or that he was continuing in any illegal activities.

Accordingly, this Court should find that the government deliberately

withheld material information from the magistrate judge in Washington D.C., and

therefore reliance on the search warrant not valid.  At a minimum, Mr. Brown

requests an evidentiary hearing on this issue.  As Mr. Brown has made a

"substantial preliminary showing" that the affidavit failed to include material information as set forth by the government's own witness statements provided in discovery outlined in Exhibits 3-5.  See Arbolaez, 450 F.3d at 1293-94 (stating that an offer or proof showing the substantiality requirement can be shown by affidavit or sworn "or otherwise reliable statements of witnesses").

> 3.   The Affidavit was so Lacking in Probable Cause that Official Belief in its Lawfulness was not Reasonable

Mr. Brown relies on the arguments set forth above in pages 12-16 for the argument that the search warrant application was so lacking in probable cause that belief in it was unreasonable.  However, it must be highlighted again that, "[t]he focus in a warrant application is usually on whether the suspect committed a crime and whether evidence of the crime is to be found at his home or business."  Martin, 297 F.3d at 1314.  There is nothing in the search warrant affidavit that would give law enforcement probable cause to believe that evidence of the crime of trespass or weapons transportation would be found at Mr. Brown's home in Tampa almost ten months after January 6.  Law enforcement wanted to search Mr. Brown's home to see what they could find  - PERIOD.

In addition, the search warrant affidavit was so lacking in jurisdictional authority as it was issued under the domestic terrorism statute that no reasonable law enforcement officer could have relied in the issuance of the warrant.  See United States v. Krueger, 809 F.3d 1109, 1113 (10th Cir. 2015)(noting that the

district court's finding that the magistrate judge's issuance of a warrant outside of its own jurisdiction was so facially invalid that the United States did not even appeal this part of the ruling).

The Eleventh Circuit has held that courts can "look beyond the four corners of the affidavit and search warrant to determine whether [law enforcement] reasonably relied upon the warrant." Martin, 297 F.3d at 1318. In this case, the subsequent investigation into Mr. Brown's conduct in the almost ten months after January 6, 2021 was not shown to the magistrate judge because the investigation itself revealed no concrete evidence that Mr. Brown was involved in domestic terrorism or any illegal activity, and law enforcement certainly knew this at the time they sought the search warrant from the D.C. magistrate judge.

## IV.   Conclusion

WHEREFORE, for the reasons stated herein, Defendant respectfully requests that this Honorable Court grant the motion to suppress any and all evidence obtained as a result of the search warrant issued by the magistrate judge in the District of Columbia. At a minimum, Mr. Brown requests a *Franks* Hearing to determine the scope of law enforcement's misleading conduct before the magistrate judge.

I HEREBY CERTIFY that a copy of the foregoing motion has been furnished by electronic filing using the CM/ECF system to Risha Asokan, United States Attorney's Office, this 17th day of March, 2022.

Respectfully submitted,

s/William Sansone
WILLIAM SANSONE, ESQUIRE
Sansone Law, P.A.
609 West De Leon Street
Tampa, FL  33606
Telephone: (813) 361-0874
Facsimile: (813) 251-1808
Email: sansonew@gmail.com
Florida Bar # 781231