IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                            Case No.: 8:21-CR-348-T-SCB-SPF

JEREMY BROWN
      *Defendant*
_____/

## NON-PARTY MOTION TO QUASH THE GOVERNMENT'S SUBPOENAS

Third-parties Ms. Carolyn Stewart, the undersigned attorney, and Ms. Tylene Aldrich, by and through undersigned counsel, pursuant to Federal Rule of Criminal Procedure (Fed. R. Crim. P.) 17(c)(2) respectfully submit this motion to quash the Rule 17(d) subpoenas served for the Government upon them as non-parties to the case on March 23, 2022 for a March 25, 2022 hearing. For the reasons set forth more fully below, the subpoenas do not meet the standards required under *United States v. Nixon* and its progeny, and compliance with the subpoenas would be oppressive to Ms. Stewart and Ms. Aldridge. Accordingly, the Court should quash the subpoenas as described herein:

### MEMORANDUM

### I.   BACKGROUND AND FACTS

After his arrest on September 30, 2021 the Defendant financially qualified for and was appointed CJA legal support (William Sansone). Throughout Mr. Brown's incarceration from October through December 2021, the Government reviewed transcripts of Mr. Brown's recorded calls and communications. On or about October 4, 2021, Mr. Brown's supporters established a donation campaign, and garnered donations for future use, knowing the toll Mr. Brown's

incarceration and the serious charges would take on his future well-being. Mr. Brown did not establish the GiveSendGo donation effort and none of the funds ever went into any account he had any dominion or control over.

In its vicarious monitoring, the Government noted that Mr. Brown made references to the GiveSendGo funds. The transcripts used by the Government insinuated Mr. Brown believed he had some level of control over fund expenditures. The Government for unknown reasons then assumed that Mr. Brown controlled the funds and projected urgent concern that Mr. Brown was receiving CJA legal assistance that he should be charged for immediately. Of note, normally an accounting review to determine a defendant's required payment for CJA legal fees would occur after the trial or legal matter is closed. A process exists for an administrative review of a defendant's income and assets. In this case, the Government stated the funds were immediately available to Mr. Brown and behaved as if it was a judgment lien creditor in a civil property or Uniform Commercial Code matter, where it needed to be the first to record its purported property interests ahead of all others.

On January 3, 2022, the Government filed an "emergency motion to prevent dissipation of assets reserved for CJA reimbursement." 8:21-cr-00348-SCB-SPF ECF No. 80. The Court later noted the feigned emergency. ECF No. 97 at 1. The matter at hand, which derives from the feigned emergency, is completely unrelated to Rule 17 evidence for Mr. Brown's scheduled trial.

A hearing was scheduled for March 1, 2022.  That hearing was continued to an unknown date at the last minute on the afternoon of February 28, 2022. Subpoenas for a hearing on March 25 were served to Ms. Stewart and Ms. Aldridge separately on March 23, 2022.  The subpoenas command testimony and document production. (See Exhibits A and B).  The Exhibits A-B subpoenas served on March 23, 2025 state the date is March 25, 2022 but add that the date is

subject to change. Fed. R. Crim. P. Rule 7(a) requires that a valid subpoena state a time and place. Nothing allows a subpoena to be eternal.

The Government's emergency motion on January 3, 2022 was filled with examples of Mr. Brown's wish list for spending the donations from a GiveSendGo campaign. The examples provided by the Government are from after October 20, 2021 and into November 2021. The Government used the donation campaign site picture that referred to a *Defense Fund*, where nowhere was the term "legal defense fund" used. Mr. Brown's recorded communications showed his wish list items included "defense" endeavors, such as a "six-person public relations /activism task force, 'Fighting for Liberty and Abolishment of American Gulags (FLAGG),' that he has assembled." *Id*. at 3. Since the Government took control of the media narrative,[1] why would "defense" involving public awareness of nonviolent Americans charged after January 6th and denied bail not be a legitimate matter of defense? Mr. Brown often made references to the defense of others and U.S. Constitutional rights.

Mr. Brown asked for Ms. Aldridge to give money to a church. He asked for many expenditures not related to legal defense. Ms. Aldridge seemingly agreed with some of these requests, but only to avoid a fight and to not deflate Mr. Brown's morale while he remained jailed. The bottom line is that Ms. Aldridge did not expend donated funds that she held in Trust for Mr. Brown's benefit, and instead spent her own personal funds on <u>some</u> of the things Mr. Brown requested. She was not going to engage in a phone call argument with her partner who

---

[1] Tampa Bay Times, "Crowd funds top $50K for Tampa man charged in Jan. 6 riots. Where should it go?" January 19, 2022. The article, published the day the order was issued against Mr. Brown, is, as usual for the Tampa Bay Times, biased against any conservative persons and anyone who attended the January 6 rally. The Government is quite fortunate to have local news continuously influencing the potential local jury pool against defendants. https://www.tampabay.com/news/tampa/2022/01/19/crowd-funds-top-50k-for-tampa-man-charged-in-jan-6-riots-where-should-it-go/  Last visited March 23, 2022.

3

was being held in jail after being denied bail. Nor could Ms. Aldridge privately explain the Trust, knowing that everything was recorded and unfortunately of late the Government often cherry-picks words and uses them out of context to attack people. The now-flimsy Covid-19 excuse still precludes in-person visits while the jail contractor profits from reduced staff and services that BOP is supposed to provide federal prisoners.  Even attorney video calls do not go through as the Pinellas jail has done something with its equipment or communications that prevent the execution of scheduled unrecorded attorney video calls to Mr. Brown. The Sixth and Eighth Amendments were apparently suspended by Pinellas County for those in its jail.

The Government wrongfully created its own limited-edition dictionary in the January 3, 2022 motion where it presents use of the word "defense" as only meaning "legal defense." This was after the Government read transcripts of recorded communications showing Mr. Brown asked for expenditures in late October and onwards that had nothing to do with "legal defense." The Government omitted all transcript entries that show Mr. Brown was concerned with *defense of Constitutional rights* for Americans. The Government made no attempt to determine who held control of funds. The Government's emergency motion said Mr. Brown directed word changes to the donation website, then as part of its logic-errors claimed this proved he had control of funds. Yet the Government omitted any references to Mr. Brown asking that the fund be for "Defense of Constitutional Rights." ECF No. 80 at 3-4.

The Government used the Court as a weapon to create law that can stop donations; and potentially to make this a test case, where many January 6 defendants' families are staying out of bankruptcy and the poor house only because of GoFundMe, GiveSendGo, and other sites' donation campaigns. The DOJ becoming the arbiter of how and when charity must be spent where the dollars are deposited into the accounts of spouses, partners, children, and friends, goes

against straightforward consideration of what is available to a defendant who was appointed counsel. If donations are made to sustain the family where the head of household is in jail or became unemployed due to the charges, and where donations are deposited into a spousal joint checking account (known as a tenancy in the entireties in Florida), is the DOJ writing law that make the funds that belong 100% to the spouse available to pay the Defendant's appointed counsel?

Is there a race among AUSA's in various jurisdictions to take funds not held or accessible by a defendant who is facing criminal charges in multiple jurisdictions, and where the DOJ's January 6 cases are being piled onto by civil cases backed by the US Attorney General? In the civil cases, the defendants are not authorized court appointed counsel. A defendant who qualifies for court appointed counsel has no funds to pay for a civil defense. The Government is saying in its January 3 emergency motion that a defendant who has no access to donated funds that may be held by a third party for defense in a civil case must hope money falls out of the sky because the defendant must pay for the taxpayer funded public defender for which he remains eligible based on personal funds and assets? The Government in Mr. Brown's case alleged that over $58,000.00 in funds not yet distributed to Mr. Brown and never in any account of his should be taken from Mr. Brown by the Court. This defied the standard that the Defendant must have direct access in the present to funds that make him ineligible for a taxpayer funded defense. The funds must belong to the defendant. Potential future income is not calculated into determinations for present status that allows taxpayer funded defense counsel.

For a trust in Florida, if mandatory or directed distributions are part of the trust, a civil judgment lien would allow any creditor, including a criminal court, to claim distributed funds when the distribution comes due. For a discretionary trust, a civil judgement can only allow

claims for distributions when they are made. A person holding charity donations made to benefit another by applying their discretion cannot be forced to distribute those funds at a specific time unless not doing so would violate the solicitation specifics. The beneficiary could sue in civil court for immediate distribution. Judgment creditors can sue the beneficiary to obtain a lien on future distributions to pay for consumer debts.  However, a defendant's access to and representation by public defenders is not in the category of consumer debt that can cause a judgment lien. Either the defendant has the funds during the period of his criminal case, or he does not.

The Court's decision in Mr. Brown's case was based on misrepresentations and mistaken statements made by both the Government and Defense concerning authority, access, and dominion over donated funds held in trust.

 If the intent was not malicious, the AUSA might have brought the matter to the attention of Mr. Sansone to resolve outside the courtroom. All the CJA needed to do was to ask Mr. Brown to provide copies of all his personal financial statements to determine if any monies were accessible or controlled by him. This would have required some minimal legwork, such as ascertaining that GiveSendGo is a "pass-through" where under the Stripe system, funds go to Stripe and then are periodically batched for deposit into the financial account designated for deposits of the campaign donations. No Stripe deposits ever went to any account of Mr. Brown.

The AUSA also demanded that the court direct GiveSendGo to not pass the donations through to the account designated for Stripe deposits. Yet, on January 3, 2022 the GiveSendGo site advertisement for Mr. Brown made zero mention of legal defense donations. In other words, with no legitimate justification, the AUSA demanded that the court order GiveSendGo to become its collection agency for future donated funds  not scheduled to pass directly to Mr. Brown during

the phases of his case in Tampa. The AUSA's demand that funds donated on behalf of Jeremy Brown's future benefit for deposit into a third party's account be stopped was the same as saying that all undistributed insurance policy benefits, wills, trusts, and future gifts that are just the gleam in someone's eye must be denied and attached immediately in the present for every criminal defendant who seeks public defender counsel. The Government sought to bypass Constitutional due process and attempted to institute the financial tyranny recently seen in Canada that interfered with donations for beneficial support of the trucker convoy participants' legal free speech.

All Stripe deposits went to Ms. Aldridge, as shown in the bank statements held by the Government and Defense that the Government subpoenaed without any notice to her.  She was never allowed to object. Mr. Brown is not a co-tenant of the bank accounts. Ms. Aldridge was not asked to voluntarily provide her bank statements or an accounting of the donations. She provides the Trust accounting in Exhibit C which is requested for filing under seal.

Both the Government and the Defense have the bank statements that show Stripe deposits always went to Ms. Aldrich. Since we are not living in the late 1800's circa pre-suffrage or during the times when women were not allowed to make contracts or manage finances, it was archaic and demeaning for the Government to assert that Jeremy Brown is the boss of Ms. Aldridge where he could order her around and direct how she would distribute the donations. The Government proceeds without objecting to the court order, despite knowing that Jeremy Brown never received any funds and that a discretionary trust existed for the GiveSendGo donations.  Trusts in Florida fall under the subject matter jurisdiction of Florida State Courts. Florida statutes limit when a court may attach the corpus of  trust, and this requires civil suit. (See Exhibit D, Florida Statutes Excerpts on Trusts).

The Government made a false logic leap that donated funds that someday will be used for the benefit of Jeremy Brown equal present-day income and are available financial assets that should be paid for appointed defense counsel. In 1880's fashion, the Government made Mr. Brown the boss of Ms. Aldridge. The Government wrote:

> Whenever the United States magistrate judge or the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to … the court for deposit in the Treasury as a reimbursement to the appropriation, current at the time of payment, to carry out the provisions of this section.

18 U.S.C. 3006A(f). ECF No. 80 at 4.

The funds are not presently available to Mr. Brown. The Government made unequivocal misrepresentations when it wrote: "As of today, January 3, 2022, Brown has access to $51,942 through GiveSendGo. People have donated money for the express purpose of paying for Brown's legal defense, and therefore, those funds should be used to reimburse the CJA Fund for the costs of Brown's representation." ECF No.80 at 6.  Mr. Brown had no access to the donated funds - unless the Government continues to apply male-only rights from America in the 1880's or England in Downton Abbey pre-WWI. Mr. Brown does not get to order Ms. Aldridge as Trustee or as his partner to distribute discretionary, spendthrift Trust funds. $51,942.00 of the funds donated as of January 3, 2022 were not made for the express purpose of *legal defense*. And in arguendo, even if they were made expressly for legal defense, the Court may not garnish distributions from a trust until they are made to Mr. Brown. Exhibit D shows that under Florida statutes if there is a claim to the Trust corpus, the matter resides in Florida state court as a *civil suit*. Florida trusts fall under Florida courts for subject matter jurisdiction. If the Government

wants to bring such a civil suit, it can do so after the case is closed. There is no current urgency except for an imaginary race for the funds created in the minds of the Government personnel.

The Government misrepresented to the Court the GiveSendGo solicitations. Exhibit E shows the storyline of solicitation.  When supporters established the fund, they added words about *legal defense* by October 9, 2021 - shown below:



October 20, 2021 was the last day the GiveSendGo account listed *legal defense fund* in its solicitation as can be seen in Exhibit E. The funds were held in oral trust, allowable in Florida, and on October 20, 2021 totaled $10,951.00.  The Government could have done its internet homework to see these facts. The GiveSendGo site looked like the below image at the end of January 2022:



Archived screenshot of http://givesendgo.com/jeremybrowndefense

Date: January 30, 2022

Funds raised $58,001 of $250,000

The word "legal" was not located on the GiveSendGo page when performing a word search.

The storyboard shows that donations for *legal defense* totaled only $10,951. Jeremy Brown never had access to or possessed these funds. They are held in trust. Whether they are used for this criminal matter or for defense in a potential civil suit in D.C. since anyone affiliated with the OathKeepers is being persecuted from the Government forces in Washington, D.C., remains at the discretion of the Trustee. Mr. Brown can make suggestions. But the Government's representation in its emergency motion that any more than $10,951 was collected for *legal defense* was false and irresponsible. High schoolers know how to use WayBack Machine to review previous versions of internet sites. No *legal defense* donations were solicited after October 20, 2021 by Mr. Brown's supporters.

The CJA should have presented to the Court that a discretionary spendthrift trust existed.  He was presented with this information before January 31, 2022.  The Defense never responded in

writing in opposition to the Government's Emergency Motion and did not object in writing to the subsequent court order. And just as the Government had done, the CJA defender also wrongly made Mr. Brown the boss of Ms. Aldridge on January 5, 2022 when he stipulated that none of the funds would be spent, and he would communicate such order. EFC No. 84. Mr. Sansone had no standing or authority to communicate any such order because Mr. Brown never had any standing or authority over how and when donations would be spent - regardless of what he misapprehended. On January 5, 2022, Mr. Sansone requested a continuance for the emergency motion hearing until January 19, 2022, and according to the judgment order, incorrectly stated in the hearing that Mr. Brown had authority over donations. ECF 97 at 3.

Aside from Mr. Sansone and Mr. Brown incorrectly stating that Mr. Brown had authority over the funds, how did the Court conclude that the donated funds should be made available on behalf of Mr. Brown right now? The Court used what the Government wrote: "Through its motion, the United States advised the Court that a crowdfunding webpage was created for Brown's *legal defense* (Doc. 80)." ECF No. 97 at 2. (Emphasis added). The Government never provided any evidence that the screenshot it showed had any solicitation for *legal defense* funds. The page shown by the Government was devoid of evidence of funds solicited for *legal defense*.

"*Defense*" does not equal "*legal defense*." In the English language, *defense* is an action against any attack. The Government presented no evidence that solicitation was made solely for *legal defense* in its assertion that over $58,000.00 should be taken by the court, along with all future donations. After October 20, 2021 no solicitation was made for *legal defense*. There were local fundraisers held that focused on *Defense of Constitutional rights*. The First Amendment is one such right under attack. As is the Eight Amendment with Covid-19 suspension of the Speedy Trial Act in many federal courts, with defendants being jailed for indefinite periods of time when

the Bail Reform Act of 1984 was found Constitutional by the US Supreme Court years earlier largely because of the protections afforded by the Speedy Trial Act. *Defense* can involve costs for engagements with members of Congress and advertisements nation-wide. *Defense* outside of "*legal defense*" is not a limited concept.

ECF 97 states that Mr. Brown alleged that the funds were collected for his defense and will be available for his future legal defense. It is unclear where either Mr. Brown or Mr. Sansone came under the notion that all the funds were obligated for future *legal defense* and were being moved into a non-profit entity. Regarding the paperwork for the 501(c)(3), it had not even been processed by the Florida Department of State by the January 19, 2022 hearing. The articles were filed on January 19, 2022 but not yet processed or posted. See Exhibit F. A simple check of the Florida SunBiz site by the Defense would have shown no existing entity. Nor could any of the donated funds have gone into that entity for any expenditure for Mr. Brown because a third-party person who completed the on-line form added Mr. Brown as a Director. Florida non-profits may not expend a single cent of donated funds for a director's benefit. The Defense's statements were not properly informed and were irrelevant and incompetent as to Florida non-profit organizations.

The Court ordered that because Mr. Sansone as of January 19, 2022 estimated his costs to date at $7000.00, and the cap was $12,300.00 - where Mr. Sansone had not yet requested Court approval to exceed the cap by the end of January when the order was filed - that Mr. Brown must deposit $12,300.00 into the Court registry. ECF 97 at 4. Even though Mr. Sansone was advised prior to the January 31, 2022 deadline for Mr. Brown to pay the court registry $12,300.00 that the donations were held in a discretionary spendthrift trust, he filed no objection to the order for the funds' deposit. Mr. Brown had no funds and could order no transfer of funds. When Mr.

12

Brown was unable to pay, the Court ordered that the Defense show cause by February 4, 2022, to not hold Mr. Brown in contempt. ECF No. 100.

Mr. Sansone missed the February 4, 2022, suspense date and requested an extension of time. ECF No. 101. He filed a response on February 8, 2022 that included the undersigned's letter regarding the discretionary, spendthrift revocable trust that had been operating since October 2021 and was memorialized in a written trust that (1) allows for continuance of the trust in the event Ms. Aldridge passes-away while the trust retains funds and (2) designates what will happen to the funds if Mr. Brown passes-away while funds remain in trust. The initial trust was oral and was legally allowed under Florida statutes for trusts (See Exhibit D ). The oral trust was being converted to a written trust prior to the January 19, 2022 hearing and the ruling in ECF No. 97.  The order for Mr. Brown to pay $12,300 exceeds his abilities and exceeds the amounts donated for *legal defense* where the Trustee retains discretion over all spending. The non-profit entity was and remains completely irrelevant except that if Mr. Brown passes away while funds remain in the trust, the nonprofit is the charity effort to receive those funds for the benefit of *Defending all Americans' Constitutional Rights*.

An evidentiary hearing as to why Mr. Brown should not be held in contempt was set for March 1, 2022. Even though the Government and the Defense obtained Ms. Aldridge's bank records that showed all the Stripe deposits, the Government allegedly did not conduct the March 1, 2022 hearing because it had not received Stripe or GiveSendGo records. The GiveSendGo and Stripe records are superfluous if the matter alleged is in fact the matter the Government is concerned with, and the Government is not abusing the court to conduct a discovery fishing expedition to persecute and charge the Trustee, or to confuse her into saying words the Government will later misinterpret.

Mr. Sansone later filed ECF docket No. 117 on March 12, 2022 advising the Court he exceeded the cap of $12, 300.00. He did not convey in ECF No. 117 that between January 19, 2022 and early March 2022 his fees went from $7,000.00 to $18,000.00 based on what he conveyed to the Trustee. He merely stated in ECF 117 that he exceeded the cap.

Mr. Brown never had access to or controlled any of the donations and they are held in a discretionary, spendthrift trust that is under the subject matter jurisdiction of Florida state civil courts. This court cannot order a distribution by the Trust to Mr. Brown based on the Government's misrepresentation that the funds were available to and accessible by Mr. Brown from his jail cell. If the Government is using this process as a thin veil to build a case for fraud - which does not exist - then it is violating the Federal Rules of Criminal Procedure and a good amount of caselaw that make clear that Rule 17 may not be used as a discovery tool.

**II.   LAW AND ARGUMENT FOR QUASHING SUBPOENAS**

**A.  The Subpoenas for Testimony Are Unreasonable and Oppressive**. "The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial. . . ." *United States v. Nixon*, 418 U.S. 683, 698 (1974). This standard is now captured in Fed. R. Crim. P. Rule 17(c)(2) that states that on motion made promptly the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

1.  The demand that non-party Stewart provide all non-privileged documents and provide testimony is oppressive in that any documents and words not herein or previously provided are held under attorney-client privilege and work product. Ms. Stewart has nothing further to provide or add and made that clear to the Defense. She is the legal counsel for Ms. Aldridge. Next, the

subpoena requires that Ms. Stewart be denied access to the open court and remain in a witness room - where she would not even be allowed courtroom entry to object on behalf of improper questioning and invasions of privilege against her client. Further, the subpoena is oppressive because Ms. Stewart has provided pro bono research support to Mr. Brown's case. However, any testimony at the hearing will bar Ms. Stewart from providing pro bono support to discovery. The discovery protective order is clear that no witness who has testified at any hearing may view discovery materials. In effect, the subpoena will negate any future pro bono support to Mr. Brown.

The subpoena is both oppressive and unreasonable in that it prevents proper representation by Ms. Stewart of client Ms. Aldridge and removes her from providing pro bono support to Mr. Brown's case. The subpoena is also in violation of Fed R. of Crim P. Rule 17 in that rather than being for a specific date, it is open-ended in directing that "date is subject to change." The statement infers the subpoena is eternal.

Based on the above, the Court should quash the subpoena issued to Ms. Stewart for being unreasonable and oppressive. She has no testimony that is not privileged and no documents that are not privileged to provide.

2.  The subpoena for the non-profit entity should be quashed for being unreasonable and oppressive to Ms. Aldridge. She never moved any funds into the aspirational non-profit. The non-profit has no by-laws or elected directors, where the person completing the on-line form entered initial names as required by the form. Mr. Brown is in jail so no initial meeting can be conducted. Mr. Brown is in jail and cannot participate at all at this time. The non-profit never had any bank account. The financial records already with the AUSA and Defense show no GiveSendGo funds through Stripe were or are deposited to the non-profit. The non-profit was

established for good deeds that Mr. Brown wants to accomplish in the future regarding Constitutional rights. Ms. Aldridge has nothing beyond what comes from the public FL Sunbiz site that requires no subpoena to obtain. (Exhibit F). The Government can have produced its own documents on the non-profit business entity. The non-profit business entity is irrelevant and was mistakenly referred to by Mr. Sansone in a previous hearing. It is unreasonable and oppressive to require Ms. Aldridge to be called as a witness on a completely irrelevant topic.

**B.  Relevant Documents Demanded Can Have Been Provided in Advance; The Trust Falls Outside the Court's Subject Matter Jurisdiction; None of the Documents Are Required for Trial, and the Government Appears to be on a Fishing Expedition.** In *Nixon*, the Supreme Court established that to require the production of documents prior to trial, the proponent of the subpoena must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Nixon*, 418 U.S. at 699–700.

The U.S. Supreme Court also retained the standards from *Bowman Dairy Co. v. United States*, 341 U.S. 214 (1951). "This case recognized certain fundamental characteristics of the subpoena duces tecum in criminal cases: (1) it was not intended to provide a means of discovery for criminal cases, *id.*, at 220; (2) its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials, ibid." *United States v. Nixon*, 418 U.S. 683, 698-699 (1974).

1.  The subpoena for Ms. Stewart should be quashed because she holds only information that is attorney work product or that falls under attorney client privilege. Nothing is admissible

as evidence at trial or for this hearing. This hearing is not tied to the trial and is an auxiliary matter. However, as discussed in the background and facts *supra*, errors were made by the Government and Defense where the requirement to place an attorney on the stand as witness is not made in good faith here. The relevant information resides in the Government and Defense admitting their mistakes and proceeding to trial without further distractions. The Government has all the GiveSendGo information needed (also included in Exhibit E, as well as Ms. Aldridge's Stripe deposit records in her accounts In Exhibit C under seal).

The subpoena for Ms. Stewart should be quashed.

2.  The subpoena for Ms. Aldridge to testify about and provide documents for the trust and GiveSendGo is a fishing expedition. The Government and Defense already obtained Ms. Aldridge's bank account statements and can see all the Stripe deposits.  Exhibit C under seal shows that she has properly accounted for the trust corpus. Under Florida law, the Trust is a private document and the instrument falls outside the subject matter jurisdiction of this court. The Trust document can be provided to the Court for a private in-camera review as an accommodation.

Because the Trust is private, Florida statutes allow a Trust certificate to be provided to show written trust existence. (See Exhibit G). Ms. Aldridge required that certificate to obtain a trust bank account and safety deposit box. And since it appears the US Attorney's office either here or in DC leaks information to the media that is not in the dockets, such as the search warrant affidavit that was never even provided to the Defendant for the September 30, 2021 search or anytime immediately thereafter, there is a high likelihood the private trust will land in the press. Ms. Aldridge, responsible for the funds, has no means to defend herself at home since the FBI

took her self-defense legal weapons and has not returned them. Publicity about the funds makes her a target for kidnapping and makes her home a target for burglary.

The Trust instrument is inadmissible as evidence. The *Erie Doctrine* applies regarding the law to apply. Here Florida law applies. The trust may be contested in Florida civil court only. Florida law only allows one of its courts to order attachment of trust corpus as a last resort when child support payments or alimony are involved. This Court may issue no order for the trust to do anything because it has no subject matter jurisdiction. Ms. Aldridge has nothing to say about the trust that is relevant and not already stated. The Trust Certificate proves existence of a revocable, discretionary, spendthrift trust.

The documents provided herein, documents the Government subpoenaed from Stripe and Ms. Aldridge's bank, and what the Government could have found on its own on-line show there is no relevant testimony from Ms. Aldridge. She holds all the donations in trust. Jeremy Brown has no access to the trust funds until they are distributed to him. The subpoenas appear to be a fishing expedition to try to accuse Ms. Aldridge of wrongdoing. She has followed all Florida legalities regarding a revocable, discretionary, spendthrift trust.

The Subpoena for Ms. Aldridge regarding GiveSendGo, trust matters and the nonprofit should be quashed.

**C.  There Must be Relevancy, Admissibility, and Specificity and the Government Fails**.
The prosecutor "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *United States v. Nixon*, 418 U.S. 683, 700 (1974).

1.  The subpoena for Ms. Stewart cannot produce any relevant information because she has no testimony or documents not already provided; all else remains under attorney client privilege

and work product. Her subpoena should be quashed since she has nothing relevant or admissible to provide.

2.  The arguments above also cover this topic for the subpoenas issued to Ms. Aldridge. There is no relevant, admissible, specific information that she can provide that is not already available to the parties in the criminal case. The Government and Defense should admit their past mistakes, and the subpoenas should be quashed.

**D.  Testimony and Documents Will Violate Privilege**. In *Nixon*, the Supreme Court stated the public has a right to evidence "except for those persons protected by a constitutional, common-law, or statutory privilege, United States v. Bryan, 339 U.S. [323, 331 (1950)]; *Blackmer v. United States*, 284 U.S. 421, 438 (1932) . . . ." *Nixon*, 418 U.S. at 709 ((quoting *Branzburg v. Hayes*, 408 U.S. 665, 688 (1972)). Whether by the Constitution, common law, or by statute, the privileges recognized may not be bypassed to force disclosure. Nixon at 709-10. Rule 17 does not define "unreasonable" and "oppressive," but "they have a common sense meaning, and courts finding a valid and specific privilege may quash subpoenas on that ground. See, e.g., Jaffee v. Redmond, 518 U.S. 1, 10, 15, (1996)." *United States v. Simmons*, 515 F. Supp. 3d 1359, 1364 (M.D. Ga. 2021).

1.  All testimony and documents demanded in the subpoena will violate attorney-client privilege and work product. Ms. Stewart's subpoena should be quashed.

2.  All testimony and document demanded of Ms. Aldridge that are not already in the parties' possession or contained herein will violate either Ms. Aldridge's attorney-client privilege or her accountant-client privilege that exists by law in Florida. Ms. Aldridge's subpoenas should be quashed.

## CONCLUSION

The documents provided with this motion and otherwise received by the Government and Defense contain all the information needed to show that Mr. Brown has no available funds with which to pay Mr. Sansone's bill. The subpoenas fail all the standards and tests such that they are unreasonable, oppressive, demand irrelevant and inadmissible testimony and material, and violate privileges. This motion and its exhibits explain why the subpoenas should be quashed and why the order for Mr. Brown to pay should be reversed - making the subpoenas unnecessary where anything will only be a fishing expedition.

**WHEREFORE**, non-party Carolyn Stewart and non-party Tylene Aldridge, move this Honorable Court for the entry of an Order quashing each of their Subpoenas, or alternatively, to continue the hearing ordering no further testimony or document production by Ms. Stewart and Ms. Aldridge, or to review the Trust instrument in-camera, and to grant such other relief as this Court deems just and proper.

Dated March 25, 2022                         Respectfully submitted,
                                             /s/ Carolyn A. Stewart
                                             Carolyn A. Stewart, FL Bar No. 1025715
                                             Attorney
                                             Stewart Country Law PA
                                             1204 Swilley Rd.
                                             Plant City, FL 33567
                                             Tel: (813) 659-5178
                                             Email: Carolstewart_esq@protonmail.com

## CERTIFICATE OF SERVICE

I certify that on March 25, 2022, I electronically filed the foregoing with the
Clerk of Court by using the CM/ECF system, which will send a notice of electronic
filing to all parties of record.

/s/ Carolyn Stewart
CAROLYN STEWART
Attorney