District Court
**Middle District of Florida**
**Tampa Division**

## GOVERNMENT EXHIBIT

**Exhibit No.:** _____10_____

Case No.: 8:21-cr-348-SCB-SPF

UNITED STATES OF AMERICA

vs.

JEREMY BROWN

Date Identified:_____03/25/22_____

Date Admitted:_____03/25/22_____

```
 1              IN THE UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
 2                        TAMPA DIVISION

 3

 4   UNITED STATES OF AMERICA,        )
                                      )
 5                  Plaintiff,        )
                                      )
 6                                    ) Case No.
             vs.                      ) 8:21-CR-00348-SCB-SPF
 7                                    )
                                      )
 8   JEREMY BROWN,                    )
                                      )
 9                  Defendant.        )

10

11

12   _____

13                        MOTION HEARING
                 (taken via Zoom videoconference)
         BEFORE THE HONORABLE SEAN P. FLYNN
14            UNITED STATES MAGISTRATE JUDGE

15                      JANUARY 5, 2022
                          12:10 A.M.
16                      TAMPA, FLORIDA
     _____
17

18

19

20

21        Proceedings transcribed via courtroom digital audio
     recording by transcriptionist using computer-aided
22   transcription.
     _____
23

24           DAVID J. COLLIER, RMR, CRR
            FEDERAL OFFICIAL COURT REPORTER
          801 NORTH FLORIDA AVENUE, 7TH FLOOR
25             TAMPA, FLORIDA  33602
```

```
 1   APPEARANCES:

 2

 3   FOR THE GOVERNMENT:

 4

 5           Jillian M. Jewell

 6           Risha Asokan

 7           United States Attorney's Office

 8           400 North Tampa Street, Suite 3200

 9           Tampa, Florida  33602

10           (813) 274-6000

11

12

13   FOR THE DEFENDANT:

14

15           William F. Sansone

16           Sansone Law, P.A.

17           609 West De Leon Street

18           Tampa, Florida  33606-2719

19           (813) 361-0874

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2                      – – – o0o – – –
 3            THE COURT:  All right.  Let's go on the record.
 4            Ms. Vito, would you please call the case.
 5            COURTROOM DEPUTY:  Certainly.  It's United States
 6   versus Jeremy Brown.  It's Case Number 8:21-CR-348-SCB-SPF.
 7            THE COURT:  Counsel, please make appearances.
 8            MS. JEWELL:  Jillian Jewell for the United States.
 9            MS. ASOKAN:  Risha Asokan for the United States.
10            THE COURT:  Good afternoon.
11            MR. SANSONE:  Good afternoon, Your Honor.
12   Bill Sansone on behalf of Mr. Jeremy Brown.
13            THE COURT:  Good afternoon, Mr. Sansone.
14   Good afternoon to you, Mr. Brown.
15            THE DEFENDANT:  Yes, Your Honor.
16            THE COURT:  Mr. Brown, we are conducting this hearing
17   by videoconference.  Pinellas County Jail, where you are
18   currently housed, has informed the Court that they are in
19   quarantine procedures due to the outbreak of COVID-19.
20            Are you able to see and hear me, sir?
21            THE DEFENDANT:  I can see you and I can hear you.
22            THE COURT:  All right.  Sir, if at any time during
23   this hearing you can no longer see who is speaking or hear who
24   is speaking, please let me know immediately.  Do you promise to
25   do so?
```

1              THE DEFENDANT:  Yes, sir.

2              THE COURT:  All right.  Thank you, Mr. Brown.

3              All right.  We are here today on the Government's

4    emergency motion to prevent dissipation of assets reserved for

5    CJA reimbursement, which will be found at Docket Entry 80.

6              Who will be speaking for the Government?

7              MS. JEWELL:  Jillian Jewell.  I will, Your Honor.

8              THE COURT:  All right.  And, Mr. Sansone, you

9    indicated just prior to the hearing that you'll be seeking a

10   continuance of this hearing; is that correct?

11             MR. SANSONE:  Correct, Your Honor.

12             THE COURT:  All right.  Let me hear from you then,

13   sir.

14             MR. SANSONE:  Your Honor, as you know, I think it was

15   filed two days ago and the hearing was set yesterday.  I spoke

16   to Mr. Brown very briefly this morning through the jail video,

17   we didn't have much time to talk about it, and then just now.

18   He does not have -- does not have a copy of the motion and

19   there are things that he would like to discuss with me in

20   detail, you know, about kind of the full purposes, that I'm

21   essentially not prepared to go forward with this hearing

22   without speaking in more detail with Mr. Brown and maybe other

23   people, and therefore we would be requesting a two week

24   continuance.  I've asked Mr. Brown that this Court might

25   inquire that during that interim if we would agree that no

1    money from this fund be spent at all on anything, and Mr. Brown

2    agreed that that would happen in the interim, so that would

3    give us time to meet.

4           We do intend to oppose this, but I just really

5    haven't had time to talk to Mr. Brown in-depth about this page,

6    the money, and reasons, and just a whole -- a slew of things

7    that I would need to be better prepared on before going

8    forward.  Personal visits have been restricted.  I'm not sure

9    even at this time how I get Mr. Brown a copy of the document,

10   but I'm going to be working that out with the jail immediately,

11   but -- so we'd be asking for two weeks, and we will

12   essentially -- even though Mr. Brown believes that this is a

13   violation of the First Amendment, it's his money, his free

14   speech, and the Fourth Amendment as to a seizure, we would

15   agree to abide by the condition of not spending any money

16   associated with this account at all, for any type of purposes,

17   during the interim until a hearing is held and the Court has

18   made a ruling on the Government's motion.

19          THE COURT:  All right.  Ms. Jewell, what's the

20   Government's position?

21          MS. JEWELL:  The United States opposes his request

22   for a continuance, primarily because the purpose of the motion

23   is to preserve the status quo, and what he is agreeing to do

24   and not spend those funds is exactly what we're seeking, so I

25   don't believe that a continuance is necessary.

1         THE COURT:  Well, what he's agreeing to do is

2    maintain the status quo and not spend the money during the

3    period of the continuance.

4         MR. SANSONE:  Right.

5         THE COURT:  So why would the Government be prejudiced

6    if Mr. Brown is agreeing not to disburse any of those funds

7    during the period of a continuance?

8         MS. JEWELL:  The purpose of the motion was simply

9    that.  The United States hasn't moved for the reimbursement

10   order yet.  This Court has the authority to enter a

11   reimbursement order.  The purpose of the motion is simply to

12   preserve the status quo, so, I mean, I don't oppose if he

13   doesn't plan on spending the money.  That's fine.  I suppose we

14   have no objection.  If he's not going to spend the money,

15   that's all we're seeking to preserve right now anyway.

16        THE COURT:  Right.

17        MS. JEWELL:  So --

18        THE COURT:  All right.  Well, I'm going to reserve

19   ruling on that for a second because I want to talk about the

20   substance of the motion, and with the understanding,

21   Mr. Sansone, that you need additional time, you're not prepared

22   to answer the Court's questions, I understand that, but in

23   looking at the motion -- first off, Ms. Jewell, it's listed as

24   an emergency motion, doesn't comply with Local Rule 3.01(E),

25   you don't indicate in the beginning of the motion why it's an

1    emergency motion and what date you need a ruling by.  Reviewing

2    the motion, I don't see why it's an emergency.  I don't know

3    why it was labeled as that.  It might be a time sensitive

4    motion, but it's certainly not an emergency, and if you

5    disagree, I'll hear you out on that.

6            But, more importantly, the issue here, as framed by

7    the Government, is whether Mr. Brown now has funds available to

8    him that could be used to reimburse the United States for the

9    costs of his court-appointed attorney.  Now, according to the

10   Government, Mr. Brown does have access to funds that were

11   raised for his legal defense.  The Government though is not

12   asking the Court at this time, as Ms. Jewell just stated, to

13   enter an order asking that certain funds be disbursed to the

14   Government or be placed in the Court's registry to be used to

15   reimburse the Government for any expenses from his

16   court-appointed attorney.  Instead what you're asking the Court

17   to do is basically to freeze all assets in his legal defense

18   fund that he is raising.

19           So explain to me, Ms. Jewell, why the Government

20   should entertain such a motion.  I mean, excuse me, why the

21   Court should entertain such a motion.

22           MS. JEWELL:  It should have been more of a time

23   sensitive motion, I do agree to that.  Initially this

24   fundraising account didn't have much money, and now there is a

25   critical mass of funds.  We're up to $52,000 now.  In the jail

1   call the defendant had stated that he will be reevaluating

2   these funds on the 1st and 15th of the month.  That means in

3   ten days he's going to be considering whether he's going to

4   make disbursements from this account, and so the United States

5   was seeking to preserve the status quo, prevent the dissipation

6   of any assets, so that this Court can enter an order to

7   reimburse the CJA fund at the appropriate time.

8           These people have been donating for the soul purpose

9   of his legal defense, so if he is disbursing funds to anyone

10  else, he will be defrauding these people of the true purpose of

11  these funds, so the United States simply wanted to make sure

12  that no money was being moved, and it was important to do so in

13  a time sensitive manner to prevent that from happening.

14          THE COURT:  If Mr. Brown is defrauding people who

15  contributed to his legal defense fund, wouldn't that be a

16  separate civil action that they would file?

17          MS. JEWELL:  Perhaps, Your Honor, yes.

18          THE COURT:  All right.  So let me just cut to the

19  chase here then, Ms. Jewell.

20          The maximum amount that CJA counsel can be

21  compensated without seeking a waiver from the Chief Judge of

22  the Eleventh Circuit is $12,300 for services that were provided

23  after January 1st of this year.  Why should the Court entertain

24  doing anything with the amount above the maximum compensation

25  that would be paid to Mr. Sansone unless he received a waiver

1   from the Chief Judge?

2           MS. JEWELL:  Any additional funds raised for his

3   legal defense the United States would seek for a fine because

4   he has an ability to pay.  He shouldn't be benefiting from this

5   when people are donating for the purpose of his defense.  He

6   shouldn't continue to keep funds from this crime.

7           THE COURT:  So now you're asking to freeze those

8   funds because you believe it should be used to pay a potential

9   fine in this case?

10          MS. JEWELL:  Not at this time, Your Honor.  Again,

11  we're seeking just to preserve the status quo, prevent any

12  funds from being moved, until we have a greater understanding

13  of what's happening in this case.

14          THE COURT:  All right.  Mr. Sansone, if you need time

15  to discuss with your client, Mr. Brown, whether he's agreeable

16  to this, I will put you in a breakout room and you can have

17  this discussion, but at this point would your client agree to

18  deposit the $12,300 in maximum compensation that you could

19  receive for services as the court-appointed CJA attorney in

20  this case into the Court's registry at this time, consistent

21  with the Eleventh Circuit opinion that the United States cited

22  in their motion, which is *United States versus Pacheco-Romero*,

23  which can be found at 995 F.3d 948, in which the Eleventh

24  Circuit affirmed the magistrate judge's order requiring the

25  defendant to deposit certain amounts of money, in that case it

1    was $15,000, into the Court's registry for purposes of

2    reimbursing any CJA voucher that was submitted by his

3    court-appointed attorney?

4          MR. SANSONE:  I'll break out and talk to Mr. Brown,

5    but just at the outset, Judge, I read the page and there is

6    absolutely -- just the Fund Me page.  The Government adds the

7    word "legal" to "defense" and then says on the page that it's

8    restricted solely to legal services.  There's no restriction at

9    all.  It doesn't mention anything.  If the title was

10   "Mr. Brown's Please Help Me Out Fund," I don't know if the

11   Government would have -- or "Please Help Me Pay My Bills While

12   I'm In Jail Fund" -- the Government adds "legal" and then says

13   the sole purpose of these funds is for legal defense, and it

14   just says his story, it doesn't say help me pay for my lawyer,

15   it doesn't say anything.  I don't see there's any restriction

16   on this at all.  If private citizens want to give him money,

17   they can give him money.  But I can ask Mr. Brown about the

18   12,000.

19         I think, Judge, what we would be asking for, even as

20   to that, because I think questions will come up with Mr. Brown,

21   I think it's reasonable for us to ask for a two week

22   continuance, we will abide essentially by a temporary order

23   restricting any money being spent for anything, even legal

24   funds, during that time period until we can -- we have another

25   hearing with this Court and Your Honor can make a ruling.

1          THE COURT:  All right.  Well, again, why don't you

2     consult with your client in a private videoconference and see

3     how he would like to proceed.  If that's your client's

4     position, that you would like a two week continuance and that

5     he would stipulate to freezing all funds in that account until

6     the Court has resolved the pending motion, then I will take

7     that motion up when we return to the hearing.

8          In the alternative, if your client wants to

9     voluntarily deposit the max compensation amount of $12,300 to

10    the Court's registry, the Court is willing to resolve the

11    motion here today.

12         MR. SANSONE:  Okay.

13         THE COURT:  So with that, I will put you in a

14    breakout room and we'll be in recess.  And let me know when

15    you're ready to proceed.

16         MR. SANSONE:  Thank you, Your Honor.

17                        - - - - -

18         (Recess at 12:30 p.m. until 12:34 p.m.)

19                        - - - - -

20         THE COURT:  We're back on the record.

21         Mr. Sansone, after consulting with your client, how

22    would you like to proceed?

23         MR. SANSONE:  Your Honor, we would not like to

24    address any legal arguments today or make any stipulations --

25    I'm sorry, that was the wrong choice of words.  We will make

1    one stipulation.

2            We would just be asking for a two week continuance

3    for Mr. Brown and I to just sit down and kind of go through all

4    of our options, legal arguments.  It's going to take longer

5    than a breakout room.  And during the interim Mr. Brown does

6    stipulate and will agree to that no money for any purpose, even

7    if it was going to be spent for something legal, no purpose at

8    all, any of the money will be used in the interim until we

9    reconvene and your Court -- Your Honor has a chance to fully

10   address this issue.

11           THE COURT:  All right.  And by agreeing to this

12   stipulation, Mr. Sansone, your client is conceding that he does

13   have the authority to enter into this stipulation and to freeze

14   the assets that are in the account referenced in the

15   Government's brief, which is the crowd funding web page?

16           MR. SANSONE:  Yes, he does have the authority, and

17   I will also be talking to Ms. Aldridge about the potential

18   stipulation that we've -- that we've entered to, which is

19   essentially a court order.

20           THE COURT:  It will be a court order.

21           Mr. Brown, I saw you raised your hand.  Would you

22   like to address the Court or your attorney?

23           THE DEFENDANT:  I would like to address the Court,

24   Your Honor.

25           As of this morning all my exterior communications

1   have been shut off, so there may be a delay in the getting of

2   that information to the people that have the ability to cease

3   and desist all financial activity out of our operation, and so

4   that was something I was going to address as well, but I just

5   wanted to make sure that you understand that I can't physically

6   actually contact them right now because of the Federal

7   Government's restriction of my ability to communicate.

8            THE COURT:  All right.  And you're saying the Federal

9   Government's restriction of your ability to communicate.  Are

10  you referring to the quarantine that's in place in Pinellas

11  County Jail right now?

12           THE DEFENDANT:  No, Your Honor.  This morning, after

13  I met with my attorney, Mr. Sansone, I attempted to make a

14  phone call to my girlfriend.  The phone system has been

15  blocked, but only for me, not for other inmates, and I have

16  sent kiosk messages, which do have an extreme long turnaround

17  time, so I don't know whether they're blocking my digital text

18  messages that I have through the system here in the jail to

19  outside people as well.  I'm also prepared to write letters to

20  see if they are restricting my mail access as well.  But as of

21  right now I have no ability to communicate with anybody, to

22  include my attorney, outside my jail cell.

23           THE COURT:  Mr. Sansone, what do you know about that?

24           MR. SANSONE:  I was -- I was just made aware of that

25  in the breakout.  I did speak with him this morning on a

1   videoconference.  I was going to schedule one tomorrow just to

2   see if it would work, essentially.

3          Just to let Mr. Brown know, I am in contact with

4   Ms. Aldridge, and she actually has texted me while we were even

5   in this hearing, I don't know if she knows what's going on or

6   not, but I can communicate to her anything that -- and

7   everything that happened in court today, and I'm not sure who

8   has complete access, but I can talk to Ms. Aldridge

9   immediately.

10          THE DEFENDANT:  Yeah.  I mean, getting her the

11   message is -- I just want to make sure that -- Your Honor

12   stated that Mr. Brown has the authority.  I just wanted to make

13   sure the Court understands I have the authority, I do not have

14   the means, other than, you know, your ability to send her a

15   text message, but, again, she doesn't know what's going on

16   because she was expecting a phone call from me this morning,

17   and so I just wanted to make sure that that was clear and that

18   there's no misunderstanding.  I would hate to catch another

19   charge from the Federal Government for something ridiculous.

20          THE COURT:  All right.

21          MR. SANSONE:  I will let Ms. Aldridge know

22   immediately upon hanging up that -- what the stipulation is

23   that we agreed to and no money is to be spent for any reason by

24   anybody for anything.

25          THE COURT:  All right.  So, Mr. Brown, your attorney,

```
 1    Mr. Sansone, represents you, and Mr. Sansone is going to advise
 2    the people that you tell him need to be advised in order to put
 3    this stipulated injunction in place, and then the continued
 4    hearing which will occur two weeks from now.  Do you
 5    understand?  Do you understand, Mr. Brown?
 6              THE DEFENDANT:  Yes, Your Honor.
 7              THE COURT:  All right.  Mr. Sansone, are you agreeing
 8    to do so?
 9              MR. SANSONE:  Yes, Your Honor.
10              THE COURT:  All right.  So the Court is going to
11    grant Mr. Brown's oral motion for continuance.  We will reset
12    this hearing for January 19th.
13              Mr. Sansone, is there a time that works best for you?
14              MR. SANSONE:  Afternoon anytime works best, but I can
15    work with Your Honor.
16              THE COURT:  Ms. Jewell?
17              MS. JEWELL:  Any time will work as well, Your Honor.
18              THE COURT:  All right.  So we do have an issue
19    with -- you know, again, because of the COVID outbreak in
20    Pinellas County Jail, there is currently a quarantine.  We
21    don't know when that quarantine is going to be lifted, so it's
22    best to assume that Mr. Brown will still be in quarantine when
23    we have this continued hearing, so I am going to set it by
24    Zoom, and because of that we only have a limited period of time
25    that we can conduct the Zoom hearing, because duty matters are
```

1    handled at Pinellas County beginning at two o'clock.  So if

2    the -- if the parties don't think it will take more than an

3    hour, I'm happy to set it at one o'clock, or if you think it's

4    going to take longer than that we can set it at noon.

5              Mr. Sansone?

6              MR. SANSONE:  Caution, I would set it at noon,

7    Your Honor.

8              THE COURT:  All right.  We'll set it for 12:00 noon

9    on January the 19th via Zoom, and the Court will order, as the

10   parties have stipulated, that no funds will be disbursed from

11   the crowd funding account, GiveSendGo account that is

12   referenced in the Government's motion at docket entry 80.

13   No funds will be disbursed from that account until the Court

14   has resolved the pending motion, which will not occur before

15   the hearing on January 19th.

16             Is there any questions about the Court's order?

17             MR. SANSONE:  No, Your Honor.

18             THE COURT:  Ms. Jewell?

19             MS. JEWELL:  No, Your Honor.

20             THE COURT:  Mr. Brown?

21             THE DEFENDANT:  No, no questions, Your Honor.

22             I would like to -- whenever you see fit to provide me

23   time, I would like to address some concerns and make them known

24   to the Court in this case, but I have no issue with the order

25   at this time, Your Honor.

1          THE COURT:  Okay.  So the Court has ruled and has

2     granted your motion for continuance.

3          Mr. Brown, I will let you address the Court.  Let me

4     just remind you again though that you do have the right to

5     remain silent, and any statement that you make may be used

6     against you.  Do you understand your right to remain silent,

7     Mr. Brown?

8          THE DEFENDANT:  Yes, I do, Your Honor.

9          THE COURT:  All right.  Mr. Brown, I'll hear from

10    you.

11         THE DEFENDANT:  Your Honor, I just want to bring to

12    your attention some incidences that have happened since

13    December 24th and how they relate to my -- what we believe is

14    under appeal, our unconstitutional detention in violation of

15    Article 8 of the Bill of Rights.  But since December 24th I've

16    had five attorney visits denied under the guise of COVID

17    restrictions; however, the jail has -- as you see, we're

18    currently under COVID restrictions, but yet we're able to hold

19    a hearing, and my attorney visits can easily be held under

20    monitored video systems in the jail.  So it's not a matter of

21    capability, it is certainly apparent that it is a matter of

22    willingness.  Two additionally visits have been disrupted by

23    technical difficulties that only seem to happen with my

24    attorneys, never during any private visits.

25         I have been moved, yet without any explanation, from

my original cell in which I spent almost two and a half months,
in which there was only one violent incident, I was moved
unexpectedly, which cost me over $500 in materials because
I was moved to what was called a transfer cell and what we were
told was that we would not be allowed to take anything with us,
therefore items were left or disposed of or not able to be
delivered in a timely manner in accordance with the way I had
set up my logistics supply.

From that transfer pod I was then falsely accused of
inciting a riot and removed, then investigated and exonerated
during that adjudication by the jail staff after reviewing all
the video, but then placed back into general population, thus
not being transferred, apparently, and placed into a much more
violent, overcrowded pod with limited communication aspects.
Just to give you an example, we've had five fights in the pod
in the last 36 hours as opposed to one fight in the previous
pod in two and a half months.

I have addressed that with the jail, requesting a
reclassification of my housing based on no criminal history, no
violence, history of violence, a honorable 20 year military
career where I held a top secret clearance, the fact that I was
awarded Citizen Of The Year by the Fraternal Order of Police of
Clearwater and have run for U.S. Congressional Office in the
last election cycle, as well as the charges I'm facing are
nonviolent, two misdemeanor trespassing, in essence, and then

1  four possessions and an improper storage charge.  And of course

2  the response from the jail is that I'm properly housed with

3  murderers, drug dealers, gang leaders who engage in violence

4  and contraband on a regular basis.

5          My mail has been disrupted by these so-called

6  transfers.  My phone was cut off this morning and I have yet --

7  even though I have requested through two different avenues an

8  explanation, I was cut off without warning and without

9  explanation.

10          Let's see.  I was only advised of this hearing at

11  9:00 a.m., which was the first opportunity my attorney had to

12  contact me.  Of course that meeting was also abruptly ended and

13  then I was brought in here today.

14          I would also like to make the point that in my case

15  against the United States Government, they have presented three

16  attorneys on their behalf in this case and one attorney that

17  I'm aware of in the D.C. case, yet they are claiming that it's

18  a $52,000 emergency against the Government because I have

19  American citizens that are supporting my future legal cases

20  that will be brought against the United States Government for a

21  myriad of Constitutional violations of which were entered into

22  the record at our last motion to reconsider hearing.

23          So I would like the Court to be aware that the

24  Government is engaging in prosecutorial misconduct, they are

25  deceiving not only Your Honor but other judges in this case,

1   and I just want that on the record, because thankfully today

2   there is a member of the media that can get this out to the

3   general public.  However, the D.C. judge has ordered -- has

4   granted a protective order without our opportunity to respond,

5   because the only way I had to respond was through snail mail,

6   and because we did not respond in a timely enough manner to the

7   Federal Government they moved to have that granted and the

8   Judge granted it.

9           So I just want to thank you for this opportunity to

10  speak on my behalf, because those opportunities are becoming

11  fewer and farther between, Your Honor.

12          THE COURT:  All right.  Thank you, Mr. Brown.

13          Mr. Brown, I just want to address that there is no

14  order from this Court restricting your communication from the

15  jail.  I am aware generally that because of the quarantine

16  provisions that are in place in Pinellas County Jail right now

17  there is no personal visits by any attorneys at this time;

18  however, it's my understanding that the jail is providing

19  attorney visits with the videoconference and by phone, and as

20  you indicated, you did have a videoconference with your

21  attorney just this morning, so that will continue.

22          I understand there might be a strain on those

23  resources because there are other individuals housed at that

24  jail and other attorneys that are trying to meet with their

25  clients as well, but there's certainly nothing that this Court

```
 1   has ordered that is restricting your ability to communicate

 2   with either your attorney or with anyone else.

 3              THE DEFENDANT:  Right, Your Honor, and it's not my --

 4   it's not my -- my point isn't that the Court is doing this, but

 5   as Mr. Sansone can advise you from personal experience, these

 6   are the distance meetings that are being canceled, not the

 7   face -- now, there was a face-to-face that was canceled, okay,

 8   and we can -- we don't agree with that, because, again, we will

 9   ultimately be filing motions and disputing these COVID

10   restrictions as well, because I've perused my Constitution and

11   have found no COVID clause in there; however, the -- four of

12   the five visits were the monitored, screened visits that were

13   canceled, and I think Mr. Sansone can speak to that directly

14   because he's the one -- I didn't even know that the visits were

15   scheduled.  I'm in a concrete box with no access other than

16   what the guards come and tell me, so I was only advised that

17   those visits were canceled through communication with my

18   attorneys, through my girlfriend, through me, whenever I had

19   the opportunity.

20              So I'm not -- I'm not claiming that it's the Court or

21   this Court in this matter, but I want to bring it to the

22   Court's attention because it is Your Honor's responsibility to

23   oversee the judicial process in this manner, and whether it's

24   the jail that's doing it, whether it's the Federal Government

25   exercising their authority over Federal inmates under the
```

1   Federal contract that this county jail holds, I don't know.

2   I just want to bring up these violations to the Court so that

3   they are aware of them, and if there's something that can be

4   done, I would certainly appreciate it.

5          THE COURT:  Ms. Asokan, are you aware of anyone from

6   the U.S. Attorney's Office or Federal law enforcement that has

7   requested any additional restrictions on Mr. Brown's

8   communications at the jail?

9          MS. ASOKAN:  No, Your Honor.

10         THE COURT:  Mr. Brown, again, I'm not aware of that.

11   If there -- if that is going on, then your attorney will

12   certainly bring it to my attention, and I encourage you to give

13   all information that you have about that to your attorney.

14         THE DEFENDANT:  Yeah, I have.

15         THE COURT:  But I am not -- I have not ordered that.

16   Ms. Asokan has represented that she's not aware of anyone that

17   has sought to restrict your communications at the jail.  Again,

18   the only thing that I'm aware of right now is the outbreak of

19   COVID at the jail, and because of that all inmates, my

20   understanding is that's not limited to Federal inmates, but

21   Federal and State at Pinellas County Jail are under quarantine

22   right now in order to prevent the further spread of the

23   COVID-19 virus that's going through the jail right now, and

24   because of that it's my understanding that, again, all inmates,

25   regardless of whether they're in Federal custody or State

1   custody, are currently not allowed any in-person visits, again,

2   for purposes of preventing further spread.  But that does not

3   in any way limit your ability to communicate with your attorney

4   either by phone or by videoconference when it's available;

5   again, realizing the practical reality of the situation is that

6   there's other attorneys and other inmates who would like to use

7   those -- that technology that's available as well and it has to

8   be shared amongst all inmates.  But if there's anything other,

9   Mr. Brown, anything else that happens, please provide that

10  information to your attorney and I'm sure Mr. Sansone will

11  raise it with the Court in the appropriate manner.

12          THE DEFENDANT:  And I -- I've brought it to the

13  attention of the Pinellas County Jail that I have currently no

14  ability to communicate with my attorney, and so hopefully that

15  will be resolved today.  I was in the process of making these

16  inquiries and communications with the staff when this hearing

17  was called.  So currently at this time the only access I have

18  to Mr. Sansone is on this Zoom call at this present moment.

19          THE COURT:  Mr. Brown, you just met with him by

20  videoconference just this morning.

21          THE DEFENDANT:  Right.  The restriction on the phone

22  was not identified until after that conference this morning.

23          THE COURT:  All right.  Mr. Sansone, would you please

24  contact the jail and confirm whether there's any restriction on

25  your ability to have a phone conversation with your client.

1              MR. SANSONE:  Yes, I will, and I'm going to set

2    something up tomorrow, and if it doesn't happen I will make all

3    inquiries and if necessary bring it to the Court's attention,

4    but I will definitely look into that, Your Honor.

5              THE DEFENDANT:  Thank you, Your Honor.

6              THE COURT:  Thank you, Mr. Sansone.

7              Anything further, Mr. Brown?

8              THE DEFENDANT:  No, that's it, Your Honor.

9              THE COURT:  All right.  Thank you, sir.  I will see

10   you in two weeks.  We are adjourned.

11             MR. SANSONE:  Thank you, Your Honor.

12                       - - - - -

13             (Proceedings concluded at 12:42 p.m.)

14                       - - - - -

15

16

17

18

19

20

21

22

23

24

25

1             C E R T I F I C A T E

2

3            This is to certify that the foregoing transcript of

4    proceedings taken in a motion hearing in the United States

5    District Court is a true and accurate transcript of the

6    proceedings taken by me in machine shorthand from a digital

7    audio recording and transcribed by computer under my

8    supervision, this the 10th day of February, 2022.

9

10

11                              /S/ DAVID J. COLLIER

12

13                         DAVID J. COLLIER

14                         OFFICIAL COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25