U.S. District Court
Middle District of Florida
Tampa Division

# GOVERNMENT EXHIBIT

Exhibit No.: 14

Case No.: 8:21-cr-348-SCB-SPF

UNITED STATES OF AMERICA

vs.

JEREMY BROWN

Date Identified: 03/25/22

Date Admitted: 03/25/22

```
                IN THE UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
                         TAMPA DIVISION


UNITED STATES OF AMERICA,     )
                              )
          Plaintiff,          )
                              )
                              ) Case No.
     vs.                      ) 8:21-CR-00348-SCB-SPF
                              )
                              )
JEREMY BROWN,                 )
                              )
          Defendant.          )
```
_____

                         **MOTION HEARING**
                 (taken via Zoom videoconference)
              BEFORE THE HONORABLE SEAN P. FLYNN
                 UNITED STATES MAGISTRATE JUDGE

                       JANUARY 19, 2022
                          12:10 A.M.
                        TAMPA, FLORIDA
_____

     Proceedings transcribed via courtroom digital audio recording by transcriptionist using computer-aided transcription.
_____

                   **DAVID J. COLLIER, RMR, CRR**
                   FEDERAL OFFICIAL COURT REPORTER
                 801 NORTH FLORIDA AVENUE, 7TH FLOOR
                      TAMPA, FLORIDA  33602

```
 1   APPEARANCES:
 2
 3   FOR THE GOVERNMENT:
 4
 5         Jillian M. Jewell
 6         Risha Asokan
 7         United States Attorney's Office
 8         400 North Tampa Street, Suite 3200
 9         Tampa, Florida  33602
10         (813) 274-6000
11
12
13   FOR THE DEFENDANT:
14
15         William F. Sansone
16         Sansone Law, P.A.
17         609 West De Leon Street
18         Tampa, Florida  33606-2719
19         (813) 361-0874
20
21
22
23
24
25
```

```
 1                        P R O C E E D I N G S
 2                          - - - o0o - - -
 3             THE COURT:  Ms. Sanders, would you please call the
 4   case.
 5             COURTROOM DEPUTY:  United States of America versus
 6   Jeremy Brown, Criminal Case Number 8:21-CR-348.
 7             THE COURT:  Counsel, please make appearances.
 8             MS. JEWELL:  Jillian Jewell for the United States.
 9             MS. ASOKAN:  Good afternoon, Your Honor.
10   Risha Asokan for the United States.
11             THE COURT:  Good afternoon.
12             MR. SANSONE:  Good afternoon, Your Honor.
13   Bill Sansone on behalf of Mr. Jeremy Brown, who is present.
14             THE COURT:  Good afternoon, Mr. Sansone.
15             Good afternoon to you, Mr. Brown.
16             THE DEFENDANT:  Hello, Your Honor.
17             THE COURT:  All right.  Mr. Brown, we are here today
18   on the Government's emergency motion to prevent dissipation of
19   assets reserved for CJA reimbursement, which can be found at
20   docket entry 80.  We had previously conducted a hearing on this
21   motion on January 5th.  At that time the Government alleged
22   that as of the date of the filing $51,942 were in a Jeremy
23   Brown Defense Fund in a crowd funding website, GiftSendGo.
24             Now, according to 18 U.S.C. Section 3006A(f),
25   whenever the United States Magistrate Judge or the District
```

1  Judge finds that funds are available for payment from or on
2  behalf of a person furnished representation, it may authorize
3  or direct that such funds be paid to the Court or deposited in
4  the treasury as a reimbursement to the appropriation, current
5  at the time of payment, to carry out the provisions of this
6  section, meaning the CJA.
7         Now, at the first hearing on January 5th, Mr. Brown,
8  you admitted that those funds were available to you and that
9  you controlled those funds.  So, Mr. Sansone, why should the
10 Court not order at least a portion of those funds currently in
11 the Jeremy Brown Defense Fund be deposited into the Court's
12 registry to be held for reimbursement of any CJA expenses?
13         MR. SANSONE:  Your Honor, and I just spoke with
14 Mr. Brown.  Thank you for the time for the breakout prior to
15 the hearing.  I gave Mr. Brown some information that he
16 actually wasn't aware of that I just actually learned, and I --
17 and I don't think the Government knows either.
18         All of the money that's being raised by the
19 GiveSendGo is -- there's been a 501(c)(3) organization created
20 called The Jeremy Brown Defense of Constitutional Rights, I was
21 just notified of that, and there are Articles of Incorporation
22 that has been filed, and I don't have -- my understanding in
23 talking -- people are doing this on the outside on behalf of
24 Mr. Brown, and that's why he wasn't fully aware of what's going
25 on, that all of the money that -- my understanding is all of

```
 1  the money that's coming through the Go -- GiveSendGo account is
 2  going to be controlled and owned by the 501(c)(3) and only be
 3  able to -- be able to be spent under the charter.  I don't have
 4  all that documentation and I don't have anything to present the
 5  Court as to that today.  I was just made aware of that.  And
 6  so -- so my understanding is that Mr. Brown himself is going to
 7  have absolutely no control of this money and it will be
 8  controlled by a 501(c)(3).
 9          In speaking with some people who are working on
10  behalf of Mr. Brown, they know of this hearing, and I said,
11  well, I need to know, the Court is going to want to know, the
12  Government is going to want to know, who controls this money,
13  how is it controlled and how it can be dispensed.  It's going
14  to be through the 501(c)(3).  I don't have all the
15  documentation or the bank records or anything to show the Court
16  right now, because I was just made aware of this, and Mr. Brown
17  did not know that all of this was happening.  He did know that
18  people on the outside were doing stuff for him, but he didn't
19  know about how all of this was taking place.
20          So I'm not in a position to answer your initial
21  question, Judge.
22          THE COURT:  Okay.  Mr. Sansone, that's not an
23  acceptable answer.
24          Hold on, Mr. Brown.
25          It's not an acceptable answer.  At the hearing two
```

1  weeks ago, on January 5th, Mr. Brown told me directly that he
2  had control over those funds, okay?  That's an admission that
3  he made and he told me that he directs those funds.  You've now
4  had two weeks to prepare for this hearing.  You show up to this
5  hearing unprepared to answer the Court's question.  That's
6  completely unacceptable.
7          Mr. Brown, would you like to be heard?
8          THE DEFENDANT:  Yes, Your Honor.  I'd like to clarify
9  the context of your statement that I said that I had control of
10 the funds.  The statement that I have control of the funds is
11 just a reference to the fact that they're not going to do
12 anything with funds without my approval because they're on my
13 behalf, but I do not have control of the funds.  I don't have
14 control of anything.  I'm in maximum security prison without
15 bond.  So my statement to the Court was in the context that you
16 are asking if I could ensure that those funds weren't spent,
17 yes, because when I tell the people on the outside, hey, don't
18 spend the funds, they're not going to spend them.
19         Now, they're free to spend them, without a court
20 telling them not to, on whatever they see fit, and if I tell
21 them to stop, they will stop, as a courtesy to me, because the
22 funds are meant to support my defense.  But the aspects of the
23 case have not changed.  My income is $1,200 a month.  That goes
24 primarily to the sustaining of our household.  None of that has
25 changed.  The funds have always gone into a separate account.

1   I have people on the outside that are trying to set things up
2   in a legal manner, because this court case is obviously going
3   to go on for a very long time, because I'm not going to accept
4   any of the Government's options to plea like some of the other
5   people in this case, so therefore they're doing -- they're
6   taking measures on my behalf in order to set things up in a way
7   going forward that will be a respectable -- so that if any of
8   these additional challenges, which we suspect will come --
9   I mean, I just filed to run for Florida House District 60,
10  which means I'm going to have FEC documents and then a separate
11  account for raising money for my political campaign.  And so we
12  anticipate additional challenges coming from the Government,
13  because it's the Government's intent to cripple my defense any
14  way that they can.
15          So the con -- the context of my statement that I have
16  control over the funds are simply the same as if the President
17  of the United States said, I am going to have a $2 trillion
18  infrastructure bill.  He doesn't have that control, but he
19  tells the American people that it's his idea, he wants that
20  money spent in a certain way, it's up to the Congress to
21  ultimately control that, and that's basically the context of
22  the statement.
23          So, no, I have no control over any bank accounts.
24  I have no access to any bank accounts.  The only control I have
25  is through suggestion to my team on the outside that maybe we

1  should do this, maybe we should do that, but absolutely I do
2  not have any -- I don't have any control over the actual
3  distribution of those funds.
4          THE COURT:  All right.  These funds were raised on
5  your behalf; is that correct?
6          THE DEFENDANT:  That's correct.
7          THE COURT:  Is that correct, sir?
8          THE DEFENDANT:  Correct, from private citizens.
9          THE COURT:  All right.  And those funds were raised,
10 at least in part, for your legal defense; is that correct?
11         THE DEFENDANT:  They are raised in part for future
12 legal defense, because obviously I already have a defense in
13 the charges put forth by the U.S. Government.
14         THE COURT:  All right.  So those funds will be made
15 available to you for future legal defense.
16         THE DEFENDANT:  At whatever time we need to retain
17 counsel for additional suits that will be brought against the
18 Federal Government, yes, those funds will be available.
19         THE COURT:  All right.  The Court finds under
20 18 U.S.C. Section 3006A(f) that the funds currently available
21 in the Jeremy Brown Defense Fund from the crowd funding website
22 GiveSendGo, as indicated in the Government's motion at docket
23 entry, is available for payment on behalf of Mr. Brown for his
24 legal defense, and the Court finds that because those funds are
25 available, they are due to be reimbursed to -- excuse me, they

1  are due to be put in the Court registry for the purpose of
2  reimbursing any CJA expenses in this case.
3          Now, Mr. Sansone, you have not submitted a voucher up
4  to this point; is that correct?
5          MR. SANSONE:  No, Your Honor.
6          THE COURT:  All right.  What are your current --
7  what's your current legal expenses to date?
8          MR. SANSONE:  I don't have that information.
9  I usually don't do things until the end of the case unless it
10 becomes exceedingly long.  I don't usually do interim payments.
11 I would expect if -- to be conservative, I would say $7,000, to
12 be conservative, on the high side, Your Honor.
13         THE COURT:  All right.  Is it fair for the Court to
14 assume that you will at least reach the statutory maximum in
15 this case, considering that this case has not proceeded to
16 trial yet and you believe you've incurred roughly $7,000 in
17 legal expenses to date?  Is it fair for the Court to assume
18 that you will reach the $12,300 statutory maximum for CJA
19 expenses?
20         MR. SANSONE:  Yes, Your Honor.
21         THE COURT:  All right. The Court -- I want to hear
22 from the Government first, but the Court is inclined to order
23 that you -- that payment from the Jeremy Brown Defense Fund of
24 $12,300 be made into the Court registry to be held for purposes
25 of being -- to have those funds available to reimburse any CJA

```
1   expenses in this case.
2              Now, Mr. Sansone, I am going to require though that
3   you provide notice to the Court if it becomes clear to you or
4   you reasonably anticipate that your expenses will exceed the
5   $12,300 statutory maximum, and as soon as that becomes -- you
6   become aware of that possibility, that you are to file a notice
7   with the Court, and at such time we'll address whether
8   additional funds should be placed into the Court's registry.
9              Ms. Jewell, let me hear from you.  Does the
10  Government have any objection?
11             MS. JEWELL:  No objection, Your Honor.  No further
12  comment.  Thank you.
13             THE COURT:  All right.  Then that's how the Court is
14  going to order.  Again, the defendant, Jeremy Brown, is ordered
15  to direct $12,300 in funds that are in the Jeremy Brown Defense
16  Fund in the GiveSendGo website shall be placed in the Court's
17  registry to be held, and those funds will be used to reimburse
18  any CJA expenses for CJA counsel in this case; and Mr. Sansone,
19  as CJA counsel, is directed to file a notice with the Court
20  when it becomes reasonably -- when he becomes aware or has
21  reason to believe that his costs in this case shall exceed
22  $12,300.
23             Are there any questions about the Court's order,
24  Mr. Sansone?
25             MR. SANSONE:  No.  None at all, Your Honor.
```

```
1              THE COURT:  Ms. Jewell, any questions?
2              MS. JEWELL:  No, Your Honor.
3              THE COURT:  Ms. Asokan, would you like to be heard?
4              MS. ASOKAN:  No, Your Honor.  Thank you.
5              THE COURT:  All right.  Thank you.  We're adjourned.
6              MR. SANSONE:  Your Honor?
7              THE COURT:  Yes.
8              MR. SANSONE:  Off the record, can I -- can I use your
9    Zoom to talk to Mr. Brown for a few minutes, or is that not
10   possible?
11             THE COURT:  No, you may.  I'll put you in a breakout
12   room now.
13             MR. SANSONE:  All right.  Thank you, Your Honor.
14             THE COURT:  Thank you.  We're adjourned.
15                            - - - - -
16                (Proceedings concluded at 12:22 p.m.)
17                            - - - - -
```

```
 1                    C E R T I F I C A T E

 2

 3        This is to certify that the foregoing transcript of

 4   proceedings taken in a motion hearing in the United States

 5   District Court is a true and accurate transcript of the

 6   proceedings taken by me in machine shorthand and transcribed by

 7   computer under my supervision, this the 10th day of February,

 8   2022.

 9

10

11                                   /S/ DAVID J. COLLIER
                                     _____
12

13                                   DAVID J. COLLIER

14                                   OFFICIAL COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25
```