**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA

v.                                           CASE NO.: 8:21-cr-348-SCB-SPF

JEREMY BROWN,

      Defendant.
_____/

**O R D E R**

Before the Court is Defendant Jeremy Brown's Amended Motion to Suppress and Request for a *Franks* Hearing (Doc. 186) and the United States' Response in Opposition (Doc. 193). For the reasons explained below, Defendant's Motion and Request are due to be denied.

**I. BACKGROUND**

On September 29, 2021, Magistrate Judge Zia M. Faruqui in the District of Columbia authorized a search warrant of Defendant's "Residence," "Recreational Vehicle" (R.V.), "Black Trailer," and "Cell Phone," which were located in the Middle District of Florida, to search for evidence of violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 231(a)(2) (transport of firearms or explosives for use in civil disorder), 18 U.S.C. § 844(a)(2) (transportation of explosives), and 18 U.S.C. § 1752(a) (unlawful entry on restricted buildings or grounds). (*See* Doc. 193, Ex.

1). The search warrant related to Defendant's involvement in the January 6, 2021 events at the United States Capitol Building. Agents executed the warrant on September 30, 2021. In Defendant's residence and R.V., they found unregistered short-barrel firearms, grenades, and classified information, leading to the charges in this case. On October 19, 2021, Defendant was charged in an Indictment with two counts of possessing unregistered firearms and two counts of possession of unregistered explosive devices, in violation of 26 U.S.C. §§ 5861(d) and 5871; and improper storage of grenades, in violation of 18 U.S.C. §§ 842(j) and 844(b). (Doc. 21). On April 12, 2022, Defendant was charged in a Superseding Indictment with those same counts and four additional counts of unauthorized retention of national defense information, in violation of 18 U.S.C. § 793(e). (Doc. 159).

    Through the instant Motions, Defendant seeks to suppress from use at trial all evidence obtained as a result of law enforcement's search of his residence, R.V. trailer, and phone on September 30, 2021. Specifically, he argues that: (1) the District of Columbia magistrate judge lacked jurisdiction to issue a search warrant for Defendant's property located in the Middle District of Florida (*see* Doc. 186 at 5-17); (2) the affidavit in support of the warrant was based on stale information and otherwise lacked probable cause, *id.* at 17-21; (3) the seizure of Defendant's cell phone from his truck was unlawful, *id.* at 21-23; and (4) the affidavit contained

2

material factual omissions, thus warranting a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). The Government maintains that Defendant cannot prevail on any of his arguments and the Amended Motion to Suppress should be denied.

## II. LEGAL STANDARD

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend IV. Probable cause to support a search warrant exists when the totality of the circumstances set forth in the affidavit allows the conclusion that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The Supreme Court has held that "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." *Id.* at 236. A reviewing court should instead pay "great deference" to the magistrate judge and limit its review to a determination of whether "the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 238-39.

## III. DISCUSSION

## A. The Magistrate Judge's Jurisdiction to Issue the Search Warrant

Defendant argues that the magistrate judge in the District of Columbia lacked jurisdiction to issue a search warrant for Defendant's property located in the Middle District of Florida. Under Rule 41(b), Federal Rules of Criminal Procedure, "venue" confers "jurisdiction" to issue a search warrant. *See U.S. v. Thorne*, No. CR 18-389 (BAH), 2021 WL 2682631, at *41 & n.16 (D.D.C. June 30, 2021). An issuing magistrate must find that Rule 41(b)'s venue provision is satisfied pursuant to a "reason to believe" standard. *See id.* at *30.

Here, the search warrant was issued under Rule 41(b)(3), which provides:

Venue for a Warrant Application. At the request of a federal law enforcement officer or an attorney for the government:

. . . a magistrate judge—in an investigation of domestic terrorism or international terrorism—with authority in any district in which activities related to the terrorism may have occurred has authority to issue a warrant for a person or property within or outside that district.

Fed. R. Crim. P. 41(b)(3). According to Rule 41(a)(2)(D), the phrase "domestic terrorism" in Rule 41(b)(3) is defined in 18 U.S.C. § 2331(5). "Domestic terrorism" is defined therein as activities that:

(A) involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State;

(B) appear to be intended—
    (i) to intimidate or coerce a civil population;

4

>    (ii) to influence the policy of a government by intimidation or coercion; or
>    (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and
>
> (C) occur primarily within the territorial jurisdiction of the United States

18 U.S.C. § 2331(5).

Defendant's argument that the magistrate judge lacked jurisdiction to issue the search warrant erroneously focuses on the offenses identified in the affidavit rather than the investigation of which they are a part. Defendant contends that the affidavit does not establish that he was involved in any offense that meets the definition of "domestic terrorism." (*See* Doc. 186 at 6-16). The plain language of Rule 41(b)(3), however, provides venue to a magistrate judge "in an investigation of . . . terrorism," so long as any "activities related to the terrorism" occurred in the magistrate judge's district. The Rule is not limited to any specific crime, nor does it require that a search warrant issued as part of a domestic terrorism investigation must itself allege acts that constitute domestic terrorism. Rule 41(b)(3), therefore, provides venue for a warrant authorizing a search of out-of-district property in a terrorism "investigation."

The facts contained in the instant affidavit established that the search warrant application was related to the Government's investigation of the events on

5

January 6, 2021, when a mob stormed the United States Capitol while a Joint Session of Congress convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. (*See* Doc. 193, Ex. 1 at 5-15). The affidavit contained facts establishing that the events of January 6 "involve[d] acts dangerous to human life" that were "a violation of the criminal laws of the United States." 18 U.S.C. § 2331(5)(A).  (*See* Doc. 193, Ex. 1 at 26-28). Additionally, the actions of January 6 "appear[ed] to be intended to influence the policy of a government by intimidation or coercion." 18 U.S.C. § 2331(5)(B)(ii). (*See* Doc. 193, Ex. 1 at 22, 29, 31). Finally, the events described in the affidavit took place "within the territorial jurisdiction of the United States." (*See id.* at 21). Accordingly, the investigation of the January 6 attack constitutes a "domestic terrorism" investigation as defined by 18 U.S.C. § 2331(5). The magistrate judge, therefore, had authority to authorize the search warrant in the Middle District of Florida because it pertained to an "investigation of domestic terrorism" and "activities related to the terrorism may have occurred" in the District of Columbia.

**B.  Probable Cause to Support the Search Warrant**

Defendant also argues that the affidavit in support of the search warrant lacks probable cause. The affidavit, however, contains substantial evidence that Defendant trespassed at the United States Capitol, including tips, news footage, photographs, a cooperating defendant's statements, and cell phone location evidence. (*See* Doc. 193, Ex. 1 at 36-42). The affidavit describes Defendant's "distinctive attire" at the Capitol: "full military gear, including a helmet, radio, a tactical vest," as well as "zip ties attached to his belt, . . . a radio, surgical trauma shears, and tactical gear." (*Id.* at 38-39). The affidavit then includes information tying Defendant's January 6 activities to his residence, R.V., and cell phone. The affidavit includes statements by a Defendant 4, who has pled guilty to his conduct on January 6, 2021, that he had used a rideshare service to travel to Defendant's house in preparation for traveling to Washington D.C. (*Id.* at 39). Defendant 4 also stated that Defendant's R.V. was "loaded with a cache of weapons, ammunition, and gas" for the trip. (*Id.*). Defendant's own messages further corroborated Defendant 4's statements. On December 23, 2020, Defendant messaged a group of Oath Keepers, "We have a RV an Van going. Plenty of Gun Ports left to fill. We can pick you up." (*Id.*). On January 1, 2021, Defendant wrote, "[i]f you can, come to my house anytime Saturday" to "load plan, route plan, and conduct . . . Pre Combat Inspections." (*Id.* at 40).

At the time the affidavit was submitted to the magistrate judge, Defendant had listed his residence for sale on the real estate website Zillow. (*Id.* at 43). His listing contained photographs of the residence's interior, which included a photograph showing a whiteboard that listed numerous firearms and explosives, including "flash bangs." (*Id.* at 43). According to the legend at the bottom of the whiteboard, items written in black ink were "on hand." (*Id.*). In the photograph, which was reproduced in the affidavit, it appeared that the list of firearms and explosives was written in black ink, suggesting that they were "on hand" or in Defendant's possession at the time the photograph was posted. (*Id.* at 43-44). The affidavit also cited Witness 1's statement that, before the residence was put up for sale on Zillow, there had been "multiple boxes and weapons scattered throughout the house." (*Id.* at 45).

The affidavit stated that Defendant was still residing at the residence and that law enforcement had observed the R.V. and trailer parked in front of the residence as recently as September 21, 2021. (*Id.* at 44). Agents also observed Defendant leaving the residence within a week of the time the affidavit was submitted. (*Id.* at 46). According to Witness 1, Defendant alternated sleeping in the residence and the R.V. (*Id.* at 45). The affidavit alleged that, because Defendant was in the process of moving and had recently purchased the trailer, it was

8

"probable that many of [his] possessions, including electronics, guns, ammunition, and explosives, which constitute potential evidence in the investigation, have been moved to the RV or the Trailer." (*Id.*). In light of the foregoing, the Court finds that the search warrant affidavit contained ample probable cause.

### C. Staleness of Evidence in the Warrant Affidavit

Next, Defendant argues that the affidavit in support of the search warrant was based on stale information. He maintains there was no reason to believe that evidence would still be present at his residence "nearly nine months" after January 6, 2021. Under the Eleventh Circuit's "staleness doctrine," "the information supporting the government's application for a warrant must show that probable cause exists at the time the warrant issues." *U.S. v. Bervaldi*, 226 F.3d 1256, 1264 (11th Cir. 2000). Staleness is to be evaluated "on the peculiar facts of each case." *Id.* at 1265 (internal quotation mark omitted). The Eleventh Circuit has identified several factors to aid courts in determining whether information in an affidavit is too stale to support a finding of probable clause, including: the "length of time" between the events outlined in the affidavit and the date the search warrant is sought, the "nature of the suspected crime (discrete crimes or ongoing conspiracy)," the "habits of the accused," the "character of the items sought," and

9

the "nature and function of the premises to be searched." *Id.* (internal quotation marks omitted).

Here, a review of the factors identified by the Eleventh Circuit supports the magistrate judge's finding of probable cause. First, the length of time between January 6, 2021, and execution of the Search Warrant on September 30, 2021, (approximately 9 months) was within the Eleventh Circuit's determination of a reasonable delay between criminal activity and search. *See, e.g., U.S. v. Hooshmand*, 931 F.2d 725, 735-36 (11th Cir. 1991) (11 months); *U.S. v. Domme*, 753 F.2d 950, 953-55 (11th Cir. 1985) (9 months); *U.S. v. McBurnette*, 382 F. App'x 813, 815-816 (11th Cir. 2010) (2 years).

Second, the nature and circumstances of the suspected crimes support the magistrate judge's probable cause determination. The affidavit states that Defendant and fellow Oath Keepers planned their actions at the Capitol weeks ahead of time and discussed their actions at the Capitol for months afterward. (*See* Doc. 193, Ex. 1 at 39-42). The affidavit included facts such as the weapons list on the whiteboard in Defendant's residence and Witness 1's statements suggesting that Defendant continued to seek and hoard a cache of weapons long after January 6. (*Id.* at 43). Thus, the affidavit recited facts "indicating protracted or continuous

10

conduct," for which "time is of less significance." *Bervaldi*, 226 F.3d at 1265 (quotation mark omitted).

Third, Defendant's habits supported the conclusion that the residence, R.V., and trailer likely contained evidence of criminal activity. A family member of Witness 1 confirmed that Defendant still had weapons "scattered throughout the house" after January 6 prior to the house going on the market. (*See* Doc. 193, Ex. 1 at 45). Therefore, it was likely that the guns and explosives would have been moved to Defendant's R.V. or trailer because it is unlikely someone would market a house with guns and explosives inside the house.

Fourth, the character of the items sought supported the inference that evidence of Defendant's conduct would still be present in his residence, R.V., trailer, and cell phone. The search warrant authorized the seizure of, among other evidence: "protective/tactical gear worn during the offenses, . . . firearms, explosives, precursor materials, or other weapons"; "materials, devices, tools, plans, or strategies" used to enter the United States Capitol Building; communication devices, including radios and walkie talkies; and evidence of affiliation or communication with the Oath Keepers. (*See id.* at 11-13). Because weapons, explosives, tactical gear, and radios are expensive, non-disposable items, they are not likely to be discarded. Additionally, messages with the Oath Keepers,

which were stored on Defendant's cell phone, would not disappear unless he deleted them. Under these circumstances, there was a fair probability that these types of evidence would have been found during the search even 9 months after January 6—and they were.

Fifth and finally, the nature and function of the premises to be searched supported an inference that the residence and vehicles would still contain evidence of weapons and explosives at the time of search. Surveillance and witness statements established that the residence, R.V., and the trailer. likely were still being used to store weapons, ammunition, clothing, tactical gear, and other non-disposable equipment. Because the search warrant affidavit established probable cause to believe that evidence of Defendant's crimes would be found in his residence, R.V., trailer, and cell phone at the time the warrant was issued, Defendant's staleness argument fails.

### D. The Seizure of Defendant's Cell Phone From His Vehicle

Defendant further argues that the seizure of his cell phone from his truck was unlawful because the search warrant did not encompass his truck. In order for a warrantless investigatory search of an automobile to be constitutional, (1) the automobile must be readily mobile and (2) there must be probable cause to believe

that it contains contraband or evidence of a crime. *U.S. v. Lanzon*, 639 F.3d 1293, 1299-1300 (11th Cir. 2011).

Here, Defendant parked his truck on the roadway at the bottom of the driveway, officers arrested him pursuant to an arrest warrant as he exited the vehicle, and officers then observed his cell phone in the vehicle and seized it. (*See* Doc. 186 at 21). Because officers had just observed Defendant driving the vehicle, they reasonably concluded that the vehicle was readily mobile. *See United States v. Watts*, 329 F.3d 1282, 1286 (11th Cir. 2003). The search warrant authorized the seizure of "a cellular phone . . . which is to be seized from the person of Jeremy Brown . . . [or] vicinity of Jeremy Brown." (Doc. 186, Ex. 1 at 10 (Attachment D to warrant).[1] Because law enforcement officers observed a cell phone in the truck that Defendant had just exited moments earlier, they had probable cause to believe that the truck contained evidence of a crime. Therefore, the officers lawfully entered Defendant's truck to seize his cell phone.

## E. Good Faith Exception

Had this Court determined that Rule 41(b)(3) did not authorize the magistrate judge to issue the search warrant because of staleness, Defendant's

---

[1] The affidavit stated that officers anticipated arresting Defendant "when he is away from . . . the residence, RV, or trailer." *Id.* at 46. Authority to seize the cell phone, therefore, was not limited to its presence in Defendant's residence, R.V., or trailer.

13

Motion would still be denied under the good faith exception to the exclusionary rule. Under the good faith exception, evidence will not be suppressed if law enforcement "reasonably rel[ied] on a warrant issued by a detached and neutral magistrate." *U.S. v. Leon*, 468 U.S. 897, 913 (1984). This exception applies "in all but four limited sets of circumstances": (1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "where the issuing magistrate wholly abandoned his judicial role"; (3) "where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) "where, depending upon the circumstances of the particular case, a warrant is so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *U.S. v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002). The Eleventh Circuit has also held that the good faith exception applies to search warrants issued for property outside of a magistrate judge's jurisdiction. *See U.S. v. Taylor*, 935 F.3d 1279, 1290–92 (11th Cir. 2019). The inquiry is the same as in the ordinary good faith analysis—whether "a reasonably well-trained officer would have known that a search was illegal." *Id.* at 1290 (marks omitted).

14

Here, the agents acted in good faith in relying on the search warrant issued by the magistrate judge. None of the four limited sets of circumstances that would prevent the good faith exception from applying exists here. The agents, therefore, acted in good faith in relying on the search warrant. *See Martin*, 297 F.3d at 1313.6 Additionally, the agents were justified in relying on the magistrate's determination that he had authority to issue the warrant. For these reasons, Defendant's motion to suppress is due to be denied under the good faith exception as well.

### F. *Franks* Hearing

Defendant requests a *Franks* hearing on the basis that there were material factual omissions in the search warrant affidavit. Defendant is not entitled to such a hearing *per se*. Generally, a district court's decision about whether to hold an evidentiary hearing lies within the court's sound discretion and will be reviewed only for an abuse of discretion. *United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006). Under *Franks*, a defendant may challenge the veracity of an affidavit in support of a search warrant if he makes a "substantial preliminary showing" that: (1) that the affiant deliberately or recklessly included a false statement, or failed to include material information, in the warrant affidavit; and (2) that the allegedly false statement or omission was necessary to the finding of probable cause. *Id.* (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).

15

"Even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." *U.S. v. Sarras*, 575 F.3d 1191, 1218 (11th Cir. 2009) (quotation marks and brackets omitted). Defendant bears the burden of showing that probable cause would have been lacking absent those omissions. *Id.* He fails to meet that burden.

Defendant argues that the search warrant affidavit omitted three pieces of information. The first omission he identifies is a public podcast interview in which he stated that, although "the war is here," he did not "call[] for violence" and that he "backs law enforcement officers that back up their oath to support the constitution, not arresting people for wearing a mask or beating up citizens." (Doc. 186 at 24). This statement, however, occurred six months after January 6, 2021, and, thus, it is not material here. Furthermore, the podcast statement has no bearing on whether evidence of Defendant's alleged crimes or the alleged crimes of others related to the January 6 investigation would be located in Defendant's residence, his R.V., or his cell phone. The inclusion of the podcast statement in the affidavit would have had no bearing on the magistrate judge's determination of probable cause.

Second, Defendant contends that law enforcement omitted information relating to its online database checks on Defendant. At issue is a statement

16

appearing on page 6 of Defense Exhibit H: "Between March 2021 and 5 April 2021, queries of these selectors were conducted through [online databases]. To the extent that derogatory information is not reference above, results in these databases were negative for additional derogatory information." (Doc. 189, Ex. H, p. 6). Defendant does not, however, explain what these databases are, what evidence they were expected to uncover, or how the absence of derogatory information in these unknown databases would overcome the allegations in the search warrant affidavit or would have prevented a showing or probable cause.

     Finally, Defendant argues that the warrant affidavit included a false statement relating to the coloring of the writing on the whiteboard seen in the photograph on the Zillow real estate website. (*See* Doc. 186 at 24). The affidavit in support of the search warrant incorporated a number of photographs including a color photograph of a whiteboard containing a list of items. The words "Good," Better," "Best," and "On Hand" written on the bottom appear to be red, blue, green, and black, respectively. Defendant contends that that the color of the online photograph included in the affidavit was altered, making the weapons listed on the whiteboard appear to be written in black marker, suggesting that they were "On hand," although they appear to be written in red marker in photographs taken during the search of the residence. (Compare Doc. 193, Ex. 1 at 43 (weapons

17

appear in black marker, while the word "Good" and other items in the third column are in red marker ), with Doc. 189, Ex. F (weapons appear in red marker)). To the extent Defendant may be alleging that law enforcement intentionally altered the photograph, his argument is refuted by a review of the online version of the photograph which was uploaded to Zillow, a publicly available website, where it was observed and downloaded by law enforcement. (*See* Doc. 193, Ex. 2).[2]

Furthermore, the Court agrees with the Government that even if the color of the whiteboard had been correctly captured on the website as red not black and relayed as such in the affidavit, it would not have prevented a finding of probable cause. When viewed in light of the other evidence, including Witness 1's statements suggesting that there were numerous firearms at the residence, the question of whether Defendant's whiteboard list of weapons were actually "on hand" does not materially affect the probable cause determination. For these reasons, Defendant fails to meet his burden to make "a substantial preliminary showing" that the affidavit misrepresented or omitted any facts, let alone that any omission affected the magistrate judge's probable cause finding. *Franks*, 438 U.S. at 155-56. Defendant's request for a *Franks* hearing is, therefore, due to be denied.

---

[2] This photograph is available at <https://www.realtor.com/realestateandhomes-detail/4804-10th-Ave-S_Tampa_FL_33619_M99588-30122> (last visited July 28 2022 at approximately 11:00 a.m..).

**ACCORDINGLY**, it is **ORDERED AND ADJUDGED**:

1. Defendant Jeremy Brown's Amended Motion to Suppress Evidence as a Result of the Search Warrant (Doc. 186) is **DENIED**.

2. To the extent Defendant's Motion (Doc. 186) requests the suppression of evidence, if any. obtained from jail calls and written communications, it is denied as Defendant has stated no basis for the request.

3. Defendant's Request for a *Franks* Hearing (Doc. 186) is **DENIED AS UNNECESSARY**.

**DONE AND ORDERED** at Tampa, Florida, this 28th day of July, 2022.

*/s/ Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

*Copies furnished to:*
Counsel of record