UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No.: 8:21-CR-348-T-SCB-SPF |
| v. | ) |
| | ) |
| JEREMY BROWN | ) |

**UNITED STATES' RESPONSE IN OPPOSITION TO THE DEFENDANT'S MOTION TO RECONSIDER BOND**

The United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, files this Response in Opposition to the Defendant's Motion to Reconsider Bond (Doc. 186).

On January 6, 2021, the Defendant attended a violent riot at the United States Capitol Building in Washington, D.C.  According to a cooperating defendant, the Defendant transported explosives and firearms from Florida to Virginia in his Recreational Vehicle (R.V.) prior to the riots.

After January 6, the Defendant posted a threatening message to law enforcement agents at his residence.  As this Court observed:

> Now, the Court, as I mentioned at the first bond hearing, is very troubled by that sign and the implications of that sign and views that sign as a direct threat to law enforcement. It's been suggested to this Court that it was not a direct threat, but rather, it was meant as a playful jab to the law enforcement officers, the agents who had previously had interactions with the Defendant. I do not find that argument to be credible at all. The sign was not directed to those agents. The sign was directed to all law enforcement agencies which the Defendant reasonably thought could come to his house. It was a warning to those law enforcement agencies and the warning was that if they come, they better bring a bigger tactical package . . .
>
> I think that's what Defendant Brown meant when he said, "You better bring a

1

> bigger tactical package." It was in reference to weapons. It was a warning to law enforcement that if they came to his house, they'd better be well armed. That's how I take it. That's how I believe the evidence has been presented to the Court.
>
> The Court once again views that as a direct threat.

Transcript of December 16, 2021 Hearing (Doc. 75) at 18-20.

On September 30, 2021, law enforcement searched the Defendant's residence and R.V. As predicted by the cooperating defendant, law enforcement located explosives – two military-issue M-67 fragmentation grenades – and firearms – including an illegal short-barrel shotgun – in the R.V. On top of the short-barrel shotgun was a briefcase containing the Defendant's personal materials as well as a C.D. marked "SECRET," which contained over twenty classified documents that the Defendant was not permitted to possess. And in the Defendant's bedroom in the residence, law enforcement found a modified AR-15 semi-automatic rifle with an illegally short barrel.

After his arrest, the Defendant attempted to engage in witness tampering by investigating the family of a law enforcement agent. As this Court explained:

> In addition, there was more evidence that was presented to the Court through a sealed exhibit that was discussed at sidebar, which I will not reveal the specifics of that sealed exhibit, but in general terms, it was a discussion that the Defendant was having with his partner regarding her efforts to locate a witness in this case and a law enforcement officer, and then it goes beyond that: To go into that law enforcement's family, and to provide -- look for information about family members of that law enforcement agent. The Court views that as another threat to law enforcement as well as potentially an effort to tamper with witnesses in this case, which the Court takes very seriously.

Transcript of December 16, 2021 Hearing (Doc. 75) at 20.

Additionally, after his arrest, the Defendant has also refused to comply with a valid DNA search warrant signed by Magistrate Judge Sneed. *See* Transcript of December 14, 2021 Motion Hearing (Doc. 77) at 14 ("COURT: I find it troubling that we have a search warrant for a collection of a DNA sample that was authorized by one of my colleagues, it's a valid search warrant, and your client has refused to cooperate with the collection of the DNA sample . . . ."); *id.* at 19 ("COURT: Which is all the more troubling to me, Mr. Brown, that I presume that the Government does have your DNA from your time in service to this country, so it's quite surprising to me that you're refusing to comply with a Court-ordered search warrant.").

At the prior hearings, the Defendant also stated that, if released on bond, he would not accept any conditions of release that, in his personal opinion, are unconstitutional. For example, the Defendant has stated that he would not agree to refrain from possessing firearms or destructive devices while on bond:

> COURT: . . . When you indicate that you will not accept conditions that you believe will violate your constitutional rights, if the Court were to set a condition that you shall not use or possess any firearms, dangerous weapons, ore destructive devices, and that you shall surrender any of those weapons or destructive devices and refrain from using or possessing any firearm, destructive device, or dangerous weapon, you consider that to violate your constitutional rights, and therefore you would not comply with that condition?
>
> THE DEFENDANT: Your Honor, I would consider that to be a violation of my constitutional right. However, it's not that I would not comply with it. I would refuse to accept bond and remain in jail. Of course, I would consult with my attorney, and we would be filing an appeal that I was being harmed as a deprivation of my Second Amendment right. But under no circumstances will I ever knowingly violate a condition that I agree to.

Transcript of December 15, 2021 Motion Hearing (Doc 90) at 73. The Defendant

continued:

> THE DEFENDANT: But under no circumstances, if I agree with Your Honor and the Court -- and I give my word that I'm not going to violate a condition, I'm not going to violate that condition. But if I refuse that condition is -- if I believe that condition is nonconstitutional, I will simply stay in jail.

*Id.* at 76.

The Defendant took the same position with respect to any bond containing a travel restriction:

> THE COURT: Just so we're clear, you would agree to a stand-alone GPS monitoring, meaning you would wear a GPS-location-monitoring equipment, typically an ankle monitor, as you referenced, which would just keep track of where you go, but that you would reject any conditions of release that would actually restrict your location to your house or to certain exceptions -- as I mentioned, you would reject my type of location restriction program, but you would be willing to accept to a stand-alone GPS monitoring, which just keeps track of where you go. Is that correct, sir?
>
> THE DEFENDANT: That's correct, Your Honor.

*Id.* at 85-86.

In his Motion to Reconsider Bond, the Defendant – almost a year after his arrest – states that he will now comply with location and firearms restrictions, and requests that the Court release him on bond so that he may help to care for his mother in North Carolina. The Defendant notes that he would be living in an "extremely rural" area of North Carolina, which is "at least a 90 minute drive" from Greenville, North Carolina. Doc 186 at 3.

The United States respectfully submits that there are no conditions of bond that can reasonably assure the Defendant's appearance at trial or the safety of the community. As previously argued at length, the Defendant is charged by

Superseding Indictment with serious, dangerous crimes involving the possession of illegal firearms, powerful military-grade explosives, and classified information. Notably, the classified information charges – which were not yet filed at the time of this Court's prior pretrial detention ruling – allege that the Defendant violated numerous written agreements that he had entered into with the U.S. Military by retaining classified information in his possession long after his retirement. This willful disregard of the Defendant's solemn promise to safeguard classified information undercuts his contention that he will abide by any conditions of bond that the Court imposes.

Moreover, the Defendant's proposed conditions of release counsel against granting bond. The Defendant proposes to live outside of the Middle District of Florida, in the "extremely rural" town of Tyner, North Carolina. This arrangement would require him to be monitored by the closest Probation Office, which is in Greenville, approximately 90 minutes from his mother's residence.[1] When viewed in light of the severity of the offenses in this case and the Defendant's steadfast refusal to comply with location and firearms restrictions over the past eleven months, the United States respectfully submits that the proposed conditions of release would be insufficient to ensure the safety of the community and the Defendant's appearance

---

[1] According to the U.S. Probation Office for the Eastern District of North Carolina, the Greenville Office covers Chowan County, which encompasses Tyner. *See* U.S. Probation Office, Eastern District of North Carolina, *Office Locations*, available at <https://www.ncep.uscourts.gov/offices/greenville>. According to Google Maps, the drive from the Probation Office to the Defendant's mother's residence is over 75 miles.

at trial. Indeed, none of the new information proffered in the Defendant's Motion in any way impacts this Court's prior finding that the Defendant poses a danger to the community if released on bond. *See* Transcript of December 16, 2021 Hearing (Doc. 75) at 20-21 ("So even if the Court were to find that there was new information that was material to the Court's determination as to whether there were reasonable conditions, the Court alternatively finds that after considering all of the evidence that's been presented, both at this hearing and the original bond hearing, as well as argument of counsel and the factors listed in 18 USC Section 3142(g), that by clear and convincing evidence there are no conditions or combination of conditions of release that'll reasonably assure the safety of any other person in the community, to specifically include law enforcement in their interactions with the Defendant.").

For these reasons, the United States respectfully requests that the Court deny the Defendant's Motion to Reconsider Bond.

Respectfully submitted,

By:    s/ Daniel J. Marcet
Daniel J. Marcet
Assistant United States Attorney
Florida Bar No. 0114104
400 N. Tampa St., Suite 3200, Tampa, FL
Daniel.Marcet@usdoj.gov | (813) 274-6028

**U.S. v. Jeremy Brown**             **Case No. 8:21-CR-348-T-SCB-SPF**

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Roger Futerman, Esq.

>By:   s/ Daniel J. Marcet
>Daniel J. Marcet
>Assistant United States Attorney
>Florida Bar No. 0114104
>400 N. Tampa St., Suite 3200, Tampa, FL
>Daniel.Marcet@usdoj.gov | (813) 274-6028