UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

Case No.: 8:21-cr-348-SCB-SPF

v.

JEREMY BROWN

## UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTION

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this Response to the Defendant's Objection to the Government's Notice of Intent to Introduce Inextricably Intertwined and/or Rule 404(b) Evidence (Doc. 209). The proffered evidence relating to the Defendant's refusal to return classified information to federal agents in 2017 is intrinsic to the charged crimes because it relates to the same classified information that the Defendant is charged with possessing in this case. Moreover, even if the Court determines that the evidence is not intrinsic, it is properly admitted under Federal Rule of Evidence 404(b) because it is relevant to establishing the Defendant's intent to commit the charged crimes, his consciousness of guilt, and the fact that the crimes were not committed by mistake or accident. Accordingly, the United States respectfully requests that the Court overrule the Defendant's objection and permit the United States to introduce the proffered evidence.

### I.     Corrections to Defendant's Factual Assertions

The background of the charges in this case and the proffered evidence are discussed in full in the United States' Notice of Intent to Introduce Inextricably

Intertwined and/or Rule 404(b) Evidence (Doc. 207 at 1-3). In short, Counts 6 through 9 of the Superseding Indictment charged the Defendant with possessing four classified U.S. military documents that were located on a C.D. that federal agents recovered within his R.V. on September 30, 2021. The C.D. was located in a briefcase along with a paper copy of a classified memorandum relating to a missing U.S. soldier.[1] The evidence at trial will show that the Defendant retired from the U.S. Army in 2012, and that he obtained the C.D. and the paper document at some point prior to his retirement.

The evidence at issue concerns events in 2017, when the Defendant boasted to friends that he had taken several classified documents relating to a missing soldier. Based on this information, federal agents went to the Defendant's residence – the same residence that was searched in September of 2021 – and interviewed him about whether he possessed a document concerning the missing soldier or *any other* classified information. The Defendant denied possessing *any* classified information, but admitted that he may have discussed classified information while intoxicated. The Defendant permitted the agents to search a shed on his property for classified information, but refused to permit them to search any other area on his residence.

It appears that much of the Defendant's argument is based on the misunderstanding that the classified documents that federal agents were inquiring

---

[1] It is the understanding of the United States that, at trial, the Defendant intends to concede that he possessed the classified paper document, but to argue that he did not know that the C.D. contained classified information and, moreover, that federal agents planted the classified C.D. in his R.V.

about in 2017 were distinct from the documents charged in this case. However, as the evidence will show, the documents charged in this case were already in the Defendant's possession before 2017 and, therefore, were well within the scope of the agents' questioning about whether he had "any" classified documents.

## II. Defendant's Hearsay Objection

Throughout his Objection, the Defendant repeatedly refers to his own statements as "hearsay," without explaining the basis for that contention. *See, e.g.*, Doc. 209 at 1, 2. It is axiomatic that an opposing party's statement is not hearsay. *See* Fed. R. Evid. 801(d)(2)(A). Thus, the Defendant's statements to federal agents in 2017 are admissible as non-hearsay.

## III.   Summary of Relevant Law

Under Rule 404(b), evidence of other crimes is not admissible to show proof of bad character. Such evidence, however, may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b); *United States v. Sterling*, 738 F.3d 228, 237 (11th Cir. 2013); *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007). Moreover, Rule 404(b) is a rule of inclusion; accordingly, Rule "404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case." *United States v. Perez-Tosta*, 36 F.3d 1552, 1562 (11th Cir. 1994).

For "extrinsic" evidence of a defendant's other acts to be admissible under Rule 404(b): (1) it must be relevant to an issue other than the defendant's character; (2) there must be sufficient proof for the jury to determine that the defendant committed the act

at issue; and (3) the probative value of the evidence cannot be substantially outweighed by its undue prejudice. *Edouard*, 485 F.3d at 1344.

The Eleventh Circuit has made clear that evidence of conduct other than the charged offense is ***not*** "extrinsic" under Rule 404(b), and thus falls outside the scope of the Rule, if it is necessary to complete the story of the crime or is inextricably intertwined with the evidence regarding the charged offenses. *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998). Thus, "[e]vidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive, and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985).

Nonetheless, regardless of whether the evidence falls inside or outside the scope of Rule 404(b), it must still satisfy the requirements of Rule 403. *Edouard*, 485 F.3d at 1344, 1346. Notably, the district court's discretion to exclude evidence under Rule 403 is narrowly circumscribed; it should be used sparingly, and the balancing test should be struck in favor of admissibility. *United States v. Gibson*, 708 F.3d 1256, 1281 (11th Cir. 2013). Naturally, "[a]ll evidence which tends to establish the guilt of the defendant is, in one sense, prejudicial to that defendant." *United States v. Terzado-Madruga*, 897 F.2d 1099, 1119 (11th Cir. 1990) (internal quotation marks and citation omitted). Thus, damaging or prejudicial evidence need not be excluded; it is only when evidence is unfairly prejudicial, specifically, when the prejudice "substantially

outweigh[s]" the probative value, that the evidence must be excluded. *United States v. Brown*, 665 F.3d 1239, 1247 (11th Cir. 2011).

## IV.   Analysis

### a.   The proffered evidence is intrinsic to the charged crimes.

The proffered evidence relating to the Defendant's denial of his possession of classified information and refusal of consent to search his residence, is intrinsic to the charged crimes of retention of national defense information. The United States intends to prove that the Defendant must have obtained the C.D. containing the charged classified documents prior to his 2012 retirement from the military; thus, those documents must have been in his possession in 2017 when federal agents asked him whether he possessed any classified information – and offered him the opportunity to return any classified information in his possession. The agents' inquiries in 2017, therefore, related to the same classified documents that the Defendant is charged with possessing in the Superseding Indictment, and the agents' visit and interview of the Defendant occurred at the same residence where those documents eventually were located on September 30, 2021. Notably, during the September 30, 2021 search, agents located the paper document about the missing soldier– which, the United States understands, the Defendant will concede that he possessed – and the C.D. containing the charged documents together in the same location within the Defendant's R.V. Taken together, these facts demonstrate that the 2017 interview is intrinsic or inextricably linked with the crimes charged in the Superseding Indictment. *See McLean*, 138 F.3d at 1403.

What's more, the Defendant's 2017 refusal to consent to a search of his residence for classified information further establishes his consciousness of guilt for the charged crimes, which is relevant to proving that he *willfully* retained the documents, as required by the statute. *See* 18 U.S.C. § 793(e) ("Whoever having unauthorized possession of, access to, or control over any document . . . . relating to the national defense . . . willfully retains the same and fails to deliver it to the officer or employee of the United States entitled to receive it . . . [s]hall be fined under this title or imprisoned not more than ten years, or both."). The evidence will show that the Defendant lied to law enforcement and denied consent to search his residence because he knew he had classified information – both the C.D. and the paper document about the missing soldier – and he knew that he was not lawfully permitted to retain classified information after leaving the military.

The federal agent's 2017 investigation of the Defendant for possession of classified documents, at a time when the Defendant already possessed the classified information charged in this case, and at the same location where the charged classified information was seized in this case, is intrinsic to the charged crimes.

**b.    The proffered evidence is also admissible under Rule 404(b).**

To the extent that the Court determines that this evidence is extrinsic, it is nevertheless admissible pursuant to Rule 404(b). First, the proffered evidence is relevant to proving several issues other than the Defendant's character. *See Edouard*, 485 F.3d at 1344. Specifically, the evidence is relevant to establishing the Defendant's "intent, absence of mistake, or lack of accident." Fed. R. Evid. 404(b).

The Superseding Indictment alleges that the Defendant, "having unauthorized possession of, access to, and control over documents relating to the national defense, willfully retained the documents and failed to deliver them to the officer or employee of the United States entitled to receive it" (Doc. 159 at 5). The proffered evidence tends to establish the Defendant's intent to "retain" documents relating to the defense and not "to deliver them to the officer or employee of the United States entitled to receive it." In 2017, federal agents – "employees of the United States entitled to receive" classified information – confronted him with the fact that he had admitted to possessing classified information and gave him the opportunity to return *any* such information in his possession. Instead of taking this opportunity, the Defendant denied possessing classified information and failed to return any of the information in his possession to the agents.

The evidence is also relevant to establishing the Defendant's intent – specifically, that he acted knowingly and willfully – because the interview clearly put the Defendant on notice that it was unlawful for him to continue possessing classified information. Moreover, his refusal to consent to a search of his residence establish consciousness of guilt concerning the charged crimes. The United States will argue that the Defendant refused to permit federal agents to search the remainder of his residence because he knew that he had unlawful possession of the C.D. containing classified information, as well as the document relating to the missing soldier. And relatedly, the Defendant's refusal of consent to search the remainder of his residence for classified information is further relevant to establishing that the Defendant's crimes

were not the result of a mistake or accident because it establishes that the Defendant likely knew he had classified information in his residence, and he did not want the agents to locate that information.

The Defendant's 2017 interaction with the federal agents is further relevant to establishing the Defendant's deliberate ignorance as to whether he possessed classified information. A defendant's "deliberate ignorance" may be offered as proof of knowledge because "if a party has his suspicion aroused but then deliberately omits to make further enquiries, because he wishes to remain in ignorance, he is deemed to have knowledge." *United States v. Rivera*, 944 F.2d 1563, 1570 (11th Cir. 1991) (quotation marks omitted). In a letter provided to the United States, counsel for the Defendant wrote, "The Defendant, Mr. Brown has maintained that the classified documents that were found, subsequent to a search warrant on a compact disc, were not in his possession knowingly, prior to the search warrant. Mr. Brown also maintains that some unknown third party placed the CD in his RV." To the extent that the Defendant intends to argue that he did not know the C.D. at issue – which bore a "SECRET" classified marker – contained classified information, the United States believes that any such argument would amount to deliberate ignorance. The Defendant's 2017 interview with federal agents put him on notice that he was not permitted to possess classified information and was required to return any such information to federal agents. His failure to conduct a search of his premises for classified information or to determine whether the C.D. marked "SECRET" contained classified information – after being informed by federal agents that he had told his

friends he had classified information, and after admitting it was possible that he had

discussed such information with his friends while intoxicated – was deliberate

ignorance.

Second, there is "sufficient proof" relating to the 2017 interview. *See Edouard*,

485 F.3d at 1344. The United States will present a federal agent with first-hand

knowledge about the Defendant's statements and his refusal of consent to search.

Last, the probative value of this evidence does not outweigh its undue prejudice.

"A defendant who enters a not guilty plea makes intent a material issue, imposing a

substantial burden on the government to prove intent; the government may meet this

burden with qualifying 404(b) evidence absent affirmative steps by the defendant to

remove intent as an issue." *United States v. Delgado*, 56 F.3d 1357, 1365 (11th Cir.

1995). Whether the probative value of an uncharged act outweighs its prejudicial effect

depends upon the circumstances of the case. *See Edouard*, 485 F.3d at 1345.

Here, the defendant has pled not guilty to retention of national defense

information, placing a heavy burden on the United States to prove that he acted

knowingly and willfully. The proffered evidence is relevant to establishing the

Defendant's intent, as explained above. Moreover, the evidence is not unfairly

prejudicial because the classified information that the Defendant possessed when

agents interviewed him in 2017 – the document about the missing soldier and the C.D.

– was the same classified information that was recovered in this case. In this case, the

jury is going to see a photograph of a redacted version of the document concerning the

missing soldier, as well as the C.D. Thus, the 2017 incident did not involve a different

crime, or other classified information that the jury will not hear about in this case. Because the Defendant has not taken affirmative steps to "remove intent as an issue" in this trial, the probative value of the 2017 interview greatly outweighs its prejudicial effect.   *See Delgado*, 56 F.3d at 1365.

Finally, the Eleventh Circuit has crafted a limiting instruction that is designed to ensure that the jury is informed of the limited purpose for which Rule 404(b) evidence is admitted, both at the time the evidence is admitted and at the close of the case. *See* Eleventh Circuit Pattern Jury Instructions, T1.1 (end of trial instruction); *id.*, S4.1 (end of trial instruction). The United States has no objection to the Court giving this limiting instruction at the time this evidence is admitted, as well as at the end of the case. To the extent that there is a risk of unfair prejudice from admitting this evidence, any prejudice that could arise from admitting the proffered evidence will be mitigated by a limiting instruction. *See United States v. McNair*, 605 F.3d 1152, 1204 (11th Cir. 2010) (explaining that limiting instructions can mitigate risk of unfair prejudice from admission of Rule 404(b) evidence).

### V. Conclusion

For the foregoing reasons, the United States respectfully requests that the Court overrule the Defendant's objections

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:   */s/ Daniel J. Marcet*
Daniel J. Marcet, AUSA
Florida Bar No. 0114104

400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
E-mail: Daniel.Marcet@usdoj.gov

Menno Goedman
Trial Attorney
National Security Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Telephone: (202) 514-2147
Email: Menno.Goedman@usdoj.gov

**U.S. v. Jeremy Brown**                    **Case No. 8:21-cr-348-SCB-SPF**

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Roger Futerman, Esq.

*/s/ Daniel J. Marcet*
Daniel J. Marcet
Assistant United States Attorney
Florida Bar No. 0114104
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Daniel.Marcet@usdoj.gov