UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

Case No.: 8:21-cr-348-SCB-SPF

v.

JEREMY BROWN

**UNITED STATES' MOTION REGARDING DEFENSE EXPERT WITNESS**

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this Motion regarding the proposed Defense Expert, Mr. Robert Henry. As set forth below, the United States respectfully requests that the Court exclude Mr. Henry from testifying at trial or, in the alternative, require the defense to provide additional information regarding Mr. Henry's qualifications and the substance of his testimony. In the event that Mr. Henry is not excluded from testifying, the United States further requests that the Court permit a voir dire outside the presence of the jury regarding his qualifications and the scope of his opinion testimony.

**I.     Expert Disclosures**

On September 12, 2022, the Defendant provided the United States with an initial expert disclosure for expert witness Robert Henry. The initial expert disclosure stated, in its entirety:

> Pursuant to our reciprocal discovery, I hereby list and notice Robert Henry as an expert witness. His CV is attached. Also, while not explicitly spelled out in his CV Mr. Henry does and has reviewed hundreds of classified top secret and/or secret documents. He is expected to testify about whether the documents that the Defendant is charged with are truly classified. Accordingly, he will need to be screened to allow access with us when we go view the documents. He currently has a top security clearance. Mr. Henry is also expected to testify and explain the path of the grenades as it related to the

>computer-generated documents you provided me. Finally, Mr. Henry will testify as to any evidence as it relates to the Defendant, his military personnel records as well as path of the grenades. He is expected to explain to the jury what the documents you provided to me states and what it means as to each grenade.

The "computer-generated documents" referenced in this disclosure were two "trace reports" relating to the grenades that the Defendant is charged with possessing. The C.V. attached to the letter showed that Mr. Henry had served in the army for approximately 22 years, but it did not clearly indicate any relevant experience in classification decisions, nor did it specifically reference any familiarity with grenade trace reports. The C.V. is attached hereto as Exhibit 1, and the trace reports are attached hereto as Exhibits 2 (trace report for grenade fuze) and 3 (trace report for fully assembled grenades).

The following day, September 13, counsel for the United States asked defense counsel to provide additional detail as to the opinions Mr. Henry would render, or a report summarizing his testimony in greater detail. Counsel for the United States explained that additional information was necessary in order to decide whether the United States would be filing a motion to challenge the admissibility of Mr. Henry's testimony.

Defense counsel responded by email that same day, writing:

>As to the classified documents obviously he will render an opinion when he sees the documents whether they are or are not classified.
>As to one of the grenades he will give the opinion that according to the paperwork provided it has been destroyed (I can let you know which one when I make contact with him).
>The other grenade he will explain what that document says, which to a lay person is kind[] of gibberish. He will specifically tell the jury where that grenade

2

> has been in its journeys. He will also will explain what paperwork is required to track a grenade.
> Let me know if you need any other specifics.

Defense counsel's disclosure that Mr. Henry planned to testify that, in his expert opinion, the grenade trace reports showed that one of the grenades "has been destroyed" and that Mr. Henry also believed that the trace reports showed where the second grenade had been "in its journeys" was concerning. The trace reports state, in plain English, that they do not pertain to any individual grenade because grenades are traced by "lot number." *See* Exhibit 2 at 1 ("This munition is not tracked by serial number. It is tracked by LOT number, National Stock number, and DODIC."); Exhibit 3 at 1 (same). Indeed, the grenades themselves bear identical markings, and there is no serial number or other identifying information to enable the sort of determinations or conclusions that Mr. Henry sought to offer.

After receiving this email, on September 13, the undersigned AUSA called defense counsel to read through the trace reports to show that the expert was mistaken – in short, the trace reports clearly state that the grenades were traced by lot number, and no specific information about any individual grenade was contained in the trace reports. That same day, defense counsel sent a follow-up email, stating:

> [Mr. Henry's] opinions remain unchanged, including the evidence presented shows that one of the grenades were destroyed. I am discussing more with him Tuesday, and may be able to provide a more detailed summary [September 21] once he educates me. He has no time until then due to his family previously scheduled commitments.

In subsequent phone calls, counsel for the United States continued to explain that this opinion was not a credible or even plausible interpretation of the trace documents, and that this interpretation was, in fact, contradicted by the documents themselves.

On October 17, the undersigned AUSA again reached out to defense counsel to inquire whether he still intended to call Mr. Henry to testify at trial. Defense counsel responded, "Yes, let me talk to him a little more, I will file a modification of the summary."

On October 18, defense counsel sent the following additional information:

> If we call expert Robert Henry he intends to educate the jury on what the trace report is, and how it is generated. He intends to explain that the report shows the grenades are from a large lot. He will state that with the paperwork provided there cannot be shown an association with Mr. Brown. He will also opine that if Mr. Brown was issued these in the army there should be a DA form 5692 which indicated if these grenades were used or destroyed. He will explain the trace report, and what it shows as to the storage of these grenades. He will discuss the specific grenades, the time frame of a trace report as it relates to these grenades, the approximate age of the grenades, the spoons and the tape. He will reference the trace report that was provided in discovery as well as the pictures of the grenades that were discovered. He will discuss the importance of the trace report and DA form as it relates to grenades. He will also give his military opinion that the tape around the grenades is not something consistent with special forces use.

Thus, unsurprisingly, Mr. Henry had made an about-face in his opinion as to the meaning of the grenade trace reports, and now concedes that – as the reports plainly state – they do not contain any information about the disposition of a specific grenade. In addition, the October 18 disclosure revealed that Mr. Henry planned to offer testimony on several areas not previously anticipated, including new opinions regarding: (1) the "importance of the trace report and DA form as it relates to grenades"; (2) "the approximate age of the grenades, the spoons and the tape"; and (3)

4

a "military opinion that the tape around the grenades is not something consistent with special forces use."

On October 21, 2022, this Court granted the United States' request to file a Motion relating to Mr. Henry's proposed testimony out-of-time. The Court ordered that the United States file any such motion on or before October 25.

## II. Law Governing Expert Witness Testimony

Federal Rule of Evidence 702 is the "starting point" for an analysis of the admissibility of expert testimony and the reliability of an expert opinion. *United States v. Frazier*, 387 F.3d 1244, 1258–59 (11th Cir. 2004). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

To implement Rule 702, the Supreme Court requires the district court to perform the critical "gatekeeping" function concerning the admissibility of both scientific and technical evidence. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 n.7 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). The Eleventh Circuit has emphasized the importance of the trial court's analysis of expert testimony because "no other kind of witness is free to opine about a complicated matter without any firsthand knowledge of the facts in the case, and based upon otherwise inadmissible hearsay if the facts or data are 'of a type reasonably relied upon

5

by experts in the particular field in forming opinions or inferences upon the subject.'"

*Frazier*, 387 F.3d at 1260 (quoting Fed. R. Evid. 703). In other words, an expert's testimony can be "both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595.

To determine the admissibility of expert testimony, the Court must conduct a "rigorous three-part inquiry" to consider whether:

> 1) the expert is qualified to testify competently regarding the matters he intends to address;
> 2) the methodology by which the expert reaches his conclusions is sufficiently reliable, as determined by the sort of inquiry mandated in *Daubert*; and
> 3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F. 3d at 1260. As the proponent of the expert, the Defendant bears burden of establishing these three basic requirements. *See id*.; *Cook ex rel. Estate of Tessler v. Sheriff of Monroe Cty*, 402 F.3d 1092, 1107 (11th Cir. 2005).

### III. Analysis

#### A. The grenade trace reports and military grenade-issuance procedures are not the proper subject of an expert opinion.

First, the grenade trace reports and military grenade-issuance procedures are not the proper subject of an expert opinion. The United States believes that – in spite of Mr. Henry's vacillating opinions – the content of the trace reports is not subject to reasonable dispute and should be explained by a witness familiar with these types of documents. Indeed, the United States intends to call such a witness who is very familiar with these types of documents, and who obtained the trace reports at issue.

Allowing Mr. Henry to offer an "opinion" about what these documents state – beyond their actual contents – would only serve to confuse and mislead the jury.

Indeed, a review of the trace reports, attached hereto as Exhibits 2 and 3, shows that they can be readily understood and explained without the need for additional expert opinion testimony. Looking to Exhibit 3, which is the more relevant report, the first page begins by noting the military codes used to identify the type of munition ("DODIC" and "NSN"), the name of the munition, and the identifying markings on the grenades (the "LOT number"). It then lists where grenades from this lot are currently stored within the U.S. military ("Current assets in the stockpile"), and where the grenades were stored previously ("Previous Storage Sites"). Page 2 states where the grenades were manufactured, and pages 3 and 4 contains more detailed information about the lot (number of grenades in the lot, date of manufacture, etc.), and the source of various components. Page 5 simply contains the trace request, meaning the request that generated the report.

The United States intends to introduce the trace reports as Department of Defense business records pursuant to previously filed records certificates, and to have the witness who submitted the trace request and who regularly works with these types of documents explain their meaning. The witness may also explain the procedure for issuing munitions such as grenades, the paperwork that is generated when grenades are issued, how the procedures function in practice, and military paperwork retention requirements. The United States does not intend to elicit any expert opinion testimony

concerning the meaning of these documents or procedures because an expert opinion would not "help the trier of fact to understand the evidence." Fed. R. Evid. 702(a).

For these reasons, the United States respectfully submits that expert opinion testimony concerning the trace reports or grenade issuance procedures is neither necessary nor appropriate. Allowing expert opinion testimony beyond the facts contained in these documents – such as the opinion that "there cannot be shown an association with Mr. Brown" – would only serve to put the imprimatur of a purported expert on a straightforward inference that may or may not be drawn from the contents of the documents. *Cf. United States v. Hawkins*, 934 F.3d 1251, 1262 (11th Cir. 2019) (finding plain error where expert witness "'interpreted' unambiguous language, mixed expert opinion with fact testimony, and synthesized the trial evidence for the jury" and "strayed into speculation and unfettered, wholesale interpretation of the evidence").

Second, to the extent that the Court believes that the trace report and military grenade issuance procedures are an appropriate subject of expert opinion testimony, the United States respectfully submits that it is not clear from Mr. Henry's C.V. how he would be qualified to discuss these matters. While it is possible from his military experience that he has relevant experience – his C.V. references "accountability for ammunition" as a responsibility that he had – the United States respectfully submits that further inquiry and information about his background would be necessary to determine whether he is qualified to offer an opinion on these matters. Accordingly, if the Court believes that Mr. Henry should be permitted to offer expert testimony concerning the trace reports or grenade issuance procedures, the United States

respectfully requests that it be permitted to voir dire Mr. Henry concerning his qualifications before he testifies.

### B. Additional information is needed to evaluate Mr. Henry's proposed testimony regarding the age of the grenades and grenade taping.

In the October 18 expert disclosure, defense counsel stated that Mr. Henry would also render an expert opinion regarding "the approximate age of the grenades, the spoons and the tape." The United States does not understand what this portion of Mr. Henry's testimony would entail. The manufacture dates of the grenades and their components are clearly stated on the trace reports. *See* Exhibit 2 at 2; Exhibit 3 at 3. If Mr. Henry has some information or opinion concerning the age of the grenades seized from the Defendant that differs from the clearly stated manufacture date, then additional information concerning the substance of that opinion and the methodology for making that determination would be necessary to evaluate the reliability and admissibility of that opinion. *See* Fed. R. Evid. 702(b), (c), & (d).

As to the age of the tape, it is difficult to fathom how Mr. Henry could offer an opinion on the age of the tape on the grenades absent first-hand knowledge of when these particular grenades were taped, or absent some type of scientific testing that he has yet to perform. He does not appear to have any background in forensic sciences, much less the aging of textiles or other materials. *See* Exhibit 1. Thus, additional information about Mr. Henry's qualifications and the basis of his opinion would be necessary before he should be permitted to render an expert opinion on these matters. *See* Fed. R. Evid. 702(b), (c), & (d).

And third, based on his C.V., it is not clear how Mr. Henry is qualified to offer his "military opinion that the tape around the grenades is not something consistent with special forces use," much less why such evidence would be relevant. His C.V. does not state that he served in the Army Special Forces or that he was deployed with or assigned to Special Forces units. Additionally, there is no elaboration on the basis for this opinion, nor is there any indication that the "Special Forces" have a uniform method of taping grenades in all circumstances. Moreover, there is no indication that Mr. Henry is familiar with the Defendant's assignments while in the Army and, thus, his general opinion about how the grenades are taped by other members of the Special Forces would not likely be relevant – particularly given that the grenades were recovered in the Defendant's R.V. over a decade after he left the Army. To the extent that this testimony would show that the tape on the grenades would render them more difficult to use quickly – as might be necessary in a Special Forces operation – such testimony is irrelevant because the Defendant is charged with possessing these grenades, not with using or attempting to use them.[1]  Accordingly, absent additional information, it is not clear how Mr. Henry is qualified to offer this opinion or that the opinion would be reliable or relevant.

---

[1] The United States does not object to factual testimony about how the placement of the tape would affect the operation of the grenade, and it will likely offer such testimony through the explosive device examiner who examined the Defendant's grenades. Allowing an expert witness, however, to opine on whether this taping is consistent with the Defendant's assignments in the military is simply unreliable and will not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).

### C. Mr. Henry should not be permitted to render an expert opinion on the "importance" of the trace reports and other paperwork.

The "importance of the trace report and DA form as it relates to grenades" is not an appropriate subject matter of expert testimony. The United States understands the "DA form" to refer to the paperwork that is recorded by the U.S. military when a munition, such as a grenade, is issued.

The content of the trace reports and the procedures surrounding the issuance of military grenades is relevant to the jury's understanding of the evidence and will be explained by a witness who is intimately familiar with these documents and procedures. As noted above, the United States intends to present testimony concerning these matters through a witness who is familiar with these documents and procedures. To permit an expert witness, however, to offer an opinion as to the "importance" of certain paperwork will not aid the jury in understanding the evidence in this case. *See* Fed. R. Evid 702(a). Indeed, coming from an expert witness, such testimony would be "both powerful and misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595.

### IV.   CONCLUSION

For the reasons stated above, the United States respectfully requests that the Court exclude Mr. Henry from testifying at trial or, in the alternative, require the defense to provide additional information regarding Mr. Henry's qualifications and the substance of his testimony.

Respectfully submitted,

ROGER B. HANDBERG

11

United States Attorney

By: */s/ Daniel J. Marcet*
Daniel J. Marcet, AUSA
Florida Bar No. 0114104
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
E-mail: Daniel.Marcet@usdoj.gov

Menno Goedman
Trial Attorney
National Security Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Telephone: (202) 541-2147
Email: Menno.Goedman@usdoj.gov

U.S. v. Jeremy Brown					Case No. 8:21-cr-348-SCB-SPF

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Roger Futerman, Esq.

/s/ *Daniel J. Marcet*
Daniel J. Marcet
Assistant United States Attorney
Florida Bar No. 0114104
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Daniel.Marcet@usdoj.gov