## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA

    *Plaintiff,*

vs.                                                        Case No.: 8:21-CR-348-SCB-SPF

JEREMY BROWN

    *Defendant.*

_____/

## DEFENDANT'S SENTENCING MEMORANDUM; REQUEST FOR DOWNWARD VARIANCE FROM THE GUIDELINE CALCULATION

**COMES NOW**, the Defendant, JEREMY BROWN, by and through his undersigned attorney, and pursuant to 18 U.S.C. § 3553(a), hereby files this sentencing memorandum to assist the Court in fashioning an appropriate sentence in this case. The Defense moves this Court for a downward variance below the otherwise applicable guideline range of 87-108 months. The Defense submits this memorandum in support of such motion.

## A. Objections to Statements in the Government's Sentencing Memorandum

The Defense respectfully submits the following objections to the Government's Sentencing Memorandum. *See Doc. 344.* Regarding footnote 2, in which the Government complains that Mr. Brown denies being a member of the Oath Keepers, the Defense clarifies that Mr. Brown was a member of the Oath Keepers for only about 1 month. Mr. Brown joined the Oath Keepers around November 9, 2020. On December 4, 2020, Government agents approached Mr. Brown to be a cooperating informant on the Oath Keepers. Mr. Brown audio-recorded the meeting he had with the agents, with their permission, in which they ask him to become an informant.

Shortly thereafter, Mr. Brown's membership with the Oath Keepers terminated. This resulted in his formal membership with that organization lasting only about 1 month. Later, Mr. Brown volunteered to work as security with the Oath Keepers at the January 6 rally. He was assigned to provide security to the mother of one of the speakers at the rally.

Regarding footnote 3, the Government characterizes Mr. Brown as participating in the January 6 assault on the U.S. Capitol. The Defense clarifies that Mr. Brown lawfully attended a public rally and was working a volunteer position at the rally in which he provided security. The rally escalated into a riot. There is no

evidence that Mr. Brown participated in any violence or caused any damage to property. For his behavior at the Capitol that day, he was charged with misdemeanor trespass and disorderly conduct. *Exhibit A: Information.*

Regarding the Government's assertion at page 14 that Mr. Brown "repeatedly disobeyed court orders," the Defense clarifies that Mr. Brown submitted to the buccal swab after being provided time to consult with his attorney. Regarding refusing to accept a bond that would violate his right to bear arms, Mr. Brown explained his position in court to the Judge. He did not defy any court order by explaining his position to the Judge.

Finally, regarding the order to reimburse the Treasury for CJA funds using money that was donated by public supporters, Mr. Brown litigated the issue of the legality of the order and when it was decided against him, he arranged for his girlfriend to send the entire amount over for the reimbursement.

### B. Statement of the Case

Mr. Brown proceeded to a jury trial on 10 counts. He testified in his own defense and was acquitted of 4 counts and convicted of 6 counts – 5 felonies and 1 misdemeanor. In the Government's Sentencing Memorandum, it characterizes the trial as one in which "the Defendant lied extensively under oath, falsely testifying that the stolen grenades were not his and that the stolen classified document was not, in fact, classified." *Doc. 344 at pg. 1.* The Defense disputes this characterization of

Mr. Brown's trial testimony, particularly where he was acquitted on 4 counts, and the fact of a jury conviction does not necessarily mean a finding that Mr. Brown was lying at trial. Furthermore, Mr. Brown admitted his guilt and accepted responsibility on Counts 1 and 2 but used his testimony to explain the context of how and why he came to possess those particular firearms. Defense counsel specifically stipulated to guilt on these counts during closing argument, explaining to the jury that Mr. Brown had not properly registered these firearms.

### C. Guideline Calculation

United States Probation calculates that Mr. Brown's total offense level is 29. PSR ¶ 50. Based upon a total offense level of 29 and a criminal history category of I, Probation calculates a guideline imprisonment range of 87 months to 108 months. PSR ¶ 98.

### D. Motion for Downward Variance from the Advisory Guidelines Calculation

As this Honorable Court is aware, it is not limited by the guidelines because the calculations are considered merely advisory. United States v. Booker, 543 U.S. 220, 245-267 (2005). Accordingly, Mr. Brown moves this Court for a variance below the guideline calculation. As a basis for the variance the Defendant cites 18

U.S.C. § 3553(a), which provides multiple factors for the Court to use in shaping the appropriate sentence. Those factors include (1) the nature and circumstance of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effect manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense and defendant as set forth in the guidelines, (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims. See 18 U.S.C. § 3553(a). The statute expressly cautions that, "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the[se] purposes ….." See 18 U.S.C. § 3553(a).

The Eleventh Circuit has emphasized the wide discretion district courts enjoy in determining whether variances are appropriate. See United States v. Rosales-Bruno, 789 F. 3d 1249 (11th Cir. June 19, 2015). Although district courts must consider all available § 3553(a) factors, they need not give all the factors equal

weight. Id. at 1254. (Citation omitted). "Instead, the sentencing court 'is permitted to attach "great weight" to one factor over others.'" Id. (quoting Gall v. United States, 552 U.S. 38, 57 (2007)). In fact, "[n]othing requires a sentencing court to give the advisory guidelines range as much weight as it gives any other § 3553(a) factor or combination of factors." Id. It is within the court's discretion to decide how much weight to give each § 3553 factor, and the court is permitted to "attach great weight to one factor over others.'" Id. at 1261 (quotation and citation omitted).

### a. Nature and circumstances of the offense

The Defense submits that this factor weighs in favor of a variance below the guideline calculation. Mr. Brown had never been charged with a crime in his entire life until after the January 6, 2021 riot at the Capitol. He is 48 years of age with no juvenile or criminal record of any kind.

Mr. Brown was not involved in *any* violence at the Capitol and he did *not* enter the building. However, he was charged with two misdemeanors after the incident. He is charged with the offenses at issue here after a search warrant was executed on his home on the basis of his presence at the Capitol Building on January 6, 2021.

Regarding the possession of the shortened firearms, Mr. Brown admitted that he obtained one of the firearms in its shortened condition when he cleared out the home of his brother after his brother passed away. Mr. Brown shortened the other

firearm by changing out the upper receiver. Possessing these firearms is not illegal per se; it is illegal only if they are not registered. Mr. Brown did fail to register these firearms. Similarly, the grenades that he was convicted of possessing in Counts 3 an 4 were felony charges because they required registration. He was convicted of the misdemeanor in Count 5 because the grenades were not properly stored.

Regarding the document charged in Count 10, Mr. Brown authored the document as a way of memorializing his notes on a particular mission related to a missing soldier. He was assigned to a mission that involved the military investigation of the disappearance. He became disappointed in the accuracy of the information being provided to the public by the media. He was personally interested in that mission, and he personally authored the document. The document memorialized his own thoughts and analysis of a mission that was of significance to him.

At trial, there was testimony that information about confidential human sources, if disclosed, could lead to the sources being arrested, imprisoned, and killed. *Doc. 344 at pg. 8.* This was in the context of the jury trial and generally describes what could happen to any confidential source under certain circumstances. The specifics of this case; however, are that the document contained 11 year old information and had been in Mr. Brown's possession the entire time. He never published it and there is no evidence he gave it to anyone to read.

The Government asserts at page 12 of its Sentencing Memorandum that in 2017 Mr. Brown tried to "sell" a story about the contents of the document to journalists. Mr. Brown never tried to "sell" anything to journalists. There is no evidence that Mr. Brown asked for compensation for the information he had learned during his mission or compensation for the document charged in Count 10. Rather, Mr. Brown felt strongly about the inaccurate portrayal of the incident by the media. Mr. Brown spoke with an investigative journalist because he wanted to correct the misinformation about the missing soldier that was being released to the public. The Defense submits that there is a major distinction between trying to sell classified information to a journalist and contacting a journalist about 6 or 7 years after an event to correct misinformation in the media.

### b. History and Characteristics of Mr. Brown

The United States Probation Office noted as a factor for the Court's consideration in determining "whether a sentence below the advisory guideline range is warranted" is Mr. Brown's history and characteristics, including his 20-year service in the United States Army. PSI ¶ 115. Regarding Mr. Brown's history and characteristics, Mr. Brown is a retired 20-year U.S. Army Special Operations Soldier. He has served our country with two of the world's most elite military organizations – the 75th Ranger Regiment and 1st Special Forces Regiment (Green

Berets). He successfully led multiple Special Operation Force Units into combat. During multiple combat tours over a 20-year Special Operations career, he received two Bronze Star Medals as well as numerous other awards. *Exhibit B: Certificate of Release or Discharge from Active Duty; Exhibit C-1 and C-2: Narratives to the Bronze Stars.* The Bronze Star Medal is a United States Armed Forces decoration awarded to members of the United States Armed Forces for either heroic achievement, heroic service, meritorious achievement, or meritorious service in a combat zone.

In addition to the two Bronze Stars, Mr. Brown received two Army commendation medals, two joint achievement medals, three Army achievement medals, six Army good conduct medals, two National Defense Service Medals, an Armed Forces Expeditionary Medal, a Global War on Terrorism Expeditionary Medal, Global War on Terrorism Service medal, Humanitarian Service Medal, three non-commissioned officer professional development ribbons, an Army Service ribbon, an Expert infantryman Badge, a Gold Recruiter Badge, and other awards and accolades. *Exhibit B.*

During Mr. Brown's active duty service, he served approximately 2 years and 3 months overseas at locations including Afghanistan, Iraq, Bolivia, Columbia, and Malaysia. He received an honorable discharge and retired as of November 2012. *Exhibit B.*

Mr. Brown received 17 NCO Evaluation Reports from 1995 – 2012. They are attached for this Honorable Court's review. *Exhibit D: NCO Evaluation Reports.* The Court will observe that Mr. Brown received the highest overall rating of "Among the Best" 16 times. Mr. Brown routinely received marks of "Excellence" and "Success" as to Values and NCO Responsibilities.

Mr. Brown's military education includes completion of the Warrior Leadership Course in 1995, Special Forces Weapons Sergeant Course in 1996, Special Operations Tactics Courses in 1998, Special Operations Target Interdiction (Sniper) Course in 1999, Special Forces Communications Sergeant Course in 2001, Advanced Leadership Course in 2002, Senior Leadership Course in 2004, and U.S. Army Recruiter School in 2006.

Aside from Mr. Brown's military career, in 2014 he was named "Citizen of the Year" by the Clearwater Fraternal Order of Police. In the past, he has served as a volunteer firefighter and EMT. He became a small business owner of a limousine company for about 5 years after his retirement from the military. He ran for Congress in 2020 and for the Florida House in 2022.

Multiple people wrote letters of support for Mr. Brown. A few of the most significant are attached. United States Congresswoman Anna Paulina Luna wrote a letter asking for leniency for Mr. Brown. She noted that Mr. Brown's service as a Green Beret is held to the highest standard and requires an immense level of sacrifice

and duty to a cause much greater than self. She notes that he retired as an E-8 Master Sergeant, a level of advancement only achieved by the highest caliber soldiers serving in the already elite ranks of Special Forces. Congresswoman Luna asks for leniency from this Court given that Mr. Brown dedicated the best years of his life to serve our nation, making countless sacrifices, while striving to uphold the standards of the best-known soldier in the United States Military. She believes that we as American citizens enjoyed the fruit of those sacrifices, and thus it would be remiss to not consider his service and sacrifice in imposing a sentence. *Exhibit E: Letter from Congresswoman Luna.*

Ms. Christine Peters is a business owner in Tampa and has lived here for 54 years. *Exhibit F: Letter from Ms. Peters.* She is part of a military family and her son is active duty Special Forces. She writes in support of Mr. Brown and asks this Court to take consideration and give weight to the fact that Mr. Brown is the recipient of two Bronze stars for meritorious conduct in a combat zone.

Kurt Christensen is a retired Army Lieutenant Colonel and notes that Mr. Brown served the country with honor and distinction. *Exhibit G: Letter from LTC Christensen.* He characterizes Mr. Brown as a "highly decorated soldier" who "deployed four times to combat zones in defense of our freedom." *Exhibit G.*

The Defense has received over a dozen letters of support for Mr. Brown. Overall, Mr. Brown's history and characteristics reveal decades of honorable service

to this country. The Defense submits that given Mr. Brown's exemplary heroic background and history, a downward variance from the guideline is appropriate.

## **CONCLUSION**

In summary, Mr. Brown is a 48-year old man with no prior criminal record whatsoever before the Court for sentencing. It is respectfully submitted to this Honorable Court that Mr. Brown has an unusually illustrious background in that he served his country heroically in the Special Forces for 20 years as a combat soldier. He risked his life and made great personal sacrifices for the safety of United States citizens. His misdemeanors from the January 6, 2021 incident and the charges in this case are his first criminal offenses. Overall, it is submitted that a sentence below the guidelines is sufficient, but not greater than necessary, to comply with the purposes of sentencing.

**WHEREFORE**, Defendant Jeremy Brown respectfully submits this sentencing memorandum in support of a downward variance from the guideline calculation.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 27th day of March, 2023, this memorandum was filed with the Clerk of Court and served on all interested parties.

Respectfully submitted,

/s/ *Melissa Loesch*
Melissa A. Loesch
FBN 0884251
**For the Law Offices of Roger Futerman & Associates**
Attorneys for the Defendant
13620 49th Street North, Suite 201
Clearwater, Florida 33762
Telephone:  (727) 344-5511
Fax:             (727) 561-7454
Email:          futermanlaw@yahoo.com