UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

Case No.: 8:21-cr-348-SCB-SPF(s)(s)

v.

JEREMY BROWN

### UNITED STATES RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

The Defendant, Jeremy Brown, makes several arguments in his Sentencing Memorandum that are not supported by the evidence in this case. First, as it relates to the events at the United States Capitol on January 6, 2021, the Defendant claims that he was working a "volunteer position at the rally in which he provided security," and that he did not "participate[] in any violence." *See* Def. Sentencing Mem. (Doc. 345) at 2. This characterization understates the Defendant's actions on January 6.

Attached hereto is a DVD, marked as Exhibit 1, containing two videos from January 6. The first video, entitled "20210106_ConfrontationWithCapitolPolice" ("Confrontation Video"), is taken from the body-worn camera of a police officer. It shows the Defendant, clad in a bicycle helmet and facemask, being forcibly removed from the Capitol area by officers, who had to push him repeatedly to remove him from the restricted area of the Capitol. Instead of voluntarily leaving the area when instructed to do so by law enforcement, the Defendant kept stepping back toward the officers, even leaning into them. He lectured the Capitol Police that they were being used as "tools" of an "insurgency," telling them to "wake up" and to stop following

their orders because "we're past those times guys." *See* Confrontation Video at 2:00-3:00. As the officers continued to push the Defendant out of the restricted area at the Capitol, he warned them, "you guys gotta think. Just remember, we're choosing to be peaceful." *Id.* at 4:32-4:40.

In the second video, entitled "Unified Message," the Defendant reiterated and elaborated on this threat of future violence during a short interview at the riot. Speaking to a camera, the Defendant stated, "the revolution will be televised." The cameraman then stated, "it's the first time they've breached the Capitol in history I hear." The Defendant responded, "well, it's a good warning, I think." The Defendant continued:

> Here's the actual warning. **We chose to be peaceful and unarmed. And we can choose to not be.**

The Defendant then laughed. The Defendant's threats of future violence show that his intentions were not entirely peaceful on January 6.

Second, the Defendant contends that the search warrant in this case was based solely on "his presence at the Capitol Building on January 6, 2021." Def. Sentencing Mem. at 6. This is plainly incorrect. The search warrant was based on several charges, including transporting explosives:

> Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 USC 371 (conspiracy); **18 USC 231(a)(2) (transport of firearms or explosives for use in civil disorder); 18 USC 844(a)(2) (transportation of explosives)** and 1752(a)(1) and (2) (unlawful entry on restricted buildings or grounds) . . . have been committed by JEREMY BROWN and/or other identified and unidentified persons.

District of Columbia Search Warrant at 20 (attached hereto as Exhibit 2) (emphasis added). Indeed, as detailed in the Affidavit, a cooperating witness specifically stated that the Defendant's R.V. was loaded with "a cache of weapons, ammunition, and gas," including "explosives," for the trip to Washington, D.C. *Id.* at 39. When the R.V. was searched in this case, agents found multiple firearms – including an unregistered sawed-off shotgun – and explosive grenades.

 Third, the Defendant argues that he did not commit perjury at trial, and points to his acquittal on counts relating to the classified C.D. in support of that argument. Def. Sentencing Mem. at 4. The United States explained in detail why the Defendant's testimony concerning the grenades and classified Trip Report was false, *see* United States Sentencing Mem. (Doc. 344) at 8-11, and the Defendant does not rebut that argument. Moreover, the Defendant's testimony concerning the classified C.D. was perjured. For example, at trial, the Defendant claimed that he had never seen the classified C.D. before the Superseding Indictment was returned in April of 2022. *See* Trial Tr., Vol. V. at 923 ("In fact, I didn't even know there was a CD until April."). In fact, in December of 2021, the Defendant had participated in a hearing where the classified C.D. and its contents were discussed and a photograph of the C.D. was introduced as an exhibit. *See* Gov. Ex. 13 from Dec. 15, 2021 Detention Hr'g (attached hereto as Exhibit 3, previously filed at Doc. 70-1 PageID 531); *see also* Dec. 15, 2021 Detention Hr'g Tr. at 8-9 ("Now, there were two sets of documents that were marked at the secret level, and with those documents, **there's this CD that clearly has the secret marking on it**. It's our understanding, from speaking with

3

agents, that **the CD contains approximately 60 documents, approximately 25 of which appear to be classified at the secret level**." (emphasis added)).

Fourth, the Defendant now claims that he "never tried to 'sell' anything to journalists." Def. Sentencing Mem. at 8. The Defendant testified at trial – unprompted by any question – to the following:

> Q: Now the – going back to 2017, so [the classified Trip Report] could have been in your shed, could have been in your house, this document?
>
> A: The only discussion of this document was a conversation I had with Jack Murphy. Now, I have talked over the years with other journalists, not at the extent I talked to Jack, because I know Jack's background. He's a special operator, so therefore the discussion was much more in-depth with Jack, but still on a very vague level. **Other journalists I spoke to, I would only refer to I have a story, if you'd be interested. But I had never found a journalist that was interested.**

Trial Tr., Vol. V at 938 (emphasis added). Thus, the Defendant's own testimony plainly establishes that he was shopping a story about the content of the classified Trip Report to journalists, whether he was hoping to receive money, fame, or some other benefit in return.

Fifth, the Defendant now claims that he did not violate any court orders during the course of this litigation and merely "litigated the issue of the[ir] legality" before complying. Def. Sentencing Mem. at 3. This contention runs directly counter to Judge Flynn's findings:

> **Sir, you are in contempt of my order. You're in contempt of court right now**. . . .
>
> All of this is because you chose not to comply with my order, so the Court must fashion some course of action in order to get you to comply with my orders and to get you to comply with the Court's orders going

> forward and to get you to understand that you can't just ignore an order. You have legal remedies. You can appeal orders, you can't just ignore them, okay? **So I find that you are in contempt**.
>
> . . .
>
> Like I said, sir, **you are in contempt** and I'm telling you how you can purge that contempt.

March 25, 2022 Evidentiary Hr'g Tr. at 168-73 (emphasis added).

Sixth and finally, the Defendant devotes the bulk of his argument to his military career, yet he fails to mention that his career ended because he "knowingly and willfully" uploaded 67 pornographic files onto the Department of Defense computer system. *See* General Officer Memorandum of Reprimand (attached hereto as Exhibit 4). On September 29, 2011, the Defendant received a General Officer Memorandum of Reprimand ("GOMR") for these actions. *Id.* The GOMR determined that, by uploading pornography to the military computer systems, the Defendant had "compromised the high standards of personal conduct and exemplary behavior expected of a Senior Noncommissioned Officer and Special Forces." *Id.* It further determined that the Defendant's behavior was "inexcusable and incompatible with the maintenance of high standards of performance, military discipline and readiness," and had "demonstrated extremely poor judgment, a lack of self-discipline, lack of professionalism and set an extremely poor example for all Soldiers." *Id.* The GOMR concluded: "**Your misconduct is a discredit to you, your fellow Noncommissioned Officers, and the U.S. Army.**" *Id.* (emphasis added).

As a result of the GOMR, the Defendant was barred from re-enlistment in the military. Much like his decision to steal classified information and grenades while serving as a senior non-commissioned officer and trusted member of the United States Army Special Forces, the Defendant's ignominious end to his career weighs against a downward variance based on his military service.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By: /s/ *Daniel J. Marcet*
Daniel J. Marcet, AUSA
Florida Bar No. 0114104
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
E-mail: Daniel.Marcet@usdoj.gov

By: /s/ *Risha Asokan*
Risha Asokan, AUSA
Florida Bar No.1003398
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
E-mail: risha.asokan2@usdoj.gov

By: /s/ *Menno Goedman*
Menno Goedman
Trial Attorney
National Security Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Telephone: (202) 451-7626
Email: Menno.Goedman@usdoj.gov

7

U.S. v. Jeremy Brown                              Case No. 8:21-cr-348-SCB-SPF

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Roger Futerman, Esq.

I further served the videos on the DVD marked as Exhibit 1 to counsel for the Defendant by USAFX, and provided two copies of the DVD marked as Exhibit 1 to the Court.

        */s/ Daniel J. Marcet*
        Daniel J. Marcet
        Assistant United States Attorney
        Florida Bar No. 0114104
        400 N. Tampa St., Ste. 3200
        Tampa, FL 33602-4798
        Telephone: (813) 274-6000
        Facsimile: (813) 274-6358
        E-mail: Daniel.Marcet@usdoj.gov